# EXHIBIT 2

**O'Melveny**

O'Melveny & Myers LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067-6035

T: +1 310 553 6700
F: +1 310 246 6779
omm.com

January 14, 2024

**Daniel M. Petrocelli**
D: +1 310 246 6850
dpetrocelli@omm.com

Omar H. Bengali
Girard Bengali, APC
355 S. Grand Avenue, Suite 2450
Los Angeles, California 90071
obengali@girardbengali.com

Douglas H. Wigdor
Merideth A. Firetog
Wigdor LLP
85 Fifth Avenue
New York, New York 10003
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com

Kevin Mintzer
Laura L. Koistinen
Law Office of Kevin Mintzer, P.C.
1350 Broadway, Suite 1410
New York, New York 10018
km@mintzerfirm.com
llk@mintzerfirm.com

Re:   *Draft Complaint by Kellye Croft*

Dear Counsel:

A draft complaint prepared by your firms has come to my attention. The complaint alleges federal sex trafficking and other claims on behalf of your client Kellye Croft against various individuals and entities, including Irving Azoff Management, LLC and Azoff MSG Entertainment, LLC (the "Azoff Entities").[1] We write on behalf of the Azoff Entities.

The complaint names our clients in the first and second claims for violations of the federal Trafficking Victims Protection Act, 18 USC § 1591, or the California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5. In no uncertain terms can such claims or any other

---

[1] We are aware of no entity by the name of Irving Azoff Management, LCC; there was an entity named Azoff Music Management, LLC that changed its name to The Azoff Company Holdings, LLC. Azoff MSG Entertainment changed its name in 2017 to The Azoff Company, LLC.

claims be lawfully asserted against the Azoff Entities.  They had no involvement in or knowledge of any sex trafficking, sexual assaults, or any other such illegal conduct.  The complaint's sparse allegations about the Azoff Entities are categorically false, but even accepting them as true, they do not remotely state a plausible claim under either of the two statutes.  And to be clear, there is no set of liability-creating facts that could plausibly, much less truthfully, be asserted against the Azoff Entities.  Should your client proceed with these or any other claims against the Azoff Entities we will have no choice but to pursue Rule 11 sanctions against all responsible persons and firms.  *See Gaskell v. Weir*, 10 F.3d 626, 628 (9th Cir. 1993) (Rule 11 sanctions available for filing a complaint containing allegations that are "so baseless that the complaint [is] frivolous.").

Paragraphs 45-50 purport to allege the basis of the trafficking claims against the Azoff Entities:  the Azoff Entities managed The Eagles and Mr. Dolan's band, which both performed in Los Angeles for the re-opening of The Forum in January 2014; around the end of 2013 Ms. Croft received a request from one of the Azoff Entities to join the tour in Los Angeles (untrue); she understood the purpose was to perform massages on Eagles member Glenn Frye, but soon learned she was working for both The Eagles and Mr. Dolan; "Azoff management staff" confirmed her flights would be expensed on "the JD credit card" (untrue if directed to the Azoff Entities); Ms. Croft was given a room at the Peninsula Hotel in Beverly Hills, the same hotel as Mr. Dolan (there is no allegation the Azoff Entities booked her there—and they did not); and the alleged true purpose for which Ms. Croft was flown to Los Angeles was to engage in unwanted sexual acts with Mr. Dolan (patently false if directed to the Azoff Entities).

For the reasons discussed below, among others, these allegations do not even begin to satisfy the requirements of 18 USC § 1591 or California Civil Code § 52.5.

   1. **Ms. Croft Cannot Establish Any of the Elements of Her 18 USC § 1591 Claim Against the Azoff Entities**

When the federal Trafficking Victims Protection Act ("TVPA") was first introduced, it was described as a "bipartisan effort to combat the growing problem of trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children." H.R. REP. NO. 106-487, pt. 1, at 15 (1999).  The trafficking operations the TVPA was intended to target were "dominated by organized criminal groups, [that] lure women with false promises of earning money overseas as maids, factory workers, sales clerks, dancers, or models" to instead be held "victims under slavery-like conditions in prostitution or in forced labor."  *Id.*  These grim and slavery-like conditions are a far cry from the picture Ms. Croft paints here.  But even assuming the conduct she alleges did fall within the reach of the TVPA, Ms. Croft would still have no claim against the Azoff Entities.

To state a viable claim for participating in a sex trafficking venture under the TVPA, Ms. Croft would have to allege facts showing that the Azoff Entities "(i) knowingly benefitted (ii) from participation in a commercial sex trafficking venture (iii) while knowing (or in reckless disregard of the fact) that means of force, fraud or coercion would be used to cause the trafficked person to engage in a commercial sex act."  *Noble v. Weinstein*, 335 F. Supp. 3d 504 at 523–24


(S.D.N.Y. 2018) (citation and quotation omitted).  Ms. Croft can satisfy none of these elements, because no such facts exist.

First, nothing Ms. Croft has alleged or could allege shows that the Azoff Entities knew about an alleged sex trafficking venture in connection with her travel to Los Angeles to work as a massage therapist for The Eagles, as she had previously done on another tour.  She has not even attempted to allege such awareness, nor can she.  This is a fatal flaw that cannot be cured. *See Lawson v. Rubin*, 2018 WL 2012869 at *11 (E.D.N.Y. Apr. 29, 2018) (sex trafficking claim not adequately pleaded where complaint did not allege facts to show that defendant "knew or acted in reckless disregard of the fact that 'force, threats of force, fraud, or coercion' would be used to cause plaintiffs to engage in a commercial sex act"); *Eckhart v. Fox News Network, LLC*, 2021 WL 4124616, at *11 (S.D.N.Y. Sept. 9, 2021) (granting motion to dismiss participation claim where plaintiff's allegations were insufficient to establish that defendant knew or should have known that the alleged perpetrator was "specifically engaged in sex trafficking").

Second, Ms. Croft "must allege specific conduct that furthered the sex trafficking venture." *Noble*, 335 F. Supp. 3d at 524.  In other words, she must allege that the Azoff Entities participated "in the sex trafficking act itself."  *Id.*  The act of participation "cannot be established by association alone."  *Id.*  Yet mere association is exactly what the complaint relies on in alleging that the Azoff Entities were in business with Mr. Dolan and managed The Eagles and Mr. Dolan's band.  The (false) allegation that the Azoff Entities requested Ms. Croft to come to Los Angeles to work as a massage therapist, which Ms. Croft admits she did, *see* Draft Compl. ¶ 49, is likewise insufficient.  This is exactly the kind of allegation that courts have held do not give rise to "participant" liability under Section 1591, because it does not demonstrate that the alleged participant knowingly "assist[ed], support[ed], or facilitate[ed]" sex trafficking. *See Noble*, 335 F. Supp. 3d at 524 (finding conclusory allegations that Robert Weinstein facilitated Harvey Weinstein's conduct toward plaintiff by virtue of his job responsibilities, including paying for travel, were insufficient to show participation).

Finally, the complaint does not and cannot satisfy the requirement that the Azoff Entities benefited from participation in a sex trafficking venture.  "Aiders and abettors of sex trafficking are liable under the TVPA only if they knowingly 'benefit[ ], financially or by receiving anything of value, from participation in a venture which has engaged in' sex trafficking." *Corradino v. Liquidnet Holdings Inc.*, 2021 WL 2853362, at *4 (S.D.N.Y. July 8, 2021).  This means "there must be a causal relationship between affirmative conduct furthering the sex trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).  The draft complaint is incurably deficient on this score.  While it includes boilerplate and conclusory allegations against "the Corporate Defendants," including that they "benefited from Mr. Dolan's venture," it lacks any facts showing what benefits the Azoff Entities received from Mr. Dolan—and certainly nothing to show what any benefits had to do with any alleged trafficking.



2. **Ms. Croft's Claim Against the Azoff Entities Under Cal. Civ. Code § 52.5 Also Fails on Multiple Grounds, Including that the Azoff Entities Are Not the Alleged Perpetrators**

California Civil Code § 52.5 provides that "a victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action for" damages. Section 236.1 defines human trafficking as "depriv[ing] or violat[ing] the personal liberty of another with the intent to obtain forced labor or services," Penal Code § 236.1(a), or "with the intent" to commit a number of crimes, such as inveiglement, pimping, pandering, abducting and procuring minors for lewd acts or prostitution, and the distribution of child pornography. Penal Code § 236.1(b); *see also People v. Oliver*, 54 Cal. App. 5th 1084, 1096 (2020) ("confinement or restraint is punishable as the offense of human trafficking if it is done with 'the intent to effect or maintain' a separate enumerated offense such as pimping and prostitution"). Civil Code § 52.5 claim has no application to the Azoff Entities.

As an initial matter, the draft complaint copies and pastes allegations from Ms. Croft's Section 1591 claim to satisfy her Section 52.5 claim. This is enough, on its own, to sink the Section 52.5 claim. *See* K.R. v. G6 Hosp., LLC, No. 19-CV-08252-VC, 2020 WL 5653287, at *1 (N.D. Cal. Sept. 23, 2020) (dismissing Section 52.5 claim and noting "that plaintiff continues to copy the allegations she uses to allege a claim under the TVPRA, without recognizing that the state statute has entire different elements").

Unlike the federal sex trafficking statute, Section 52.5 does not create liability for participating in a trafficking venture; it only applies to those individuals directly involved in the act of trafficking. Ms. Croft cannot allege a single fact showing that the Azoff Entities committed any acts that would come close to trafficking under Section 236.1. Trafficking requires "'substantial and sustained restriction of [Plaintiff's] liberty' and has 'confinement or restraint' as a required element." *Stillwell v. Fashion Nova, LLC*, No. CV 21-7040-GW-MARX, 2022 WL 2965394, at *13 (C.D. Cal. Jan. 28, 2022). Ms. Croft has not alleged that she was confined or restrained for a sustained period of time, let alone that the Azoff Entities had anything to do with any such restraint. A claim brought under Section 52.5 also requires plausible allegations of intent to obtain forced labor or services or to commit one of the crimes enumerated in Section 236.1. J.*C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707, at *11 (N.D. Cal. Oct. 28, 2020). The draft complaint contains not a single allegation concerning the Azoff Entities' intent, let alone any suggesting they had an intent to commit trafficking. This claim is also time barred as to the Azoff Entities and not revived by any applicable revival statute.

*     *     *

In short, there is no conceivable claim Ms. Croft could assert against the Azoff Entities, and it would be indefensible to bring any claims or include any allegations against the Azoff Entities. If you wish to discuss this matter with me, including requesting a tolling agreement to facilitate diligence on your part, please call me.

The Azoff Entities reserve all rights and remedies.

Very truly yours,

*/s/ Daniel M. Petrocelli*

Daniel M. Petrocelli
O'MELVENY & MYERS LLP