DOUGLAS H. WIGDOR (NY SBN 2609469)
dwigdor@wigdorlaw.com
MEREDITH A. FIRETOG (NY SBN 5298153)
mfiretog@wigdorlaw.com
(Admitted *pro hac vice*)
**WIGDOR LLP**
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Tel.: (212) 257-6800

OMAR H. BENGALI (CA SBN 276055)
obengali@girardbengali.com
**GIRARD BENGALI, APC**
355 S. Grand Street, Suite 2450
Los Angeles, CA 90071
Tel.: (323) 302-8300

Kevin Mintzer (NY SBN 2911667)
km@mintzerfirm.com
Laura L. Koistinen (NY SBN 5755079)
llk@mintzerfirm.com
(Admitted *pro hac vice*)
**LAW OFFICE OF KEVIN MINTZER, P.C.**
1350 Broadway, Suite 1410
New York, NY 10018
Tel.: (646) 843-8180

*Attorneys for Plaintiff Kellye Croft*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

KELLYE CROFT,

       Plaintiff,

   vs.

JAMES DOLAN, HARVEY WEINSTEIN, JD & THE STRAIGHT SHOT, LLC, THE AZOFF COMPANY HOLDINGS LLC f/k/a/ AZOFF MUSIC MANAGEMENT, LLC, THE

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11**

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

AZOFF COMPANY LLC f/k/a AZOFF
MSG ENTERTAINMENT, LLC, DOE
CORPORATIONS 1-10,

                Defendants.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11**

1

## **TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ..................................................................................... ii

3  PRELIMINARY STATEMENT ............................................................................... 1

4  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ......................... 2

5    I.  Factual Background ................................................................ 3

6    II.  Procedural Background ........................................................... 5

7  DISCUSSION ........................................................................................................... 7

8    I.  Legal Standard ........................................................................ 7

9    II.  The Azoff Entities Improperly Invoke Rule 11 to Make

10        Arguments Under Rule 12(b)(6) ............................................ 8

11    III.  Moving Defendants' Dismissal Arguments Lack Merit .................... 10

12        A.  The Complaint Alleges Knowing Participation in Sex

13            Trafficking ............................................................... 10

14        B.  The Complaint Alleges a Benefit ......................................... 14

15    IV.  The Azoff Entities Have Not Demonstrated a Lack of

16        Investigation ......................................................................... 15

17    V.  No Sanctions are Warranted, and Plaintiff Should be Awarded

18        Fees and Costs as the Prevailing Party ................................. 19

19  CONCLUSION ....................................................................................................... 20

20

21

22

23

24

25

26

27

28

WIGDOR LLP
85 FIFTH AVE, FIFTH FLOOR
NEW YORK, NEW YORK 10003
(212) 257-6800

i

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                   **Page(s)**

3 A.B. v. Marriott Int'l, Inc.,

4   455 F. Supp. 3d 171 (E.D. Pa. 2020) ...............................................................11, 13

5 Abagninin v. AMVAC Chem. Corp.,

6   545 F.3d 733 (9th Cir. 2008).................................................................................20

7 Acevedo v. eXp Realty, LLC,

8   No. 23 Civ. 01304 (AB) (AGR), 2024 WL 650189 (C.D. Cal. Jan. 29, 2024)

9   .................................................................................................................11, 12, 14

10 Arcume v. Aloha Motorcycle U-Drive, Inc.,

11   15 F.3d 1082 (9th Cir. 1994).................................................................................18

12 Benay v. Warner Bros. Ent.,

13   No. 05 Civ. 8508, 2012 WL 13071728 (C.D. Cal. Feb. 14, 2012)........................8

14 Century Indem. Co. v. Brooklyn Union Gas Co.,

15   163 N.Y.S.3d 740 (N.Y. Sup. Ct. 2018)................................................................8

16 City of Yonkers v. Otis Elevator Co.,

17   106 F.R.D. 524 (S.D.N.Y. 1985)..........................................................................19

18 DC Comics v. Pac. Pictures Corp.,

19   No. 10 Civ. 03633, 2013 WL 12458030 (C.D. Cal. Mar. 8, 2013) .......................8

20 Doe 1 v. Deutsche Bank Aktiengesellschaft,

21   671 F. Supp. 3d 387 (S.D.N.Y. 2023) ..................................................................13

22 Does 1-6 v. Reddit, Inc.,

23   51 F.4th 1137 (9th Cir. 2022)...............................................................................11

24 Est. of Blue v. Cnty. of Los Angeles,

25   120 F.3d 982 (9th Cir. 1997)..................................................................................7

26

27

28

WIGDOR LLP
85 FIFTH AVE., FIFTH FLOOR
NEW YORK, NEW YORK 10003
(212) 257-6800

Estrada v. FedEx Ground Package Sys., Inc.,
 154 Cal. App. 4th 1 (Cal. App. 2007) .................................................................9

Frost v. LG Elecs. Inc.,
 No. 16 Civ. 05206 (BLF), 2017 WL 2775041 (N.D. Cal. June 27, 2017) .............7

Gallego v. Hunts & Henriques, CLP,
 No. 19 Civ. 07596 (VC), 2020 WL 5576134 (N.D. Cal. Sept. 17, 2020) ...........19

Gartner, Inc. v. Parikh,
 No. 07 Civ. 2039 (PSG), 2008 WL 4601025 (C.D. Cal. Oct. 14, 2008) .............12

In re California Bail Bond Antitrust Litig.,
 511 F. Supp. 3d 1031 (N.D. Cal. 2021) ..........................................................8, 10

J.C. v. Choice Hotels Int'l, Inc.,
 No. 20 Civ. 00155 (WHO), 2020 WL 6318707, at *9 (N.D. Cal. Oct. 28, 2020)
 .....................................................................................................................12, 14

Lampkin v. Cnty. of Sacramento,
 No. 22 Civ. 01204 (JAM) (JDP), 2022 WL 3327469 (E.D. Cal. Aug. 11, 2022)
 .................................................................................................................................19

Operating Engineers Pension Tr. v. A-C Co.,
 859 F.2d 1336 (9th Cir. 1988) ..............................................................................7

Rachel v. Banana Republic, Inc.,
 831 F.2d 1503 (9th Cir. 1987) ............................................................................16

Salameh v. Tarsadia Hotel,
 726 F.3d 1124 (9th Cir. 2013) ............................................................................20

Shaw v. Mason,
 No. 16 Civ. 00729 (TLN) (CKD), 2024 WL 584160 (E.D. Cal. Feb. 13, 2024) ...8

Siegel v. Warner Bros. Ent.,
 No. Civ. 0408400, 2006 WL 8421887 (C.D. Cal. Oct. 27, 2006) ..........................8

SolMark Int'l Inc. v. Galvez,
No. 20-Civ. 4437 (SB) (PLAX), 2021 WL 4813252 (C.D. Cal. Aug. 23, 2021) ..................................................................................................................12

Thrasio, LLC v. Boosted Com. Inc,
No. 21 Civ. 01337 (CBM) (SK), 2022 WL 2285514 (C.D. Cal. Apr. 22, 2022) ..................................................................................................................20

Townsend v. Holman Consulting Corp.,
929 F.2d 1358 (9th Cir. 1990).............................................7, 15, 18, 19

Treminio v. Crowley Mar. Corp.,
No. 22 Civ. 00174 (CRK) (PDB), 2023 WL 8627761 (M.D. Fla. Dec. 13, 2023) ..................................................................................................................11

Tunstall v. Bodenhamer,
No. 16 Civ. 2665 (JAM) (DBP), 2017 WL 5861377 (E.D. Cal. Nov. 29, 2017) ..................................................................................................................19

U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,
971 F.2d 244 (9th Cir. 1992).......................................................................9

United States v. Cook,
782 F.3d 983 (8th Cir. 2015).....................................................................15

United States v. Raniere,
55 F.4th 354 (2d Cir. 2022).......................................................................14

United States v. Todd,
627 F.3d 329 (9th Cir. 2010).....................................................................13

Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.,
67 F. Supp. 3d 637 (D. Del. 2014).....................................................18, 19

WIGDOR LLP
85 FIFTH AVE., FIFTH FLOOR
NEW YORK, NEW YORK 10003
(212) 257-6800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes**

18 U.S.C. § 1591(a) .......................................................................................10, 14

18 U.S.C. § 1595..........................................................................................10, 11, 14

**Rules**

Federal Rule of Civil Procedure ("FRCP") 11 ...............................................passim

FRCP 12(b)(6)......................................................................................................1

FRCP 15(a) ..........................................................................................................2

**Other Authorities**

Charles Alan. Wright & Arthur R. Miller, 5A Fed. Prac. & Proc. Civ. § 1335 (4th

    ed.) .................................................................................................................8

WIGDOR LLP
85 FIFTH AVE., FIFTH FLOOR
NEW YORK, NEW YORK 10003
(212) 257-6800

v

Defendants The Azoff Company Holdings LLC f/k/a Azoff Music Management, LLC and the Azoff Company LLC f/k/a Azoff MSG Entertainment, LLC (together, the "Azoff Entities" or the "Moving Defendants") moved for sanctions against Plaintiff Kellye Croft and her counsel under Federal Rule of Civil Procedure ("FRCP") 11. ECF 43, Motion for Sanctions ("Mot."). For the reasons stated below, the motion should be denied.

**PRELIMINARY STATEMENT**

Between 2013 and 2014, Defendant James Dolan engaged in sexual battery of Plaintiff Kellye Croft and sex trafficked her, including by delivering her to notorious rapist and co-Defendant Harvey Weinstein in California. He did so through and on behalf of the Defendant corporate entities: JD & the Straight Shot, LLC (his band), the Azoff Company Holdings LLC f/k/a Azoff Music Management, LLC, and the Azoff Company LLC f/k/a Azoff MSG Entertainment, LLC. Not only was Dolan a principal in the business of the Moving Defendants, but his sex trafficking benefited the business of the Moving Defendants and was accomplished with their knowing participation. Agents of the Azoff Entities arranged for Croft to be flown out to California, ostensibly to provide legitimate massage services, but in reality so that Dolan would be able to sexually exploit her.

In filing their utterly meritless Rule 11 motion, the Azoff Entities fail to address the facts and legal theories in Plaintiff's Complaint. What's more, their motion incorrectly assumes that any pleading deficiency that can be the subject of a dismissal motion under FRCP 12(b)(6) can result in the imposition of Rule 11 sanctions. Applying the proper Rule 11 standards, the Complaint here is far from "baseless"—to the contrary, it more than plausibly alleges all of the elements of a sex trafficking claim against Moving Defendants. The Azoff Entities have also

1

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

completely failed to show that the Complaint was the product of anything other than a reasonable and diligent investigation by Plaintiff's counsel. At its core, and as revealed by the parties' pre-filing correspondence, Moving Defendants' sanctions motion is nothing more than an unprofessional and unwarranted attempt to dissuade Plaintiff, a sexual assault victim, from pursuing her legitimate claims. The motion should be denied and Plaintiff should be awarded her fees and costs.[1]

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Background

As alleged in the Complaint, Croft was a Licensed Massage Therapist who ran her own massage business. ECF 1, Complaint ("Compl.") at ¶ 23.[2] In 2013, she struck it big when she was invited by Glenn Frey of well-known rock band the Eagles to join the Eagles on tour as their massage therapist. *Id*. at ¶¶ 24-25. While touring, she met Dolan, who was the lead singer of the band opening for the Eagles, JD & the Straight Shot. *Id*. at ¶ 32. At the time, Dolan helped lead a joint venture between the Eagles, JD & the Straight Shot, and the Azoff Entities. *Id*. at ¶ 35. In particular, Dolan was an ongoing business partner in Azoff MSG Entertainment LLC[3] (*i.e.*, The Azoff Company LLC and, hereinafter for clarity, "MSG Entertainment") alongside

---

[1]     *See* FRCP 11, 1993 Advisory Committee Notes ("As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion.").

[2]     On April 10, 2024, Plaintiff filed an Amended Complaint as of right under FRCP 15(a). ECF 48. Still, for purposes of the Azoff Entities' Rule 11 motion, Plaintiff refers only to the initial Complaint.

[3]     This opposition refers to Defendants Azoff Entities with the corporate names used at the time of the events in the Complaint.

2

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

1   entertainment executive Irving Azoff. *Id*. Dolan co-founded MSG Entertainment

2   with Azoff in September 2013 by contributing $175,000,000. *Id*. at ¶¶ 35, 101. The

3   other contribution to this joint venture came from defendant Azoff Music

4   Management, LLC (i.e. "the Azoff Company Holdings LLC," and, hereinafter for

5   clarity, "Music Management"). *Id*. at ¶ 17. This joint venture, MSG Entertainment,

6   managed the tour of the Eagles and JD & the Straight Shot. *Id*. at ¶¶ 35, 101. Through

7   his contribution to MSG Entertainment, Dolan was able to place his mediocre band,

8   JD & the Straight Shot, as the opening act for the infinitely more famous Eagles. *Id*.

9   at ¶ 35.

10   Of this joint venture between Dolan and Music Management, Dolan said

11   publicly that Azoff "was going to run everything" that Dolan would be a "partner"

12   and that Dolan would exercise corporate control over the joint venture in lieu of a

13   board of directors. *Id*. Dolan's position allowed him to call the shots on the tour. *Id*.

14   at ¶ 39. It also effectively made Croft an employee of both the Eagles and Dolan. *Id*.

15   at ¶ 48. Dolan used this power to sexually exploit Croft. In late 2013, while Croft

16   was giving Dolan a professional massage, he pressured her to have sex with him,

17   using a combination of economic power and physical force. *Id*. at ¶¶ 40-45.

18   In early 2014, the Azoff Entities, through their agent Marc Robbins, and at

19   the request of Dolan, arranged for Croft to fly to Los Angeles, California, ostensibly

20   to perform massage work. *Id*. at ¶¶ 48, 52. Robbins expensed this flight to JD & the

21   Straight Shot. *Id*. Then, Robbins arranged for Azoff security staff to pick Croft up at

22   the airport and bring her to stay at the Peninsula Hotel in Beverly Hills. *Id*. at ¶ 50.

23   This meant she was housed not with the Eagles, as she usually would be on tour, but

24   with Dolan and his band. *Id*. But Dolan and the Azoff Entities had arranged this

25   travel without any legitimate business reason, since the Eagles did not need a

26

3

27   MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF

28   ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

masseuse in Los Angeles. *Id*. at ¶ 49. Croft performed almost no work during this trip and spent most of it alone. *Id*. at ¶ 51. Her presence was so that Dolan could continue to sexually exploit her. Through the knowledge of their agents Dolan, Robbins, and others, the Azoff Entities knew this. *Id*. at ¶ 52.

Dolan also wanted Croft in Los Angeles so she could be exploited by his close friend, Harvey Weinstein. Early in 2014, Dolan encouraged Croft to go shopping and have dinner with two female assistants from Irving Azoff Management. *Id*. at ¶ 56. When she returned to the Peninsula holding a to-go box for Dolan, another stranger—a large man—joined her in the elevator and asked "who is that to-go box for?" *Id*. at ¶¶ 57-58. When she responded it was for Dolan, the man began gushing that Dolan was his friend and had said great things about Croft as a massage therapist. *Id*. at ¶ 59. The man then introduced himself as Harvey Weinstein and began telling Croft that there were opportunities for her as a masseuse on his movie sets. *Id*. at ¶ 61. She responded that she would be happy to discuss such a role and joined him in his suite to do so. *Id*. at ¶¶ 62-63.

The meeting took a turn when Weinstein first tried to get Croft to try on clothes in front of him and then tried to get her to give him a massage. *Id*. at ¶¶ 65-70. Weinstein tried increasingly aggressive steps to try to force her to massage him, then tried to block Croft's escape from the room. *Id*. At ¶¶ 71-77. Though he relented and let her go, he then followed her down the hallway to her room, forcibly pushed her door open, forced Croft onto a bed, forced her legs open, digitally penetrated her while holding her down, then tried to force his penis inside of her. *Id*. at ¶¶ 78-81. As she struggled, Dolan called her and she picked up the phone, finally prompting Weinstein to leave her room. *Id*. at ¶¶ 82-83. As he did so, he warned her that Dolan was "going to be very disappointed [she] led [him] on." *Id*. at ¶ 84.

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

It was no coincidence that Weinstein had joined her in the elevator, already knowing her identity, and seeming to know to ask a question that would play perfectly and quickly into his *modus operandi* of coercing women into sex. Dolan had orchestrated the encounter, *id*. at ¶ 11, as demonstrated by the unusual request that she first have dinner out, followed by Weinstein's meeting her in the elevator. After Croft made her way to Dolan and told him what happened with Weinstein, he admitted he had known that Weinstein had "serious issues," was a "troubled person" and not "safe," though showing little empathy otherwise. *Id*. at ¶ 87. In short, Dolan had set up Croft to be sexually abused by Weinstein.

## II.   Procedural Background

Plaintiff filed her Complaint on January 16, 2024. ECF 1. Although Moving Defendants' motion for sanctions is based on that document, counsel for the Azoff Entities nevertheless contend that pre-filing settlement negotiations are relevant to the Court's evaluation of its motion. However, Moving Defendants set forth an incomplete account of the events that occurred prior to filing of the Complaint.

On January 10, 2024, counsel for Plaintiff provided a draft complaint, clearly marked "For Settlement Purposes Only" to an attorney who represented he was speaking to both Defendant Dolan and the Azoff Entity Defendants. *See* Decl. of M. Firetog in Support of Plaintiff's Opposition ¶ 3. Defendants have filed this confidential settlement exchange on the docket. *Id.* Four days later, on January 14, 2024, Daniel Petrocelli of O'Melveny & Meyers, counsel for Defendants Azoff Entities, sent a letter stating that Croft's draft complaint—which had been shared confidentially for purposes of settlement discussions only—did not contain plausible allegations of sex trafficking against the Azoff Entities. *Id.* ¶ 4. The letter stated that if the draft complaint were to be filed, that the Azoff Entities would "have no choice

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

but to pursue Rule 11 sanctions." *Id.* Petrocelli's further letter stated that it was "untrue" that the Azoff Entities confirmed that Croft's flights to California would be expensed on "the JD credit card" and that the Azoff Entities "did not" book Croft's stay at The Peninsula Hotel. *Id.* ¶ 5.

Contrary to Petrocelli's claims, Plaintiff was in possession of a January 2014 email from Marc Robbins (using the email address marc.robbins@azoffmusic.com) showing that Plaintiff's flights and lodging were confirmed, and which noted that the charges would be expensed on "the JD credit card." Plaintiff shared information about this evidence with Petrocelli, who acknowledged that (despite his Rule 11 threats) he was still getting up to speed about the facts of the case. *Id.* ¶ 6. Plaintiff also supplemented her draft complaint prior to filing by adding details about Dolan's relationship with the Azoff Entity Defendants and about how the Azoff Entities knew or were reckless to the fact that Croft was being flown out to California at Dolan's request and for Dolan's sexual gratification. Plaintiff added other clarifying facts concerning Dolan and Azoff's joint venture, and provided more detail about the email evidence showing the Azoff Entities' participation in the events described in the Complaint. *See, e.g.*, Compl. ¶¶ 35, 48, 49, 50, 52. Plaintiff also chose to remove her proposed claim under California's sex trafficking statute in light of statute of limitations concerns. *See* Firetog Decl. ¶¶ 7-9.

The day after sending their letter threatening Rule 11 sanctions if Plaintiff were to file her lawsuit, counsel for Defendants again asked Plaintiff for a tolling agreement to "at least settle out" the Azoff Entities. But the Azoff Entities provided no documents, affidavits, or other evidence to suggest that Plaintiff's claims were factually or legally baseless. Given the sound factual and legal bases of Plaintiff's lawsuit, Plaintiff filed her Complaint the following day. *Id.* ¶¶ 10-11.

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

On March 1, 2024—45 days after Plaintiff filed her Complaint—the Azoff Entities served Plaintiff's counsel with a Rule 11 Safe Harbor Letter. *Id.* ¶ 14. The letter contained similar arguments concerning the purported deficiencies of Plaintiff's Complaint as those contained in the Azoff Entities' January 14, 2024 letter. *Id.* During the safe harbor period, Plaintiff responded to Moving Defendants' letter, explaining that the Complaint more than plausibly stated a claim against the Azoff Entities and that their proposed Rule 11 motion was itself frivolous and should not be filed. ECF 43-5. Moving Defendants did not respond to that letter. Firetog Decl. ¶ 15.

## DISCUSSION

### I.    Legal Standard

"Rule 11 is an extraordinary remedy" and is reserved for "the rare and exceptional case." *Frost v. LG Elecs. Inc.*, No. 16 Civ. 05206 (BLF), 2017 WL 2775041, at *2 (N.D. Cal. June 27, 2017). To satisfy the standard for Rule 11 sanctions for an allegedly frivolous claim, the moving party must show that the claim is "'*both* baseless *and* made without a reasonable and competent inquiry.'" *Id.* at *2 (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (emphasis in original); *Est. of Blue v. Cnty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (Rule 11 satisfied only where claims are "both baseless and made without a reasonable and competent inquiry"). Because Rule 11 is such an extraordinary remedy, it is "one to be exercised with extreme caution." *Operating Engineers Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

The Complaint against the Azoff Entities is not baseless and is not remotely sanctionable. As discussed below, Moving Defendants' sanctions motion is a bad

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

faith attempt to dissuade Plaintiff, a trafficking victim, from pursuing legitimate claims.[4]

## II.   The Azoff Entities Improperly Invoke Rule 11 to Make Arguments Under Rule 12(b)(6)

Moving Defendants' motion makes no real attempt to show that Plaintiff's claims are baseless, either factually or legally. For example, the Azoff Entities offer no evidence to show they were not involved in recruiting plaintiff for the California leg of the tour, or that they did not make arrangements for Plaintiff to fly to California and stay at the Peninsula Hotel. Instead, the Azoff Entities argue that Plaintiff has insufficiently alleged contested circumstantial evidence of intent, knowledge, and involvement. *See* Mot. at 3-6. But in making such arguments, Moving Defendants fail to recognize that "the *Twombly* plausibility standard is not identical to the Rule 11 standard for a baseless claim." *In re California Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1054 (N.D. Cal. 2021). "If it were, every Rule 12(b)(6) motion would be accompanied by a motion for sanctions." *Id.*

For that reason, "Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss." Charles Alan. Wright & Arthur R. Miller, 5A Fed. Prac. & Proc. Civ. "The Elements of the Standard of Certification," § 1335 (4th ed.); *e.g.*, *Shaw v. Mason*, No. 16 Civ. 00729 (TLN) (CKD), 2024 WL 584160, at *4 (E.D. Cal. Feb.

---

[4]    Filing unsuccessful sanctions motions is routine for the Azoff Entities' lead counsel. *Century Indem. Co. v. Brooklyn Union Gas Co.*, 163 N.Y.S.3d 740 (N.Y. Sup. Ct. 2018) (denying request for sanctions for alleged spoliation); *DC Comics v. Pac. Pictures Corp.*, No. 10 Civ. 03633, 2013 WL 12458030, at *1 (C.D. Cal. Mar. 8, 2013)(denying request for sanctions and evidentiary hearing); *Benay v. Warner Bros. Ent.*, No. 05 Civ. 8508, 2012 WL 13071728, at *2 (C.D. Cal. Feb. 14, 2012) (denying motion for terminating sanctions); *Siegel v. Warner Bros. Ent.*, No. Civ. 0408400, 2006 WL 8421887, at *2 (C.D. Cal. Oct. 27, 2006) (discovery sanctions request denied).

8

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

13, 2024) ("[I]t is unclear why she chose to file a motion for sanctions rather than merely respond to Defendants' argument in her opposition to the motion to dismiss. The Court cautions Plaintiff against moving for sanctions under similar circumstances in the future."); *see also U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 255 (9th Cir. 1992) (affirming dismissal of complaint while reversing sanctions against the plaintiff); FRCP 11 1993 Advisory Committee Notes (explaining that Rule 11 motions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes"). Yet that is precisely what Moving Defendants do—their arguments for dismissal are largely the same as their arguments in favor of sanctions. *Compare* ECF 44 *at* 5:10-12:23 with ECF 43 at 4:2-6:12.

Beyond that impropriety, Moving Defendants also ask for favorable inferences that would be inappropriate at summary judgment, let alone on a motion to dismiss. Moving Defendants argue, for instance, that "Marc Robbins was an independent contractor—not an executive—of the Azoff Entities." Mot. at 2 n.4. But Robbins had an Azoff email address during the relevant period and has been identified in the press as working for Azoff music. Robbins' role will be an issue of fact to be decided by a jury under all the facts and circumstances. *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 10-11 (Cal. App. 2007) ("The parties' label is not dispositive and will be ignored if their actual conduct establishes a different relationship."). Moving Defendants also argue that "the Complaint does not even allege that Dolan acted inappropriately towards Plaintiff." Mot. at 4. But this again tendentiously ignores the Complaint's allegations. Compl. at ¶¶ 104-107. Moving Defendants call Croft's entrapment by Weinstein a "chance encounter."

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

9

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

1   Mot. at 4. The Complaint, in fact, alleges that "Dolan fraudulently coordinate[d] a

2   meeting between Ms. Croft and Harvey Weinstein," Compl. at p. 15, and there are

3   ample facts to establish that it was not just a coincidence that Weinstein knew where

4   to find Croft; had already discussed her with Dolan; and that Dolan knew about

5   Weinstein's tendency to assault women.

6        Moving Defendants' improper use of Rule 11 as a vehicle to challenge the

7   legal sufficiency of Plaintiff's claims reflects that the Azoff Entities' true purpose in

8   moving for sanctions—to harass and intimidate Plaintiff.

9   **III.   Moving Defendants' Dismissal Arguments Lack Merit**

10       In any case, Moving Defendants' arguments against the Complaint are wrong.

11       **A.   The Complaint Alleges Knowing Participation in Sex Trafficking**

12       To establish venture liability under 18 U.S.C. § 1595(a), the Trafficking

13  Victims Prevention Reauthorization Act ("TVPRA"), Plaintiff must allege, and here

14  does allege, that the Azoff Entities "knowingly benefit[ted] . . . by receiving anything

15  of value from participation in a venture which [they] knew or should have known

16  has engaged in an act in violation of this chapter." The Azoff Entities' principal

17  argument is that they did not know that Plaintiff would be compelled to engage in a

18  commercial sex act by "force, fraud, [or] coercion," so that Plaintiff fails to state

19  both the "knowledge" and "participation" elements of 18 U.S.C. § 1591(a). Mot. at

20  4-5. But Moving Defendants simply ignore facts alleged in the Complaint that allow

21  for the inference of such knowledge and participation, even though "circumstantial

22  evidence, and the reasonable inferences drawn from that evidence, are treated as

23  evidentiary support' for purposes of Rule 11." *In re California Bail Bond Antitrust*

24  *Litig.*, 511 F. Supp. 3d at 1053-54.

25

26

27

28

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

As an initial matter, Defendants ask the Court to use the wrong standard for pleading liability TVPRA claims. While the Complaint would pass muster even under the standard proposed by the Moving Entities, the civil remedy provision of 18 U.S.C. § 1595 requires neither actual knowledge nor direct participation to establish liability. *Contra* Mot. at 5. It requires only that the defendant "should have known" of such a sex trafficking venture. *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022) ("Section 1591, on the other hand, is the federal criminal child sex trafficking statute. Like section 1595, section 1591 covers both perpetrators and beneficiaries of trafficking. *Id.* § 1591(a). However, the standard for beneficiary liability pursuant to section 1591 is higher."). Thus, there is also no "actual participation" requirement. *See A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 181-89 (E.D. Pa. 2020) (rejecting the argument that Moving Defendants have advanced here, including Moving Defendants' misreading of *Reddit*); *accord Acevedo v. eXp Realty, LLC*, No. 23 Civ. 01304 (AB) (AGR), 2024 WL 650189, at *24 (C.D. Cal. Jan. 29, 2024) (citing *A.B. v. Marriott*, rejecting Moving Defendants' arguments, explaining that a "direct association and a business relationship," under circumstances where the defendant should have known they were benefitting from sex trafficking, sufficed to plead participation). To the contrary, a passive business relationship, under circumstances where the business partner should know that they are benefitting from sex trafficking, *does* suffice. "That the focus of such a relationship did not specifically involve sex trafficking is not fatal to a finding of a venture under the TVPRA." *Treminio v. Crowley Mar. Corp.*, No. 22 Civ. 00174 (CRK) (PDB), 2023 WL 8627761, at *10 (M.D. Fla. Dec. 13, 2023).[5] Under this

---

[5] This is also why it is unnecessary for Plaintiff to plead and prove either that Azoff Entities maintained this relationship *because* they desired Dolan to sex traffic Croft, *contra*

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

standard, the Complaint more than adequately pleads such a business relationship and thus is not baseless under Rule 11. *See Gartner, Inc. v. Parikh*, No. 07 Civ. 2039 (PSG), 2008 WL 4601025, at *9-10 (C.D. Cal. Oct. 14, 2008) (explaining joint venture[6] liability); *e.g.*, *SolMark Int'l Inc. v. Galvez*, No. 20-Civ. 4437 (SB) (PLAX), 2021 WL 4813252, at *3 (C.D. Cal. Aug. 23, 2021) (denying summary judgment on joint venture theory).

Here, Plaintiff has pleaded a "direct association and a business relationship" between the Azoff Entities and James Dolan. *Acevedo*, 2024 WL 650189, at *24. In light of the unusual and suspect circumstances of transporting Croft to Los Angeles, that business relationship creates a reasonable inference that the Azoff Entities, as part of a joint venture, had ***at least*** constructive knowledge of and participated in a sex trafficking scheme. As alleged in the Complaint, Dolan, JD & the Straight Shot, and the Azoff Entities were involved in a joint venture that Dolan could control. Compl. at ¶¶ 35 (describing the founding of the joint venture); 39 (Dolan called the shots during the tour); 48 (alleging that Dolan would pay expenses incurred by Azoff employees). Dolan used the resources of the corporate venture to hire and transport Croft, justifying such use of the corporations' resources by pretextually making Croft an employee of the Azoff Entities. In all this he was a close "partner" to Irving Azoff and, in managing MSG Entertainment, he acted in lieu of a Board of Directors over Azoff. *Id*. at ¶ 35.

---

Mot. at 6, or that Dolan's investment in MSG Entertainment was meant to directly fund sex trafficking, *contra id*. at 6-7.

[6]    For clarity, this refers to the common law concept of a "joint venture," rather than the statutory sense. The TVPRA incorporates such common law concepts. *See J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *9 (discussing use of common-law agency concepts, and collecting cases).

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

12

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

Thus, Dolan was a principal-agent of the joint venture, acting in the scope of his duties, and his knowledge is imputed to the Azoff Entities. *See, e.g.*, *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 407 (S.D.N.Y. 2023) (allegations that high-level executive of bank had knowledge of sex trafficking venture could be imputed to bank); *A.B. v. Marriott*, 455 F. Supp. 3d at 194 ("A.B. pleads staff at Marriott's Philadelphia Airport hotels should have known about her sex trafficking."). Because the Complaint alleges that Dolan knowingly participated in a sex trafficking venture and that he did so by commanding the resources of the Azoff Entities, the "participation" element against Moving Defendants is sufficiently alleged.[7]

Even without Dolan's knowledge, the Complaint alleges facts from which a factfinder could conclude that the Azoff Entities' knowingly participated in a sex trafficking venture. Plaintiff was brought out for the California leg of the tour by the Azoff Entities even though her massage services were not needed, and almost no tour members signed up for massage appointments. Compl. at ¶¶ 49, 51. Moreover, the Azoff Entities arranged for Plaintiff to stay at the Peninsula Hotel, which was *not* where the Eagles and the other members of their tour were staying, but was the hotel where Dolan and his band were staying. *Id.* ¶ 50. This was a departure from past practice on the tour and allows for the inference that Moving Defendants arranged for Plaintiff to be brought to California at Dolan's request and because he wished to sexually exploit her. *See United States v. Todd*, 627 F.3d 329, 333-34 (9th Cir. 2010) ("The knowledge required is such that if things go as he planned, force, fraud or coercion will be used to cause his victim to engage in a commercial sex

---

[7]     Underscoring the deficiency of their sanctions and dismissal arguments, Moving Defendants never say who, exactly, could have imputed knowledge to the Azoff Entities.

13

WIGDOR LLP
85 FiIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

transaction."); *see also Acevedo*, 2024 WL 650189, at *12 ("This does not impose another 'layer' of knowledge on the pleader, but merely requires an allegation of awareness that, at the initial recruitment or enticement stage, certain prohibited means will be employed to cause a commercial sex act.").[8]

### B. The Complaint Alleges a Benefit

Likewise, the Complaint pleads the adequate "benefit" for a venture theory under § 1595. A benefit includes "anything of value." 18 U.S.C. § 1595(a). The Complaint alleges that the Azoff Entities received a "thing of value" in keeping happy their business partner, Dolan, on whom they depended for huge amounts of funding. Compl. at ¶ 101. This sort of quid pro quo counts as a "thing of value," especially where, as here, the quid pro quo contributed to the transfer of money in an ongoing business partnership. *See United States v. Raniere*, 55 F.4th 354, 365 (2d Cir. 2022) (finding that something of "value" was received or given in connection with a sex act because participation in the venture allowed defendants to procure a "special position" and receive "special privileges" from the trafficking venture,

---

[8]     Beyond this sufficiently pleaded allegation of joint venture liability, the allegations in the Complaint are also more than suffice to state a "direct participation claim" against both Azoff Entities. This theory makes liable any person or corporation who "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). Under this theory, principal corporations can be held vicariously liable for the actions of agents acting in the scope of their agency. *See J.C. v. Choice Hotels Int'l, Inc.*, No. 20 Civ. 00155 (WHO), 2020 WL 6318707, at *9 (N.D. Cal. Oct. 28, 2020) (franchisors could be held vicariously liable for sex trafficking through actions of agent-hotels). Dolan was just such an agent acting in the scope of his employment on behalf of both Azoff Entities, when he retained Croft as a masseuse and used his agency on behalf of the Entities to transport her, knowing that both he and Weinstein would use fraud, force, and coercion to have sex with her. Because he was their principal, his conduct must be imputed directly to both members of the joint venture, MSG Entertainment and Music Management.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

14

noting that "[a] privileged position in an organization may constitute intangible 'value'"); *see also United States v. Cook*, 782 F.3d 983, 988-89 (8th Cir. 2015) ("The phrase 'anything of value' is extremely broad. Reading the phrase to include sex acts comports with both its ordinary meaning, and its settled legal meaning. Congress's frequent use of 'thing of value' in various criminal statutes has evolved the phrase into a term of art which the courts generally construe to envelop both tangibles and intangibles. Value is a subjective, rather than objective, concept where the focus of the . . . term is to be placed on the value which the defendant subjectively attaches to what is sought to be received.") (internal quotations, citations, and punctuation omitted).

## IV.   The Azoff Entities Have Not Demonstrated a Lack of Investigation

Finally, although the Court need not reach the issue because the Complaint is far from baseless, Moving Defendants do not—and cannot—show that the Complaint was anything other than the product of a reasonable and diligent inquiry by Plaintiff's counsel. Moving Defendants do not actually address this element of their burden in a Rule 11 sanctions motion. In the relevant section, they simply recapitulate their belief that the Complaint is baseless. Mot. at 6-8. Instead, their burden of persuasion was to show an "unreasonable inquiry" in light of the facts and circumstances of the case. They declined to squarely address the element, likely out of an awareness that controlling law contradicts their position.

"If the relevant facts are in control of the opposing party," as here, "more leeway must be given to make allegations in the early stages of litigation . . . . In a similar vein, leeway should be given to make allegations relating to an opposing party's knowledge, purpose, or intent." *Townsend*, 929 F.2d at 1364. This is especially true when it comes to issues of corporate responsibility, since corporations

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

15

usually disclaim liability for the acts of agents and sub-entities (indeed, disclaiming liability is the purpose of the corporate form), and plaintiffs can only join corporate parties based on whatever limited public information is available at the time of filing. *See Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987) (incorrectly joining a corporate defendant not sanctionable, since it shared "common officers" with another defendant, and there was evidence that its officers had been involved in the tort). The pleading challenge for a plaintiff is even more pronounced where, as here, the defendant corporation is privately held.

This is a case about knowledge where the allegations are necessarily based on circumstantial evidence, with the key evidence in possession of corporate defendants. Cases like this are exactly why Rule 11 permits allegations to be based on "information, and belief." FRCP 11(b). It is odd, then, that the Azoff Entities attack solely the "information and belief" upon which Plaintiff has based her allegations of knowledge and intent—they appear to have missed or purposely ignored the plain text of Rule 11. It is true that such an allegation "on information and belief" must have "factual support," Mot. at 7, and these allegations do, in fact, have such support. As explained above, Plaintiffs based these allegations on the facts that the Azoff Entities organized Croft's travel under circumstances from which they should have known that she was being trafficked, and that Dolan was acting as an agent of the Azoff Entities when he trafficked Croft.

Nor did the pre-filing correspondence of the Azoff Entities trigger a duty in Plaintiff to abandon her claims. Defendants aver nonetheless that Plaintiff should have reconsidered her allegations in response to paragraphs 3, 5, 6, and 7 of the Vergara Declaration, which was served as part of the Azoff Entities' Safe Harbor notice. But those paragraphs of the Declaration merely argued what "discovery

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

16

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

would show" and opined that the Complaint would not pass muster under Rule 12(b)(6). Decl. of Catalina Vergara at ¶¶ 5 ("discovery would show . . ."); 6 ("Discovery would also refute . . ."); 7 ("Discovery also would show . . ."). As *Townsend* instructs, "what discovery will show" is the stuff of litigation, not a sanctions motion. ECF 43-1. This is exactly the sort of sanctions motion that Rule 11 disfavors—making threats to deter a filing when the Defendants merely disagree with the merits of a pleading.

Likewise, nothing about Exhibit 2 to the Vergara Declaration triggered a duty to reconsider. Exhibit 2 is the letter the Azoff Entities submitted to Plaintiff before their Safe Harbor notice, and, apart from the arguments in the Vergara Declaration, it is the only document submitted to attack Plaintiff's reasonable inquiry. But the letter was couched entirely in 12(b)(6) language, used the rhetoric of a motion to dismiss, or otherwise attacked the merits of the claim. Decl. of Catalina Vergara., Ex. 2, p. 2 ("they do not remotely state a plausible claim . . . ."); ("to state a viable claim . . . ."); *id*. (citing three cases granting motions to dismiss); *id*. ("The (false) allegation . . ."). This error is even more egregious in their actual motion. *See* Mot. at 3 ("To state a claim for participation . . ."); *id*. ("the Complaint alleges no facts that satisfy any of these elements"); *id*. (citing two cases decided at the motion to dismiss stage); *id*. at 5 ("To plead participation . . ."); ("the Complaint alleges no facts . . ."); *id*. ("allegations . . . are entirely insufficient"); *id*. at 6 ("Plaintiff's Complaint alleges no facts stating a plausible claim against the Azoff Entities."). Not once did the Azoff Entities cite a dispositive fact, such as a mistake about their involvement with Dolan, or evidence about their corporate governance, that would make liability impossible. Nor have they ever suggested, either in their original letter, their Safe Harbor, or the instant motion, some improper purpose behind the

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

17

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

Complaint. And, as the Azoff Entities admit, Plaintiff did not file claims under Cal. Civ. Code § 52.5, demonstrating that she carefully considered the Azoff Entities' contentions and took the threat of potential sanctions seriously, bolstering her allegations and removing a potentially time-barred claim.

This case is thus easily distinguished from *Townsend*, upon which the Azoff Entities rely. In *Townsend*, the defendant produced affidavits which, if true, totally undermined the allegations in the complaint. 929 F.2d at 1366. This triggered a duty on the part of the plaintiff to conduct some kind of inquiry into the truth of these affidavits, especially since the defendant-movants were merely the attorneys of the party with whom the plaintiff appeared to have his real dispute, and, under those circumstances, were unlikely to be liable as alleged. *See id*. ("the court inferred from the fact that the allegations were frivolous and from the fact that Wilson & Reitman had been the law firm which opposed Wright in the state court action that the naming of Wilson was essentially vindictive."); *see, e.g.*, *Arcume v. Aloha Motorcycle U-Drive, Inc.*, 15 F.3d 1082 (9th Cir. 1994) (inquiry unreasonable, where plaintiff sought $30,000,000 in damages based on a $950 charge to his credit card, and could not answer deposition questions about his claims). The record in *Townsend* showed the Plaintiff conducted "no inquiry" into his allegations, either before or after the filing of the affidavits. *See* Firetog Decl. ¶¶ 2, 12. Here, by contrast, Plaintiff's factual basis is clear, and none of the circumstances suggest bad faith. That is, nothing sent by the Azoff Entities even remotely resembled the dispositive affidavit of the defendant law-firm in *Townsend*. *Cf. Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 653 (D. Del. 2014) ("Here there was a single document, which was identified by the Defendants, which clearly showed, in combination with the publicly available vehicle owner's manuals, that the

18

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

Defendants' products did not infringe.").[9] Nor are the Azoff Entities like the law firm-Defendant in Townsend an inherently suspect defendant.

## V.   No Sanctions are Warranted, and Plaintiff Should be Awarded Fees and Costs as the Prevailing Party

Underscoring again that this Rule 11 motion is an attack on the merits of the Complaint, Moving Defendants ask for dismissal as a sanction. A sanctions motion at the outset of a case, making 12(b)(6) arguments, and asking for dismissal as a sanction, is a misuse of Rule 11. For instance, not a single case cited by Moving Defendants granted dismissal as a sanction at the very outset of a case. *See Tunstall v. Bodenhamer*, No. 16 Civ. 2665 (JAM) (DBP), 2017 WL 5861377, at *2 (E.D. Cal. Nov. 29, 2017) (concerning pro se prisoner's motions for injunctive relief aimed at entities not party to the proceedings); *Vehicle Operation Techs. LLC*, 67 F. Supp. 3d at 653 (dismissal after a year of litigation). Given the goals and policies of Rule 11, and the liberal pleading standards of the federal rules, this would necessarily be an exceedingly rare outcome. Tellingly, Moving Defendants admix cases about merits

---

[9]   Moving Defendants' other cases, in footnote 7, only go to show how far short they have fallen from presenting dispositive evidence that would have warranted Plaintiff dropping this suit. *See Gallego v. Hunts & Henriques, CLP*, No. 19 Civ. 07596 (VC), 2020 WL 5576134, at *1 (N.D. Cal. Sept. 17, 2020) (defendant had presented dispositive evidence to plaintiff's counsel that a third-party scam had made it erroneously appear that defendant had been involved in the conduct alleged); *Lampkin v. Cnty. of Sacramento*, No. 22 Civ. 01204 (JAM) (JDP), 2022 WL 3327469, at *2 (E.D. Cal. Aug. 11, 2022) ("[T]he certificate at the root of these claims plainly states that Spagner is a 'Deputy Clerk of the Superior Court of the State of California, County of Sacramento,' and is therefore, an employee of the State of California."). Finally, contrary to Moving Defendants' suggestion, *City of Yonkers v. Otis Elevator Co.*, 106 F.R.D. 524, 525 (S.D.N.Y. 1985), does not stand for the proposition that the plaintiff must always withdraw their complaint when asked to do so by the defendant.

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

dismissal. Mot. at 9 (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 737 (9th Cir. 2008) and *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013)).

As their motion lacks all merit, and there is clear and convincing evidence that it was filed to gain tactical advantage, Plaintiff should be awarded her reasonable fees and costs as the "prevailing party" under FRCP 11(c)(2). *See Thrasio, LLC v. Boosted Com. Inc*, No. 21 Civ. 01337 (CBM) (SK), 2022 WL 2285514, at *2 (C.D. Cal. Apr. 22, 2022) ("Because the Court denies the Motion, the Court finds that Thrasio is the prevailing party and is thus entitled to attorney's fees.")

**CONCLUSION**

In sum, Azoff Entities have filed a sanctions motion making 12(b)(6) merits arguments, based on omissions of fact and misapprehensions of law. For these and all of the foregoing reasons, the Azoff Entities' Motion should be denied in its entirety and the Court should grant Plaintiff her fees and costs as the prevailing party.

Dated: April 15, 2024

Respectfully submitted,

By: _____

**WIGDOR LLP**
Douglas H. Wigdor (Admitted *pro hac vice*)
Meredith A. Firetog (Admitted *pro hac vice*)
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone: (212) 257-6800
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICE OF KEVIN MINTZER, P.C.**
Kevin Mintzer (Admitted *pro hac vice*)
Laura L. Koistinen (Admitted *pro hac vice*)
1350 Broadway, Suite 1410
New York, New York 10018
km@mintzerfirm.com
llk@mintzerfirm.com

**GIRARD BENGALI, APC**

Omar H. Bengali
355 S Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (323) 302-8300
obengali@girardbengali.com

*Attorneys for Plaintiff Kellye Croft*

21
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11

1

## **CERTIFICATE OF COMPLIANCE**

2          The undersigned, counsel of record for Plaintiff Kellye Croft, certifies that

3   this brief contains 6733 words, in compliance with Local Rule 11-6.1

4

5   Dated: April 15, 2024

6                                                Respectfully submitted,

7   By: _____

8

9

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

22

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AZOFF
ENTITIES' MOTION FOR SANCTIONS UNDER RULE 11