1    DANIEL M. PETROCELLI (S.B. # 97802)
2     detrocelli@omm.com
    O'MELVENY & MYERS LLP
3    1999 Avenue of the Stars, 8th Floor
    Los Angeles, California 90067-6035
4    Telephone: (310) 553-6700
5    Facsimile: (310) 246-6799

6    CATALINA VERGARA (S.B. # 223775)
7     cvergara@omm.com
    O'MELVENY & MYERS LLP
8    400 South Hope Street, 18th Floor
9    Los Angeles, California 90071
    Telephone: (213) 430-6000
10   Facsimile: (213) 430-6400

11

12   *Attorneys for Defendants*
    The Azoff Company Holdings LLC and
13   The Azoff Company LLC

14            **UNITED STATES DISTRICT COURT**

15            **CENTRAL DISTRICT OF CALIFORNIA**

16   KELLYE CROFT,              Case No. 2:24-cv-00371

17         Plaintiff,           **DEFENDANTS AZOFF ENTITIES'**
18       vs.                  **NOTICE OF MOTION AND MOTION**
                          **TO DISMISS AMENDED COMPLAINT**
19   JAMES DOLAN, HARVEY     **PURSUANT TO FEDERAL RULE OF**
    WEINSTEIN, JD & THE        **CIVIL PROCEDURE 12(b)(6)**
20   STRAIGHT SHOT, LLC, THE
    AZOFF COMPANY HOLDINGS
21   LLC f/k/a AZOFF MUSIC       Date: June 3, 2024
    MANAGEMENT, LLC, THE       Time: 1:30pm
22   AZOFF COMPANY LLC f/k/a    Location: Courtroom 9A
    AZOFF MSG ENTERTAINMENT,   Judge: Hon. Percy Anderson
23   LLC, DOE CORPORATION 1-10,

24         Defendant.

25

26

27

28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 3, 2024, at 1:30 p.m., or as soon thereafter as counsel may be heard by the above-entitled court, located in Courtroom 9A at First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, Defendants The Azoff Company Holdings LLC and The Azoff Company LLC (collectively, the "Azoff Entities") will and hereby do move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of Plaintiff's first cause of action against the Azoff Entities.

This motion is based on the ground that Plaintiff's first—and only—claim for relief against the Azoff Entities, for allegedly participating in a sex trafficking venture in violation of the federal Trafficking Victims Protection Act, 18 U.S.C. § 1591, fails to state a viable claim.  Even after amending her Complaint, Plaintiff has failed to allege any facts that, taken as true, would satisfy the required elements of the claim—namely, that the Azoff Entities knew of, participated in, or benefitted from any sex trafficking venture.

The Azoff Entities' motion is based on this Notice of Motion and accompanying Memorandum of Points and Authorities; the concurrently filed Proposed Order; all other briefing in this case; and such additional submissions and argument, including any reply briefing, as may be presented at or before the hearing on this motion.  The motion is made following the conference of counsel required by Local Rule 7-3, which took place via videoconference on March 18, 2024 and April 23, 2024.

DATED: April 24, 2024                    O'MELVENY & MYERS LLP


By:      */s/ Daniel M. Petrocelli*
         Daniel M. Petrocelli
         Attorneys for Defendants Azoff Entities

DANIEL M. PETROCELLI (S.B. # 97802)
  detrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6799

CATALINA VERGARA (S.B. # 223775)
  cvergara@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6400

*Attorneys for Defendants*
The Azoff Company Holding LLC and
Azoff Music Management, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLYE CROFT. | Case No. 2:24-cv-00371 |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS AZOFF ENTITIES' MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |
| vs. | |
| JAMES DOLAN, HARVEY WEINSTEIN, JD & THE STRAIGHT SHOT, LLC, THE AZOFF COMPANY HOLDINGS LLC f/k/a AZOFF MUSIC MANAGEMENT, LLC, THE AZOFF COMPANY LLC f/k/a AZOFF MSG ENTERTAINMENT, LLC, DOE CORPORATION 1-10, | |
| | Date:  June 3, 2024 |
| Defendant. | Time:  1:30pm |
| | Location:  Courtroom 9A |
| | Judge:   Hon. Percy Anderson |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................... 1

II.   BACKGROUND ............................................................................ 2

III.   LEGAL STANDARD ................................................................... 4

IV.   ARGUMENT ................................................................................. 5

     A.   Plaintiff fails to allege facts showing that the Azoff Entities knew or should have known of any sex trafficking scheme. ........................... 6

     B.   Plaintiff fails to allege facts showing that the Azoff Entities participated in any sex trafficking venture. ............................... 9

     C.   Plaintiff fails to allege facts showing that the Azoff Entities knowingly benefitted from any sex trafficking venture. ..................... 11

     D.   Plaintiff fails to allege facts showing that the Azoff Entities are vicariously liable for Dolan's conduct. .................................... 13

     E.   The Court should not grant leave to amend. ........................................ 15

V.   CONCLUSION ............................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abagninin v. AMVAC Chem. Corp.*,
    545 F.3d 733 (9th Cir. 2008) ................................................................ 16

*Ascon Props., Inc. v. Mobil Oil Co.*,
    866 F.2d 1149 (9th Cir. 1989) ............................................................. 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................... 5, 6

*B.J. v. G6 Hospitality, LLC*,
    2023 WL 6120682 (N.D. Cal. Sept. 18, 2023) ................................... 14

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................. 5

*Canosa v. Ziff*,
    2019 WL 498865 ........................................................................... 10, 11

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
    671 F. Supp. 3d 387 (S.D.N.Y. 2023) ........................................... passim

*Doe by Doe v. Piraino*,
    -- F. Supp. 3d --, 2023 WL 5310556 (M.D. Tenn. Aug. 17, 2023) .............. 7, 8, 15

*Does 1-6 v. Reddit, Inc.*,
    51 F.4th 1137 (9th Cir. 2022) ........................................................ 11, 12

*Eckhart v. Fox News Network, LLC*,
    2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021) ..................................... 7, 8

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ....................................... 9, 11, 13

*Ileto v. Glock, Inc.*,
    349 F.3d 1191 (9th Cir. 2003) ............................................................... 4

*In re ChinaCast Educ. Corp. Sec. Litig.*,
    809 F.3d 471 (9th Cir. 2015) ............................................................... 15

*J.B. v. G6 Hosp., LLC*,
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ..................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

*J.C. v. Choice Hotels Int'l, Inc.*,
   2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ...................................................... 14

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ......................................................................... 5, 6

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) ......................................................... 9, 11

*Ratha v. Phatthana Seafood Co.*,
   35 F.4th 1159 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 491, 214 L.
   Ed. 2d 280 (2022) ........................................................................................ 5, 6

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ......................................................................... 16

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................... 5, 14, 15

**Statutes**

18 U.S.C. § 1591 ................................................................................................ 1, 5

18 U.S.C. § 1591(a) .................................................................................................. 5

18 U.S.C. § 1591(b) .................................................................................................. 5

18 U.S.C. § 1595 ...................................................................................................... 5

18 U.S.C. § 1595(a) ............................................................................................ 1, 11

**Other Authorities**

H.R. REP. NO. 106-487, pt. 1, at 15 (1999) ............................................................ 2

Restatement (Third) of Agency ..................................................................... 14, 15

**Rules**

Fed. R. Civ. P. 11(b) ................................................................................................ 6

## I.     INTRODUCTION

Plaintiff's Amended Complaint does not and cannot cure the fatal infirmities in her claim against the Azoff Entities.  She again accuses the Azoff Entities of violating the federal Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1591, by allegedly participating in a venture to traffick her to Los Angeles "for the purposes of providing sexual favors."  But not only does the Amended Complaint fail to plausibly allege any such venture, its claim that the Azoff Entities participated in it is indefensible.  Devoid of any actual allegations of wrongdoing, the Amended Complaint adds allegations that do nothing to establish the elements of a federal sex trafficking claim against the Azoff Entities.  The core factual allegations remain unchanged: Plaintiff alleges that (i) the Azoff Entities coordinated Plaintiff's travel to and from Los Angeles to perform masseuse services for the Eagles band and co-defendant James Dolan in connection with their concert appearances in January 2014; (ii) a person she now describes as an "agent" of the Azoff Entities, Marc Robbins, arranged a doctor's visit for Plaintiff while she was in Los Angeles and gave her rides to the concert venue on the days she worked; and (iii) Dolan encouraged Plaintiff to go shopping and out to dinner with two "female assistants from [the Azoff Entities]."  Plaintiff also alleges, for the first time and without any factual support, that Dolan was an agent of the Azoff Entities and that they are thus vicariously liable for his alleged trafficking of Plaintiff.

These benign facts do not come close to supporting a sex trafficking claim. Critically, as before, the Amended Complaint contains no facts suggesting the Azoff Entities *participated in*, *benefitted from*, or *even knew* about any sex trafficking scheme—all of which are required to state a claim.  *See* 18 U.S.C. § 1595(a).  That is because Plaintiff has no facts that could plausibly implicate the Azoff Entities in

conduct as deplorable as sex trafficking.[1]  Plaintiff's federal sex trafficking claim against the Azoff Entities should accordingly be dismissed.

Moreover, Plaintiff should not be granted leave to amend.  This is Plaintiff's third bite at the apple.  Before suit was commenced, after receiving and reviewing a draft of the Original Complaint, counsel for the Azoff Entities detailed to Plaintiff's counsel the fatal deficiencies in the sex trafficking claim against the Azoff Entities.  Plaintiff proceeded to file suit anyway, purporting to address these deficiencies by concocting an allegation on "information and belief" that the Azoff Entities knew about Dolan's alleged sexual exploitation of Plaintiff and benefitted as a result of the alleged scheme.  No facts were alleged, or could be, to justify this bare conclusory allegation added without any basis—a matter that is addressed in the Azoff Entities' pending motion for Rule 11 sanctions.  Dkt. 43.

Furthermore, after Plaintiff filed suit, in a Rule 11 motion served 21 days in advance of filing (as required by rule), Plaintiff's counsel was again apprised of the irremediable infirmities of her claim against the Azoff Entities.  Yet Plaintiff and her counsel still refused to withdraw the claim.  Indeed, after Azoff Entities filed their motion to dismiss the Original Complaint, Plaintiff doubled down on her baseless claim by filing an Amended Complaint.  Leave to further amend would thus be futile.  Plaintiff's federal sex trafficking claim against the Azoff Entities should now be dismissed with prejudice.

## II.   BACKGROUND

The factual allegations against the Azoff Entities are sparse and not plausibly or remotely probative of participation in sex trafficking.  Am. Compl. ¶¶ 47–59.

---

[1] When the TVPA was enacted, it was "to combat the growing problem of trafficking in persons" by "organized criminal groups, [that] lure women with false promises of earning money overseas as maids, factory workers, sales clerks, dancers, or models" but are instead held "under slavery-like conditions in prostitution or in forced labor."  H.R. REP. NO. 106-487, pt. 1, at 15 (1999).

Plaintiff alleges that, around the end of 2013, the Azoff Entities asked her to come to California to work as a massage therapist for the 2014 Los Angeles leg of the Eagles tour.  *Id.* ¶ 47.  She claims the Azoff Entities arranged her flight to Los Angeles—which an email forwarded to her by Marc Robbins, purportedly an agent of the Azoff Entities, suggested would be paid by Dolan.[2]  *Id.* ¶ 48.  She also claims that the Azoff Entities, including Robbins, arranged for her transportation from the airport in Los Angeles, for her stay at The Peninsula Hotel in Beverly Hills, and for her transportation to the Forum (the concert venue where she performed her massage services).  *Id.* ¶¶ 49–51, 56–57.  According to Plaintiff, these arrangements were orchestrated by the Azoff Entities and Dolan—who allegedly helped finance the Eagles tour,[3] made monetary investments in the Azoff Entities, and opened for the Eagles with his band—because Dolan "wished to sexually exploit" Plaintiff on the tour.  *Id.* ¶¶ 49–59.  She concludes "[o]n information and belief," and with no supporting facts, that the Azoff Entities "arranged for [Plaintiff] to be brought to California at Dolan's request" for the "purposes of engaging in unwanted sexual acts with Dolan."  *Id.* ¶ 59.

Plaintiff further claims that Dolan "fraudulently coordinate[d]" a meeting between her and Harvey Weinstein, purportedly a close friend of Dolan's.  *Id.* § IV.; *id.* ¶ 71.  She alleges that, one evening, after she allegedly accompanied two "female assistants" from one of the Azoff Entities for shopping and dinner at Dolan's

[2] Plaintiff previously—and falsely—described Robbins as an "executive" of the Azoff Entities.  As Plaintiff's counsel was informed and as is addressed in the Rule 11 motion, Robbins was not an executive—but an independent contractor—of the Azoff Entities who was acting as the manager for the Eagles' touring company.  In any case, now characterizing Robbins as an agent—in a purely conclusory allegation no less—does nothing to salvage Plaintiff's claim.

[3] Plaintiff's counsel also was advised that Dolan did not finance the Eagles tour—a false assertion the Court need not consider in ruling on this motion.

encouragement, she was waiting for the elevator to return to her hotel room when Weinstein introduced himself to her. *Id.* ¶¶ 68–71.  As she describes it, after Weinstein learned she was a massage therapist, he suggested he might have work opportunities for her and invited her to join him in his suite, which she agreed to do. *Id.* ¶¶ 73–76.  Plaintiff claims Weinstein sexually assaulted her in the suite. *Id.* ¶¶ 77–96.  The next day, she claims she felt "so physically and emotionally unwell" that she was unable to work, at which point Robbins purportedly sent a doctor to see her. *Id.* ¶ 100.  Shortly thereafter, the Los Angeles leg of the Eagles tour ended, and the Azoff Entities arranged for Plaintiff's return flight back to her home in Tennessee. *Id.* ¶ 102.

The Amended Complaint alleges *no facts* linking Weinstein's alleged assault to the Azoff Entities, and none exists.  Instead, Plaintiff resorts to empty, conclusory allegations that Dolan and the Azoff Entities formed a "venture" to traffick her to California "for purposes of sex induced by force, fraud, or coercion" and "providing sexual favors." *Id.* ¶¶ 111–114.  She further alleges the Azoff Entities benefitted "financially and otherwise" from the alleged scheme because "Dolan was a critically important business partner" for them and trafficking Plaintiff "kept their important partner, a notoriously erratic billionaire, happy." *Id.* ¶ 115.  And in her Amended Complaint, Plaintiff now claims without any factual basis that Dolan was acting in his capacity as an agent of the Azoff entities when he allegedly "engaged in unwanted commercial sex acts with Plaintiff in Los Angeles." *Id.* ¶ 113.  These allegations are insufficient as a matter of law to state a sex trafficking claim against the Azoff Entities.

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claims. *Ileto v. Glock, Inc*., 349 F.3d 1191, 1199– 1200 (9th Cir. 2003).  Under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  A complaint cannot survive a motion to dismiss if it merely "tenders naked assertion[s] devoid of further factual enhancement." *Id.*  "[A] formulaic recitation of the elements of a cause of action" is insufficient.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## IV.   ARGUMENT

Plaintiff brings her claim under 18 U.S.C. § 1591, which imposes criminal penalties on individuals who engage directly in trafficking, as well as those who knowingly participate in and benefit from trafficking schemes.  18 U.S.C. §§ 1591(a), (b).  But it is 18 U.S.C. § 1595 that provides a private right of action for violations of Section 1591, permitting victims of trafficking to sue both direct perpetrators of trafficking and anyone who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPA]."  18 U.S.C. § 1595; *see also Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 491, 214 L. Ed. 2d 280 (2022).  To state a viable claim under Section 1595, Plaintiff must allege facts plausibly showing that the Azoff Entities knowingly benefitted from participation in

a venture with Dolan that they knew or should have known involved sex trafficking. *See Ratha*, 35 F.4th at 1175.  Plaintiff's scant allegations against the Azoff Entities, even if taken as true, cannot establish these elements.

### A.  Plaintiff fails to allege facts showing that the Azoff Entities knew or should have known of any sex trafficking scheme.

The Amended Complaint has no factual basis for the allegation that the Azoff Entities knew or should have known that Plaintiff would allegedly be forced to engage in a commercial sex act in violation of the TVPA while working as a masseuse on the Eagles tour in Los Angeles.  Plaintiff attempts to hide this fatal flaw by inventing a conclusory allegation "on information and belief" that the Azoff Entities "knew or acted in reckless disregard to the fact that" Plaintiff was flown out to Los Angeles because Dolan intended to sexually exploit her.  Am. Compl. ¶ 59. But this is the exact sort of "naked assertion devoid of further factual enhancement" that is insufficient to state a claim.  *Iqbal*, 556 U.S. at 678.  There is zero "non-conclusory factual content" to support the allegation, *Moss*, 572 F.3d at 969 (quotations omitted), and no diligence or investigation underpinning it, *see* Fed. R. Civ. P. 11(b).  It thus deserves no weight.  *Moss*, 572 F.3d at 969.

Conspicuously absent from Plaintiff's Amended Complaint are any factual allegations indicating that the Azoff Entities ignored the sort of "red flags" that courts have considered in concluding that a defendant knew or should have known sex trafficking was taking place.  For example, in *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387 (S.D.N.Y. 2023), the Southern District of New York held that the plaintiff adequately pleaded a TVPA claim against JPMorgan and Deutsche Bank for participation in Jeffrey Epstein's sex trafficking venture by alleging that the banks were "aware of Epstein's convictions for sex crimes and ignored numerous red flags" that his large cash withdrawals were being used to pay off victims, including internal departments that "alerted management

about Epstein's sex trafficking" and high-level executives who personally "observed victims in Epstein's home." *Id.* at 407–08.  Here, in stark contrast, there are no allegations that anyone affiliated with the Azoff Entities observed any sex trafficking or other sexual exploitation by Dolan, were aware of or had internally discussed any prior sexual misconduct by Dolan, or ignored any red flags.

Indeed, Plaintiff's allegations are even more threadbare than those in cases that courts have dismissed for failure to state a TVPA claim.  For example, in *Eckhart v. Fox News Network, LLC*, 2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021), the plaintiff alleged that Fox News benefitted from a sex trafficking venture perpetrated by one of its anchors, who allegedly coerced female employees to perform sex acts in exchange for career advancement.  *Id.* at *11.  Although the plaintiff also alleged that Fox News was "well aware" that the anchor had had an affair, completed a sex addiction treatment program, "flirted with younger women in the office," and was a "serial harasser," the court found those allegations insufficient to satisfy the "knowledge" element of Section 1595 and dismissed the claim.  *Id.* (quotations omitted).  The court reasoned that, while these allegations "could have put Fox News on notice that [the anchor] was engaged in sexual harassment," they were "insufficient to establish that Fox News knew or should have known that [the anchor] was *specifically engaged in sex trafficking*."  *Id.* (emphasis added).

Similarly, in *Doe by Doe v. Piraino*, -- F. Supp. 3d --, 2023 WL 5310556 (M.D. Tenn. Aug. 17, 2023), a case involving a fencing coach who allegedly sexually abused a minor student, the court dismissed a TVPA claim against USA Fencing, the national governing body that employed the coach.  *Id.* at *8.  There, the court held that the plaintiffs' allegations that the coach "had allegedly groped an adult woman" on one occasion, engaged in "belligerent and unethical behavior at fencing tournaments," and had been arrested for public intoxication "may have put [USA Fencing] on notice that [the coach] was generally a bad guy and a poor

ambassador for the sport, but not that he was engaged in acts that constituted [] sex trafficking." *Id.* (quotations omitted).  The plaintiffs thus failed to state a TVPA claim because they "[did] not point to any such specific and obvious signs that, if USA Fencing had been paying attention, would have alerted it to" the alleged sex trafficking.  *Id.*; *see also J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, *10 (N.D. Cal. Aug. 20, 2020) ("Significantly, while Plaintiff's allegations suggest that Economy Inn quite possibly should have been aware of some nefarious conduct, they do not suggest that Economy Inn should have known that the venture constituted sex trafficking.").

As in *Piraino* and *Eckhart*, Plaintiff has failed to allege any "specific and obvious signs" that would have provided the Azoff Entities with actual or constructive knowledge that Dolan "was *specifically* engaged in sex trafficking." *See Piraino*, 2023 WL 5310556, at *8; *Eckhart*, 2021 WL 4124616, at *11.  While Plaintiff alleges that Dolan forced her into unwanted sexual activities during a prior leg of the tour before she came to Los Angeles, she nowhere alleges she told any Azoff Entity representatives about such activities or that the Azoff Entities otherwise learned about them.  *See* Am. Compl. ¶¶ 37–46.  Moreover, Plaintiff does not allege that the Azoff Entities had knowledge of *any* sort of misconduct by Dolan—not even the harassing or abusive behaviors of the kind found insufficient to establish knowledge of sex trafficking in *Piraino* and *Eckhart*.  Nor is there any allegation in the Amended Complaint that the Azoff Entities had any connection to the alleged sexual assault by Weinstein in Los Angeles that Plaintiff features as the centerpiece of her lawsuit.[4]  *See* Am. Compl. ¶¶ 47–102.  Indeed, the Azoff Entities

---

[4] Grasping at straws, Plaintiff tries to link Weinstein to the Azoff Entities by offering a single photo of Dolan, Weinstein, and Irving Azoff at an advertising trade conference in 2015.  Am. Compl. ¶ 9.

could not possibly have foreseen the apparent chance encounter between Weinstein and Plaintiff that is described in the Amended Complaint. *See id.* ¶¶ 68–72.[5]

In short, Plaintiff has not alleged facts that could plausibly show that the Azoff Entities knew or should have known she was brought to Los Angeles to engage in a commercial sex act in violation of the TVPA. On that ground alone, Plaintiff's claim against the Azoff Entities fails.

### B.   Plaintiff fails to allege facts showing that the Azoff Entities participated in any sex trafficking venture.

Plaintiff relies on guilt by association to plead participation by the Azoff Entities in sex trafficking. She alleges that "Dolan was in multiple business ventures" with the Azoff Entities, including Azoff MSG Entertainment LLC (which engaged in various music-related business ventures), and was a "critically important business partner" in view of Dolan's alleged investment in the tour (false, *see* footnote 3 *supra*) and other joint business dealings, such as the reopening of the Forum in January 2014. Am. Compl. ¶¶ 32, 53, 115. And she alleges that "Dolan was extremely close friends with Irving Azoff," manager for the Eagles, and that the two spoke on a daily basis. *Id.* ¶ 35. But even accepting these allegations, mere association is insufficient to establish the Azoff Entities' participation in any sex trafficking venture. What is required are facts showing knowing or reckless "participation in the sex trafficking act itself." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (participation not established by "participation

---

[5] Plaintiff suggests that Dolan "fraudulently coordinate[d]" this meeting between her and Weinstein, Am. Compl. § I.V, although the only facts alleged to support this suggestion are that Dolan and Weinstein were friends and that Dolan had mentioned to Weinstein that he had a great massage therapist, *id.* ¶¶ 70–72.

in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture.").

Beyond these business ties, the few facts Plaintiff alleges regarding the actual *conduct* of the Azoff Entities—that the Azoff Entities, including Marc Robbins, arranged Plaintiff's travel to and from Los Angeles, and to and from the Forum and Ms. Croft's hotel while she was in Los Angeles, that Robbins obtained a doctor for her, and that two assistants for the Azoff Entities shopped and dined with her on one occasion upon Dolan's encouragement—are inconsequential and insufficient to demonstrate participation in a sex trafficking venture.[6]  Courts have required far more to satisfy the "participation" element.  For example, in *Deutsche Bank*, the court held that the plaintiff adequately pleaded JPMorgan and Deutsche Bank's participation in Jeffrey Epstein's sex trafficking venture where they allegedly sent "dozens of wires" "of $10,000 or more to then known co-conspirators," "structured" withdrawals of cash to pay off victims so as to "avoid alerting authorities," and deliberately "delayed filing suspicious activity reports" regarding those withdrawals. 671 F. Supp. 3d at 405–06 (quotations omitted).  Similarly, in *Canosa v. Ziff*, the plaintiff sufficiently pleaded participation by employees of Harvey Weinstein in his sex trafficking by alleging "specific means and methods" that facilitated Weinstein's sexual assaults, such as "[giving] Weinstein medications and other paraphernalia (such as caverject shots) that he needed to perform sexual acts, and clean[ing] up after the sexual assaults to avoid detection by others."  2019 WL 498865, at *3, *24.  In contrast, in *Noble*, which also concerned Harvey Weinstein's sex trafficking, the court held that the plaintiff failed to state a claim against his brother Robert

---

[6] Plaintiffs' Amended Complaint includes additional inconsequential allegations—for example, that Robbins told Plaintiff that she would be needed at the show on Monday and that "[w]e will make arrangements for you," Am. Compl. ¶ 50, and that Robbins personally drove her to the Forum on one occasion, *id.* ¶ 51.  These facts show nothing more than Robbins' involvement in various tour logistics.

Weinstein where the actions he was alleged to have taken, such as paying for travel, were things he did simply "by virtue of his job responsibilities."  335 F. Supp. 3d at 524.

Unlike *Deutsche Bank* and *Canosa*, Plaintiff has alleged nothing here to suggest that the Azoff Entities took actions in furtherance of the alleged sex trafficking scheme, such as providing paraphernalia needed for sexual acts or intentionally taking steps to prevent discovery of the trafficking.  *See Deutsche Bank*, 671 F. Supp. 3d at 405–06; *Canosa*, 2019 WL 498865, at *3.  Nor has she even alleged that the Azoff Entities were made aware of Weinstein's alleged sexual assault.  She alleges she was "unwell" and that Robbins "sent a doctor to see her," Am. Compl. ¶ 100, but nowhere alleges that she informed Robbins or anyone else affiliated with the Azoff Entities that she had allegedly been assaulted.  Even assuming Robbins' alleged activities can be imputed to the Azoff Entities, arranging Plaintiff's travel to join the tour in Los Angeles, her lodging, and a doctor's visit—all typical tasks in managing a tour—are plainly insufficient to satisfy the requisite participation element of Plaintiff's federal sex trafficking claim.  On this additional ground, the claim must be dismissed.

### C.    Plaintiff fails to allege facts showing that the Azoff Entities knowingly benefitted from any sex trafficking venture.

Finally, Plaintiff fails to plead facts showing that the Azoff Entities knowingly benefitted "financially or by receiving anything of value" from participation in any sex trafficking venture.  18 U.S.C. § 1595(a).  "[K]nowingly benefitting" from participation in a sex trafficking venture "requires actual knowledge and 'a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit.'"  *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (quoting *Geiss*, 383 F. Supp. 3d at 169), *cert. denied*, 143 S. Ct. 2560, 216 L. Ed. 2d 1180 (2023).

Here, Plaintiff alleges that the Azoff Entities benefitted from "keeping Dolan satisfied" because he was "a critically important business partner for the Azoff Entities," as reflected by his decision to "invest $175 million in Azoff MSG Entertainment, LLC and to serve as a funding source for the Eagles 2014 tour and the opening of The Forum." Am. Compl. ¶ 115. But these allegations do not establish that Dolan took these actions *because of* the Azoff Entities' participation in the alleged sex trafficking venture. *See Reddit*, 51 F.4th at 1145. For one, these alleged acts by Dolan necessarily would have occurred before the alleged trafficking, precluding any causal relationship. *See* Am. Compl. ¶¶ 31–32 (describing Plaintiff's involvement and Dolan's funding of the "November 2013 leg of the tour"). And the news article Plaintiff cites regarding Dolan's investment in Azoff MSG Entertainment LLC is from September 2013—months before the alleged trafficking in January 2014. *See id.* ¶ 35 n.4; *id.* ¶ 53 (alleging that Azoff MSG Entertainment was created in September 2013 to fund the reopening of the Forum). Moreover, even accepting that Dolan was an important business partner of the Azoff Entities does not show that Dolan continued doing business with the Azoff Entities *because* they engaged in "affirmative conduct furthering the sex-trafficking venture." *See Reddit*, 51 F.4th at 1145.

*Deutsche Bank* is instructive on this point. There, the court held that the plaintiff sufficiently alleged that JPMorgan and Deutsche Bank knowingly benefitted from their participation in Epstein's sex trafficking scheme because the plaintiff alleged that the banks understood that they "would lose a lot of money if [they] fired Epstein as [a] client," so they not only "chose to ignore warnings that Epstein was involved in sex-trafficking" but even affirmatively "lobbied to keep Epstein as a client" because the "relationship with Epstein was lucrative." 671 F. Supp. 3d at 408. Plaintiff's allegations here, in contrast, do not show that the Azoff Entities "would lose a lot of money" if they did not arrange for her to join to tour in

Los Angeles, *see id.*, particularly since she points only to business actions of Dolan that occurred before Plaintiff ever came to California. Nor can Plaintiff allege any facts showing that Azoff representatives "ignore[d] warnings" that Dolan sought to sexually exploit her and instead actively "lobbied" to participate in the alleged scheme because it would be lucrative. *See id.*

Rather, the allegations here are far more tenuous than those that the court in *Geiss* concluded were insufficient to state a claim. There, in a case alleging participation of The Weinstein Company ("TWC") in Harvey Weinstein's sex trafficking venture, the court noted that, although TWC benefitted from Weinstein's continued employment because his films generated revenue for the company, that fact alone did not establish that Weinstein provided those benefits "*because of* TWC's facilitation of H. Weinstein's sexual misconduct." 383 F. Supp. 3d at 169 (emphasis in original). There was no allegation that Weinstein secured TWC's complicity in his sex trafficking as a condition of his employment; to the contrary, the allegations demonstrated that any benefit to TWC accrued in spite of Weinstein's misconduct—not because of it. *Id.* at 169–70. Here, by the same token, Plaintiff does not and cannot plausibly allege that Dolan conditioned his business dealings with the Azoff Entities on their assistance in his alleged trafficking scheme or that any benefits to the Azoff Entities from a continued business relationship with Dolan resulted from it. *See id.*

Plaintiff's failure to plead facts showing that the Azoff Entities knowingly benefitted from a sex trafficking venture provides yet another reason that her claim must be dismissed.

### D.   Plaintiff fails to allege facts showing that the Azoff Entities are vicariously liable for Dolan's conduct.

Finally, in a vain attempt to keep the Azoff Entities in this lawsuit, Plaintiff adds yet another conclusory allegation that "Defendant Dolan was an agent of the

[Azoff Entities]" and that his "unwanted commercial sex acts with Plaintiff" occurred while "Dolan was acting in his capacity as an agent" such that the Azoff Entities "are vicariously liable for Dolan's unlawful acts."  Am. Compl. ¶¶ 112–13.  This throwaway allegation does nothing to salvage Plaintiff's deficient claim.

"Ninth Circuit courts apply common law agency principles from the Restatement" to TVPA claims.  *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *8 (N.D. Cal. Oct. 28, 2020).  An agency relationship requires "a manifestation by the principal that the agent shall act for him," the "accept[ance] [of] the undertaking" by the agent, and "an understanding" that "the principal is to be in control of the undertaking."  *B.J. v. G6 Hosp., LLC*, 2023 WL 6120682, at *9 (N.D. Cal. Sept. 18, 2023) (citing Restatement (Third) of Agency § 1.01 (2006)) (quotations omitted).  And for a principal to be vicariously liable, the agent must be an employee, meaning that the principal "controls or has the right to control the manner and means" of the agent's work.  *Id.*; Restatement (Third) of Agency § 7.07 cmt. f.  Plaintiff's conclusory allegation of agency fails under these principles for at least two reasons.

*First*, there are no factual allegations to support Plaintiff's contention that Dolan was an agent of the Azoff Entities.  It is thus not entitled to a presumption of truth.  *See Sprewell*, 266 F.3d at 988.  There are no allegations that the Azoff Entities and Dolan agreed that Dolan would act for the Azoff Entities or that the Azoff Entities exercised control over Dolan so as to create an employment relationship.  Indeed, Plaintiff's allegations actually dispel the notion that Dolan was an agent or employee of the Azoff Entities.  She alleges that Dolan was "a long-time business partner" of the Azoff Entities and "significant funder" of the Eagles tour whose "immense wealth, power, and influence" allowed him to make his band the tour's opening act.  Am. Compl. ¶¶ 32.  According to Plaintiff, "Dolan controlled the purse strings" and had "*profound power over everyone* involved in the venue

and the tour." *Id.* ¶ 55 (emphasis added).  These allegations belie the notion that the Azoff Entities exercised such a degree of control over Dolan as to render Dolan their agent and give rise to vicarious liability.  *See Sprewell*, 266 F.3d at 988 (plaintiff can "plead himself out of a claim" by alleging "details contrary to his claims").

*Second*, even if Dolan were an agent of the Azoff Entities, the Azoff Entities would still not be vicariously liable for Dolan's alleged sexual misconduct.  A principal is only vicariously liable for an agent's tortious conduct within the scope of employment, not conduct that solely furthers "the employee's own purposes."  Restatement (Third) of Agency § 7.07 cmt. b.  Under the "adverse interest exception," a "rogue agent's actions or knowledge are not imputed to the principal if the agent acts adversely to the principal" and acts "solely for the agent's own purposes."  *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) (quotations omitted).  Thus, the court in *Piraino* concluded that the fencing coach's alleged sex trafficking could not be attributed to his employer, USA Fencing, because that conduct was solely for his own purposes, outside the scope of his authority.  2023 WL 5310556, at *8 (relying on adverse interest exception).  By the same token, the alleged misconduct by Dolan—undertaken solely for his own benefit and conferring no benefit on the Azoff Entities—is not attributable to the Azoff Entities.

**E.    The Court should not grant leave to amend.**

The Court should not grant Plaintiff leave to amend her Complaint.  Plaintiff has already had ample opportunity to plead the essential facts: *first*, after the Azoff Entities identified the factual and legal deficiencies in Plaintiff's draft complaint on January 14, 2024, before the commencement of this action; *second*, after the Azoff Entities provided an advance copy of their motion for Rule 11 sanctions on March 1, 2024; and *third*, in her Amended Complaint filed in response to the Azoff Entities'

motion to dismiss the Original Complaint.  She has come up woefully short each time.  Further amendment would thus be futile.

A court's discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint."  *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (dismissal with prejudice warranted where "previous amendment failed to cure [the] deficiency" in allegations).  Plaintiff's failure to state a claim—even after the Azoff Entities explicitly and repeatedly identified its shortcomings, giving Plaintiff multiple chances to support her allegations—demonstrates that Plaintiff cannot do so, and that dismissal with prejudice is thus warranted.  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment") (quotations omitted).

## V.    CONCLUSION

For the foregoing reasons, the Court should grant the Azoff Entities' motion and dismiss Plaintiff's first cause of action against the Azoff Entities without leave to amend.

DATED: April 24, 2024                    O'MELVENY & MYERS LLP

By: _____/s/ Daniel M. Petrocelli_____
Daniel M. Petrocelli
Attorneys for Defendants Azoff Entities

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for the Azoff Entities, certifies that this brief contains 5,187 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  April 24, 2024          By: _____*/s/ Daniel M. Petrocelli*_____
                                              Daniel M. Petrocelli