DOUGLAS H. WIGDOR (NY SBN 2609469)
dwigdor@wigdorlaw.com
MEREDITH A. FIRETOG (NY SBN 5298153)
mfiretog@wigdorlaw.com
(Admitted *pro hac vice*)
**WIGDOR LLP**
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Tel.: (212) 257-6800

OMAR H. BENGALI (CA SBN 276055)
obengali@girardbengali.com
**GIRARD BENGALI, APC**
355 S. Grand Street, Suite 2450
Los Angeles, CA 90071
Tel.: (323) 302-8300

Kevin Mintzer (NY SBN 2911667)
km@mintzerfirm.com
Laura L. Koistinen (NY SBN 5755079)
llk@mintzerfirm.com
(Admitted *pro hac vice*)
**LAW OFFICE OF KEVIN MINTZER, P.C.**
1350 Broadway, Suite 1410
New York, NY 10018
Tel.: (646) 843-8180

*Attorneys for Plaintiff Kellye Croft*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

KELLYE CROFT,

       Plaintiff,

   vs.

JAMES DOLAN, HARVEY WEINSTEIN, JD & THE STRAIGHT SHOT, LLC, THE AZOFF COMPANY HOLDINGS LLC f/k/a/ AZOFF MUSIC MANAGEMENT, LLC, THE

Case No. 2:24-cv-00371-PA (AGR)

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DOLAN DEFENDANTS' MOTION TO DISMISS**

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

1    AZOFF COMPANY LLC f/k/a AZOFF
     MSG ENTERTAINMENT, LLC, DOE
2    CORPORATIONS 1-10,

3                              Defendants.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

FACTS ............................................................................................................. 4

MOTION TO DISMISS STANDARD .................................................................. 4

DISCUSSION .................................................................................................. 4

I.   The Amended Complaint States a Claim Against the Dolan
     Defendants Under the TVPRA ................................................................ 4

     A.   The Dolan Defendants are Liable as Perpetrators ............................. 5

          1.   The Dolan Defendants Knowingly Defrauded and
               Coerced Croft so that Dolan Could Sexually Exploit Her ......... 6

          2.   The Amended Complaint Alleges a Commercial Sex Act ........ 9

     B.   The Dolan Defendants are Liable as Beneficiaries of Sex
          Trafficking ................................................................................. 10

II.  Plaintiff's Sexual Battery Claim is Plausibly Alleged and is Timely .......... 11

     A.   Croft Has Stated a Claim for Sexual Battery ................................. 12

     B.   The Sexual Battery Claim is Timely .............................................. 14

III. Plaintiff's Aiding and Abetting Claim Against Dolan is Sufficiently
     Stated and is Not Released ..................................................................... 15

     A.   Dolan Aided and Abetted the Weinstein Assault ........................... 15

     B.   The TWC Bankruptcy Release Should Not Bar Croft's Claim .......... 18

CONCLUSION ............................................................................................... 22

WIGDOR LLP
85 FIFTH AVE., FIFTH FLOOR
NEW YORK, NEW YORK 10003
(212) 257-6900

i

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................4

*Ass'n for Los Angeles Dpty. Sheriffs v. Cnty. of Los Angeles*,
    648 F.3d 986 (9th Cir. 2011)........................................................................4

*Benson v. JPMorgan Chase Bank, N.A.*,
    No. 09 Civ. 05272, 2010 WL 1526394 (N.D. Cal. Apr. 15, 2010)......................17

*Canosa v. Ziff*,
    No. 18 Civ. 04115, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ...........................5

*Casey v. US Nat Assn.*,
    127 Cal. App. 4th, 1138 (2005) .............................................................15, 17

*Chemetron Corp. v. Jones*,
    72 F.3d 341 (3d Cir. 1995)............................................................................22

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) ......................................................17

*David v. Weinstein Co.*,
    431 F. Supp. 3d 290 (S.D.N.Y. 2019) ......................................................5

*Doe v. Fitzgerald*,
    No. 20 Civ. 10713, 2022 WL 425016 (C.D. Cal. Jan. 6, 2022) .................11, 13

*Eckhart v. Fox News Network, LLC*,
    No. 20 Civ. 05593, 2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021) ...........5, 8, 10

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ......................................................7

*Harrington v. Purdue Pharma L.P.*,
    144 S. Ct. 44 (2023).....................................................................................19

WIGDOR LLP
85 FIFTH AVE., FIFTH FLOOR
NEW YORK, NEW YORK 10003
(212) 257-6800

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

*Howard v. Superior Ct.*,

  2 Cal. App. 4th 745 (1992) ...................................................................................17

*Hubbard v. Crow*,

  No. 23 Civ. 00580-FB, 2023 WL 10366527 (W.D. Tex. Nov. 20, 2023)............10

*Huett v. Weinstein Co.*,

  No. 18 Civ. 06012, 2018 WL 6314159 (C.D. Cal. Nov. 5, 2018) ........................8

*In Matter of Motors Liquidation Co.*,

  829 F.3d 135 (2d Cir. 2016)................................................................................20

*In re First All Mortg. Co.*,

  471 F.3d 977 (9th Cir. 2006)...............................................................................17

*In re Lowenschuss*,

  67 F.3d 1394 (9th Cir. 1995)...............................................................................19

*In re New Century TRS Holdings, Inc.*,

  450 B.R. 504 (Bankr. D. Del. 2011) ...................................................................21

*Jarreau-Griffin v. City of Vallejo*,

  531 B.R. 829 (E.D. Cal. 2015) ...........................................................................20

*Logan v. Zimmerman Brush Co.*,

  455 U.S. 422 (1982)............................................................................................20

*Lombardo v. Hilburg*,

  No. 18 Civ. 01811, 2018 WL 6977473 (C.D. Cal. Dec. 3, 2018) .......................13

*Molenda v. Universal City Studios, LLC*,

  No. 20 Civ. 02554, 2020 WL 66535 (C.D. Cal. Jun. 6, 2018) ..........................16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,

  339 U.S. 306 (1950)............................................................................................20

*Neilson v. Union Bank of California N.A.*,

  20 F. Supp. 2d, 1101 (C.D. Cal. 2003) ..........................................................15, 17

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIFTH AVE., FIFTH FLOOR
NEW YORK, NEW YORK 10003
(212) 257-6800

*Noble v. Weinstein*,

    335 F. Supp. 3d 504 (S.D.N.Y. 2018)................................................................7

*People of the Territory of Guam v. Camacho*,

    103 F.3d 863 (9th Cir. 1996)...............................................................................10

*Powers v. Wells Fargo Bank NA*,

    439 F.3d 1043 (9th Cir. 2006)...............................................................................5

*Russo v. APL Marine Servs., Ltd.*,

    No. 14 Civ. 03184-ODW, 2014 WL 3506009 (C.D. Cal. July 14, 2014) ...........13

*So v. Bay Area Rapid Transit*,

    No. 12 Civ. 05671 DMR, 2013 WL 5663207 (N.D. Cal. Oct. 17, 2013)............15

*Stanley Jacobs Prods., Ltd. v. 9472541 Canada Inc.*,

    No. 16 Civ. 06223, 2016 WL 9343896 (C.D. Cal. Dec. 6, 2016) .......................21

*Su v. Henry Glob. Consulting Grp.*,

    No. 20 Civ. 02235, 2022 WL 1932 (C.D. Cal. Jan. 3, 2022) ..............................15

*Teachers' Ret. Sys. of Louisiana v. Aidinoff*,

    900 A.2d 654 (Del. Ch. 2006) .............................................................................20

*United States v. Andrews*,

    No. 18 Cr. 00256, 2022 WL 9466146 (E.D. Cal. Oct. 14, 2022).........................8

*United States v. Cook*,

    782 F.3d 983 (8th Cir. 2015)................................................................................10

*United States v. Raniere*,

    55 F.4th 354 (2d Cir. 2022)...........................................................................10, 11

*United States v. Smith*,

    719 F.3d 1120 (9th Cir. 2013)...............................................................................6

*United States v. Taylor*,

    44 F.4th 779 (8th Cir. 2022)..............................................................................6, 7

WIGDOR LLP
85 FIFTH AVE., FIFTH FLOOR
NEW YORK, NEW YORK 10003
(212) 257-6800

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIFTH AVE., FIFTH FLOOR
NEW YORK, NEW YORK 10003
(212) 257-6800

*United States v. Todd*,

  627 F.3d 329 (9th Cir. 2010)......................................................................8

<u>Statutes</u>

18 U.S.C. § 1591.......................................................................4, 5, 8, 9, 10, 11

18 U.S.C. § 1595.................................................................................................10

Cal. Civ. Code § 1708.5..............................................................................12, 13

Cal. Civ. Proc. Code § 340.16(a) & (b) ...............................................................14

California Penal Code § 243.4(e)(1).....................................................................14

<u>Rules</u>

Fed. R. Civ. P. 6(a)(1)(C) ...................................................................................14

Fed. R. Civ. P. 8.......................................................................................................4

Fed. R. Civ. P. 12(b)(6) ..........................................................................................4

<u>Other Authorities</u>

H.R. Rep 106-487 ....................................................................................................4

Casassa, K. et al., "Trauma Bonding Perspectives From Service Providers and

  Survivors of Sex Trafficking: A Scoping Review," *Trauma, Violence, & Abuse*,

  23(3), 969-984 (2022), https://doi.org/10.1177/1524838020985542.....................4

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

Plaintiff Kellye Croft submits this Memorandum of Points and Authorities to oppose the Motion to Dismiss of Defendants James Dolan and JD & The Straight Shot LLC ("JDSS") (collectively, "Moving Defendants" or "Dolan Defendants").

**PRELIMINARY STATEMENT**

In 2013, Kellye Croft, a young woman and Licensed Massage Therapist from Tennessee, thought she had received the break of a lifetime. Glenn Frey, a member of the Eagles, offered her a job as a massage therapist on their tour. At the time, Croft did not know that an important person in the Eagles' orbit was James Dolan, the billionaire business partner of Irving Azoff, the Eagles' long-time talent manager. Nor did she know that Dolan funded the joint enterprise then known as MSG Entertainment, LLC, which allowed him to position his unremarkable band, JDSS, as the opening act for parts of the Eagles' tour.

Dolan's role on the tour meant that he could schedule massages with Croft. During his second massage with Croft in Miami, Dolan made aggressive sexual advances toward her. Croft had no interest in sexual contact with Dolan, who was twice her age. But Dolan refused to accept when Croft told him she wanted to keep their relationship professional. He grabbed Croft's hands, dragged her to a couch and forced her hands between his knees as he sat down. Though she continued protesting his advances, Croft knew that Dolan had enormous power over her, and believed she had to submit to his sexual demands. From there began a pattern of sexual exploitation by Dolan.

Late in 2013, a representative of Azoff's companies extended Croft another invitation to join the Eagles tour in Los Angeles in January 2014. Croft did not know that Dolan or his band would be part of this leg of the tour and accepted. But after she flew to Los Angeles, she learned that she was not staying at the same hotel as

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DOLAN DEFENDANTS' MOTION TO DISMISS

the Eagles, as had been the case earlier on the tour. Instead, her accommodation was in the same hotel with Dolan and JDSS. Soon enough, Croft discovered that she had been lied to about why she was in Los Angeles. The Eagles did not need a massage therapist in L.A. Instead, she was being paid to satisfy the sexual demands of Dolan, who several times summoned her to his room on the pretense of receiving a massage, when in reality he wanted sex. From their first interactions in Miami, Dolan knew that Croft's submission to his demands was not voluntary.

Dolan did not stop there. He then set Croft up to be assaulted by his good friend and business associate, Harvey Weinstein, whom Dolan knew to be a sexual predator. Dolan helped Weinstein by orchestrating a "chance" meeting with Croft in the hotel where Weinstein was also staying. Having been primed by Dolan to go after the "massage therapist," Weinstein floated the possibility of work with his movie studio as a pretense to get Croft into a hotel room, where he violently sexually assaulted her. Croft immediately told Dolan about his friend's behavior, but Dolan did not express surprise. On the contrary, Dolan acknowledged that Weinstein was "troubled" and unsafe. Still, Dolan did not suggest that Croft go to the police or offer to help her. Croft, broken by what happened to her, could not continue with her work on the tour, and she flew back to Tennessee soon after.

Dolan and JDSS have moved to dismiss Croft's claims, arguing that, even accepting the truth of everything alleged, their conduct was perfectly legal. They are wrong. ***First***, Croft has stated a claim against Moving Defendants for perpetrating sex trafficking. Dolan, JDSS and the Azoff Entities, transported Croft to California knowing that fraud and/or coercion would be used to have her commit a commercial sex act. Moving Defendants ignore the allegations showing that they brought her to Los Angeles on the false pretense that she would be performing massage services,

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

when she was actually hired to have sex with Dolan. And because Croft received several "things of value" for sexual contact with Dolan—including pay, air travel, and a hotel stay—the commercial sex act element is also satisfied.

**Second**, Moving Defendants are also liable as beneficiaries of sex trafficking. Arguing otherwise, they mainly claim that Dolan's sexual gratification cannot be a benefit of sex trafficking, but that argument is belied by the text of the sex trafficking statute as well as the weight of the caselaw.

**Third**, Dolan contends that he is not liable for sexual battery because he did not intend to make offensive contact against Croft. But Dolan asks the Court to ignore, among other relevant facts, that he started his sexual "relationship" with Croft by physically forcing himself on her against her will and disregarding her refusals. His intent is thus a disputed factual matter that cannot be resolved on a motion to dismiss. Croft's sexual battery claim is also timely under California's revival law because Dolan's alleged conduct is a sexual battery under the California Penal Code.

**Finally**, Croft has stated a claim for aiding and abetting Weinstein's sexual assault on her. The facts support the reasonable inference that Dolan orchestrated the meeting between Croft and Weinstein, knowing that his friend was dangerous and likely to attack her if Croft did not submit, thus establishing the substantial assistance and prior knowledge elements of the claim. This claim is also not barred by the release that Dolan received in The Weinstein Company ("TWC") bankruptcy. The Supreme Court is poised to decide whether a nonconsensual release of a nondebtor—precisely the relief Dolan received—is lawful. And even if that bankruptcy release could be valid, here Croft was denied due process because she was never provided with the required notice of the TWC bankruptcy.

3

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIFITH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

**FACTS**

Plaintiff refers the Court to the Statement of Facts in her Memorandum of Points and Authorities in Opposition to the Azoff Entities Motion to Dismiss ("Azoff Opposition"), ECF No. 55 at 2-7, and the Amended Complaint ("AC"), ECF No. 48.

**MOTION TO DISMISS STANDARD**

Fed. R. Civ. P. 8 requires a complaint to be a "short and plain statement of the claim showing that the pleader is entitled to relief." To overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating the motion, a court must "accept all factual allegations in the complaint as true," "construe the pleadings in the light most favorable to the nonmoving party," and "draw[] all reasonable inferences in favor of the plaintiff." *Ass'n for Los Angeles Dpty. Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

**DISCUSSION**

**I.    The Amended Complaint States a Claim Against the Dolan Defendants Under the TVPRA**

Moving Defendants' arguments to dismiss Croft's first cause of action under The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591, 1595, should be denied. To begin, Moving Defendants suggest that Croft cannot bring a claim under the TVPRA because the statute is only meant to address "a contemporary manifestation of slavery." Dolan Mem. 4 (citing H.R. Rep 106-487). But statutes must be interpreted based on their ***text***, not legislative history.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

4

1   *Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045 (9th Cir. 2006) (recognizing
2   that "legislative history, even when clear, may not overcome or displace the textual
3   mandate of a statute"). Nothing in the text of the TVPRA suggests that it should be
4   understood to cover only slavery and similar offenses and courts have consistently
5   rejected the Dolan Defendants' argument that it only applies to archetypes of human
6   trafficking and contemporary slavery. *See Eckhart v. Fox News Network, LLC*, No.
7   20 Civ. 05593, 2021 WL 4124616, at *7 (S.D.N.Y. Sept. 9, 2021) (holding that
8   TVPRA applies to cases not involving forced prostitution and sexual slavery) (citing
9   cases); *Canosa v. Ziff*, No. 18 Civ. 04115, 2019 WL 498865, at *23 (S.D.N.Y. Jan.
10  28, 2019) ("[Defendants'] attempt to cabin the TVPA to reach only caricatures of
11  child slavery, and to exclude corporate-supported conduct, is wholly
12  unpersuasive."). As discussed below, Croft plausibly asserts claims against the
13  Dolan Defendants as perpetrators and beneficiaries of sex trafficking.

## A.  The Dolan Defendants are Liable as Perpetrators

15      To state a claim against a sex trafficking perpetrator under § 1591, plaintiff "must
16  adequately plead that [the Dolan Defendants] knowingly and in interstate or foreign
17  commerce: (1) recruited, enticed, harbored, transported, provided, obtained, or
18  maintained by any means a person; (2) knowing, or in reckless disregard of the fact,
19  that means of force, threats of force, fraud . . . or any combination of such means
20  will be used; (3) to cause the person to engage in a commercial sex act." *David v.
21  Weinstein Co.*, 431 F. Supp. 3d 290, 298 (S.D.N.Y. 2019) (internal quotations
22  omitted). Here, the Dolan Defendants wrongly argue that Croft has not pleaded the
23  second and third elements.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

1.   The Dolan Defendants Knowingly Defrauded and Coerced Croft so that Dolan Could Sexually Exploit Her

Croft plausibly alleges that Dolan and JDSS brought her to California knowing they were using fraud and coercion to have her commit a commercial sex act. Because "fraud" is not defined in the TVPRA, courts apply the word's ordinary meaning: "an instance or an act of trickery or deceit especially when involving misrepresentation." *United States v. Smith*, 719 F.3d 1120, 1125 (9th Cir. 2013) (*quoting* Webster's Third New International Dictionary 904 (2002)) (cleaned up). That is what occurred here.

In late 2013, an Azoff representative, acting in concert with Dolan, invited Croft to join the Eagles tour in Los Angeles to perform massage services for the Eagles at their show at the refurbished L.A. Forum. AC ¶¶ 47-48, 58. But the Eagles had no need for Croft's services. *Id.* ¶ 59. Not one band member signed up for a massage with Croft, and Croft spent most of her time at the Forum with nothing to do. *Id.* ¶ 58. The real reason that Moving Defendants and the Azoff Entities transported Croft to California was so she could provide sexual services to Dolan, who requested Croft's presence and paid for Croft's travel expenses on the "JD credit card." *Id.* ¶ 59. And Defendants arranged for Croft to stay at the Peninsula Hotel, where Dolan and his band were staying, ***not*** where the Eagles or the other tour staff were staying. *Id.* ¶ 56. This arrangement, a departure from Croft's work on the tour, made it convenient for Dolan to summon Croft to his hotel room for sex. *Id.* Accepting these facts as true, a factfinder could conclude that Moving Defendants committed fraud to have Croft engage in a commercial sex act.

*United States v. Taylor*, 44 F.4th 779 (8th Cir. 2022), a criminal case brought under the TVPRA, is instructive. In *Taylor*, defendant hired a young woman, A.L.,

6

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

1   to work at his massage business, ostensibly to provide massages. *Id.* But defendant's

2   clients expected sexual services, and at least one of those clients pressured A.L. into

3   performing a sex act, which she reluctantly did. *Id.* Following defendant's

4   conviction, he argued that there was insufficient evidence that force, fraud or

5   coercion would be used on A.L. The Eighth Circuit disagreed, holding that a

6   reasonable jury could find that fraud was used to have A.L. engage in a commercial

7   sex act because defendant knew that A.L. and the clients had different expectations

8   about what would occur at the massage appointments. *Id.* at 790.

9        Like the defendant in *Taylor*, Defendants here led Croft to believe that she

10   was being transported to California to provide massage services for the Eagles. It

11   was only after she accepted the opportunity that she discovered the Eagles had no

12   need for her massage services, and that her presence was about satisfying Dolan's

13   sexual demands, whom she did not even know would be on the tour until ***after*** she

14   accepted the job. Having been deceived, Croft submitted to Dolan's demands

15   because, given his power, she understood that rejecting him would jeopardize her

16   work with the Eagles and others. This case is thus similar to others in which courts

17   have approved trafficking claims against defendants who fraudulently enticed a

18   victim to engage in commercial sex based on illusory offers of work or career

19   benefits. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168

20   (S.D.N.Y. 2019) (agreeing with other courts that TVPRA "extends to enticement of

21   victims by means of fraudulent promises of career advancement, for the purpose of

22   engaging them in consensual or . . . non-consensual sexual activity"); *Noble v.*

23   *Weinstein*, 335 F. Supp. 3d 504, 518 (S.D.N.Y. 2018) (same).

24        The facts also support a finding that Moving Defendants knowingly used

25   coercion to have Croft engage in sex acts because Plaintiff reasonably believed that

26

27

28

7

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

failing to engage in the sex act would result in significantly serious financial harm. *See* 18 U.S.C. § 1591(e)(2)(B) (defining "coercion" to include any scheme or plan intended to cause a person to believe that the failure to perform an act would cause "serious harm"); *id*. § 1591(e)(5) (defining "serious harm" to   mean "any harm . . . including . . . financial . . . harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm"). Based on the facts alleged, it is reasonable to infer that Moving Defendants knew that, once they had Croft isolated and alone, she would be too scared to lose the seemingly incredible career opportunity of working with the Eagles to reject Dolan's advances.

Moving Defendants wrongly argue that Croft cannot show that they acted with the requisite knowledge because Plaintiff does not allege that Dolan had an established modus operandi. Dolan Mem. 6-7 (citing *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010)). But Moving Defendants ignore allegations that when they transported Croft to Los Angeles, Dolan had ***already*** assaulted Plaintiff in Miami, AC ¶¶ 37-44, establishing that he would use force, fraud and coercion to push Croft into commercial sex acts. And while *Todd* and *Huett v. Weinstein Co.,* No. 18 Civ. 06012, 2018 WL 6314159, at *2-3 (C.D. Cal. Nov. 5, 2018), recognized that multiple victims could prove that defendant knew that force, fraud or coercion would be used to cause a victim to engage in commercial sex act, the courts did not hold that a pattern of victims is the ***only*** way to establish the requisite knowledge. *See United States v. Andrews*, No. 18 Cr. 00256, 2022 WL 9466146, at *2 (E.D. Cal. Oct. 14, 2022) (rejecting the interpretation of *Todd* advanced by the Moving Defendants as "illogical"); *Eckhart*, 2021 WL 4124616, at *10 (recognizing that a

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FiIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

"modus operandi is but one of several ways a plaintiff can show [defendant's] knowledge" that force, fraud or coercion would be used).

Likewise unpersuasive is Moving Defendants' claim that, because Dolan sometimes acted like he cared about Croft, he could not have defrauded or coerced her into participating in a commercial sex act. The fraud here—lying to Croft about the reason she was being flown to California—occurred well **before** he pretended as though he cared about her. AC ¶ 43. In any case, a common feature of sexual abuse and trafficking is that perpetrators sometimes act kindly towards their victims to get what they want. *See* Casassa, K. et al., "Trauma Bonding Perspectives From Service Providers and Survivors of Sex Trafficking: A Scoping Review," *Trauma, Violence, & Abuse*, 23(3), 969-984 (2022), https://doi.org/10.1177/1524838020985542 (Summarizing literature showing phenomena of "trauma bonds" between sex traffickers and victims, in which sex traffickers alternated between "abuse and kindness"). That Dolan manipulated Croft in this way does not negate his knowledge that Croft was being defrauded and coerced so that he could sexually exploit her.

### 2. The Amended Complaint Alleges a Commercial Sex Act

Moving Defendants next argue that Croft's TVPRA claim fails because she does not plead that she engaged in a commercial sex act. As they concede, however, "commercial sex act" is broadly defined to include "any sex act on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). This standard is easily met here. In exchange for engaging in sex acts with Dolan, Croft's flight to and hotel accommodations in Los Angeles were paid for using the "JD credit card," AC ¶ 48, and the Azoff Entities paid her for working on the Eagles tour, *id.* ¶ 58, all "things of value." While that arrangement provided a veneer of legitimacy, Moving Defendants were in reality paying Croft for sex with Dolan. *Id*.¶

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DOLAN DEFENDANTS' MOTION TO DISMISS

59. That defendants did not expressly articulate a quid pro quo does not defeat Croft's claims. *See Eckhart*, 2021 WL 4124616, at *9 (citing cases).

**B.     The Dolan Defendants are Liable as Beneficiaries of Sex Trafficking**

The Dolan Defendants are alternatively liable as beneficiaries of sex trafficking. To state such a claim, Plaintiff must allege that Moving Defendants "[1]knowingly benefit[ted] . . . by receiving anything of value [2] from participation in a venture [3] which [they] knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595. Contrary to Moving Defendants' argument, the Amended Complaint pleads facts establishing each element.

As to the first element, Dolan knowingly benefited from participating in a sex trafficking venture because he received sexual gratification from Croft. "Benefits" within the scope of sections 1591(a)(2) and 1595(a) include "financial[]" benefits as well as "anything of value," a phrase that also appears in the definition of "commercial sex act," § 1591(e)(3), discussed above. Contrary to Moving Defendants' argument, sexual gratification is a "thing of value." *See United States v. Raniere*, 55 F.4th 354, 361 (2d Cir. 2022) (recognizing that "sexual intercourse" or "the promise of sexual intercourse" are "things of value" under the TVPRA) (internal quotations omitted); *United States v. Cook*, 782 F.3d 983, 988 (8th Cir. 2015) (holding that the ordinary meaning of the phrase "things of value" in section 1591(a)(2) encompasses "sex acts"); *Hubbard v. Crow*, No. 23 Civ. 00580-FB, 2023 WL 10366527, at *9 (W.D. Tex. Nov. 20, 2023) (complaints plausibly alleged defendant received "things of value" from trafficking venture based on allegations that defendant received sex acts from the plaintiff); *see also People of the Territory*

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

10

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DOLAN DEFENDANTS' MOTION TO DISMISS

*of Guam v. Camacho*, 103 F.3d 863, 866 (9th Cir. 1996) (holding that under official misconduct regulation "sexual gratification" is a "benefit").

The one case cited by Moving Defendants for the proposition that sexual gratification is not a "thing of value," *Doe v. Fitzgerald*, No. 20 Civ. 10713, 2022 WL 425016, at *6 (C.D. Cal. Jan. 6, 2022), is inconsistent with the case law discussed above. *Fitzgerald* also fails to respect Congress' intent—as reflected in the law's text—to have the phrase "thing of value" be "broadly understood to include intangibles." *Raniere*, 55 F.4th at 361. Here, a factfinder could conclude that the sex acts that Dolan received because of his participation in a venture with the Corporate Defendants were valuable to him. JDSS likewise benefited from the venture because Dolan sought to make Croft available for sexual services to his bandmates, including one who asked Croft for a "prostate massage." AC ¶ 67.

Moving Defendants' other arguments against a beneficiary theory of liability are insubstantial. They claim that there was no venture between them and the Azoff Entities. But "venture" means "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591. As explained in the Azoff Opposition, the association between Dolan, JDSS and the Azoff Entities satisfies this definition. *See* ECF Dkt. No. 55 at 18-20. Finally, Moving Defendants' assertion that they had no knowledge that fraud, force or coercion would be used to traffic Croft is meritless for the same reasons discussed in Section I(A), *supra*.

**II.     Plaintiff's Sexual Battery Claim is Plausibly Alleged and is Timely**

Dolan argues that Plaintiff's second cause of action for sexual battery should be dismissed because he did not act with intent to cause harmful conduct and the claim is not timely. Dolan Mem. 10-14. Dolan is incorrect on both counts.

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

11

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

### A.  Croft Has Stated a Claim for Sexual Battery

As Dolan acknowledges, Cal. Civ. Code § 1708.5(a)(1) defines sexual battery as "[a]cts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results." "Offensive contact" means "contact that offends a reasonable sense of personal dignity." Cal. Civ. Code § 1708.5(d)(2). Applying those standards, Croft has plausibly alleged that Dolan intentionally engaged in sexually offensive contact. AC ¶¶ 119, 121.

As alleged, Dolan first offensively touched Plaintiff on the Miami-leg of the Eagles tour in November 2013. Towards the end of the massage Croft was giving him, Dolan began to make unwanted advances on her. AC ¶ 40. When Dolan pulled Croft toward him, she told him that she was very uncomfortable and wanted to stay professional. *Id.* Dolan ignored her wishes, grabbed Croft's hands, dragged her to a couch, and forced her hands between his knees as he sat down. *Id.* ¶ 42. Croft remained adamant that she did not want sexual contact with him, but Dolan continued to pressure her until she gave in to his persistent advances and had intercourse with him. *Id.* This context, ignored by Defendants, is critical for Croft's interactions with Dolan in California in January 2014, after Dolan and the Azoff Entities fraudulently lured her to California.

Based on their interactions in Miami, Dolan knew that Croft did not want sexual contact with him, a man twice her age. Dolan also knew that he had flown Croft out to California under false pretenses, was paying for her accommodations, and was effectively her employer. Thus, when Dolan summoned Croft to his hotel room and made sexual demands of her, Dolan knew that Croft did not want to have sex with him and that he was leveraging the immense power he held over her to

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

sexually gratify himself. *See Lombardo v. Hilburg*, No. 18 Civ. 01811, 2018 WL 6977473, at *6 (C.D. Cal. Dec. 3, 2018) (finding battery sufficiently pleaded where defendant allegedly coerced plaintiff into sexual contact based on plaintiff's economic vulnerability). Dolan's intent is a question of fact that cannot be resolved on the pleadings.[1]

The authorities cited by Dolan do not suggest otherwise. In *Russo v. APL Marine Servs., Ltd.*, No. 14 Civ. 03184-ODW, 2014 WL 3506009, at *6 (C.D. Cal. July 14, 2014), the complaint was unclear whether there had been any sexual contact after plaintiff had objected; the question of whether the defendant intended to cause offensive contact was not before the court. In *Fitzgerald*, 2022 WL 425016, at *6, the court held that defendant's intent could not be inferred about one plaintiff because the complaint alleged ***no*** facts other than that the defendant engaged in sex acts against plaintiff's will. As discussed above, far more has been pleaded here. Indeed, Croft's claim is more like the co-plaintiffs in *Fitzgerald* who alleged that defendant had pressured them to engage in sex acts as part of a "sexual swap" in which the defendant "traded" sex partners with his friend. As to those plaintiffs, the court found the circumstances sufficient to infer that the defendant knew that the sexual contact would offend their sense of personal dignity. *Id.* *10. Here, too, it is reasonable to infer from their prior interactions, in which Croft made clear her lack of interest in Dolan, that Dolan knew that subjecting her to unwanted sexual contact with him would offend her sense of personal dignity. Cal. Civ. Code § 1708.5(d)(2).

---

[1]     Contrary to Dolan's assertion, the location and timing of Dolan's offensive touching of Croft are plausibly alleged. The Amended Complaint states that events occurred at the Peninsula Hotel in Beverly Hills, where Dolan and Croft were both staying for the Eagles tour. AC ¶¶ 5,  53, 56, 68. The Los Angeles leg of the Eagles tour took place in the second half of January 2014. *Id.* ¶ 68.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

**B.     The Sexual Battery Claim is Timely**

Croft's claim is timely under California's revival statute, which creates a statute of limitations of 10 years for civil claims for sexual assault if the sexual assault occurred on or after January 1, 2009, and the sexual assault constitutes a crime under specified sections of the California Penal Code. Cal. Civ. Proc. Code § 340.16(a) & (b). One of those sections, California Penal Code § 243.4(e)(1), provides that a sexual battery occurs when a person "touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse."[2]

As explained above, Croft's sexual battery claim satisfies the requirements of this section because Croft has alleged that Dolan touched the intimate parts of her body, and that the touching was offensive and against her will. *See* Section II(a), *supra*. Dolan argues that Section 243.4(e)(1) is a specific intent crime, but the Amended Complaint alleges that Dolan's actions toward Croft were motivated by his sexual desires, *e.g.*, AC ¶ 11, 59, the intent required in the statute. Furthermore, because Plaintiff has alleged that the Los Angeles leg of the tour did not begin until mid-January 2014, *id.* ¶ 68, Dolan's sexually battery of Croft in California would have necessarily occurred within the limitations period.[3] Thus, Dolan's motion to dismiss Plaintiff's sexual battery claim should be denied.

---

[2]     Contrary to Dolan's suggestion, based on the plain meaning of the revival law, ***all*** sexual battery offenses identified in section 243.4 are revived. There is no exception for a misdemeanor battery.

[3]     Plaintiff filed this action on January 16, 2024. The preceding three days were a federal holiday and a weekend. *See* Fed. R. Civ. P. 6(a)(1)(C). Thus, based on the applicable ten-year statute of limitations, this claim would be timely for any conduct on or after January 13, 2014.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

**III.**    **Plaintiff's Aiding and Abetting Claim Against Dolan is Sufficiently Stated and is Not Released**

Dolan next asserts that Croft's Fourth Cause of Action for aiding and abetting Harvey Weinstein's sexual assault of her should be dismissed for failure to allege the essential elements of the claim. Alternatively, he contends the claim is barred by a release and injunction from a Delaware bankruptcy court issued in connection with the bankruptcy of TWC. Neither of these arguments are persuasive.

**A.    Dolan Aided and Abetted the Weinstein Assault**

A cause of action for aiding and abetting requires a plaintiff to plead that (1) defendant had actual knowledge "that a tort had been, or was to be committed, and (2) acted with the intent of facilitating the commission of that tort." *Casey v. US Nat Assn.* 127 Cal. App. 4th, 1138, 1148 (2005) (internal quote and citation omitted). Here, Plaintiff has pleaded sufficient facts to satisfy both elements. As to the first element, Plaintiff need only "allege generally that [Dolan] had actual knowledge of a specific primary violation." *Neilson v. Union Bank of California N.A.* 20 F. Supp. 2d, 1101, 1120 (C.D. Cal. 2003) "A plaintiff may plead actual knowledge through inference." *So v. Bay Area Rapid Transit*, No. 12 Civ. 05671 DMR, 2013 WL 5663207, at *12 (N.D. Cal. Oct. 17, 2013); *see also Su v. Henry Glob. Consulting Grp.*, No. 20 Civ. 02235, 2022 WL 1932, at * 4 (C.D. Cal. Jan. 3, 2022) (actual knowledge "may be averred generally").

Contrary to Dolan's argument, Dolan Mem. 15-16, Croft's allegations support an inference that Dolan had actual knowledge that Weinstein would sexually assault her. Plaintiff and Weinstein met at the Peninsula Hotel where Dolan had arranged for her to stay. AC ¶¶ 69-70. Weinstein was also staying at the Peninsula. *Id.* ¶ 75. When Croft and Weinstein met in the lobby of the hotel—a meeting which, as alleged, was orchestrated by Dolan, unbeknownst to Croft, *id.* ¶ 11—Weinstein

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

revealed he already knew who Croft was from Dolan. *Id.* ¶ 71. Weinstein then invited Plaintiff to his room, purportedly to discuss work opportunities for her, and eventually demanded that Plaintiff give him a massage while he was naked. *Id.* ¶¶ 75, 82-88. Plaintiff was terrified and managed to persuade him to let her leave his room, but Weinstein followed her, barged into her room and sexually assaulted her. *Id.* ¶¶ 89-93. In the middle of the assault, Plaintiff wriggled free. *Id.* ¶ 95. Weinstein then said to Plaintiff that Dolan was his "best friend" and would "be very disappointed that you led me on," *id.* ¶¶ 94-96, suggesting that Dolan knew what he had planned to do to Croft.

Beyond Weinstein's statement, when Plaintiff, distraught over what Weinstein had just done to her, told Dolan that Weinstein was "sexually aggressive" Dolan responded that Weinstein was a "troubled person" with "serious issues." AC ¶¶ 8, 99. Dolan did not console Plaintiff or advise her to report the assault to the police. *Id.* ¶ 99. Contrary to Dolan's assertion, this exchange does not merely establish that Dolan knew Weinstein attacked Croft *after* it happened. Rather, it supports an inference that Dolan was not surprised by what Weinstein had done and that he knew that his good friend and business associate, *id.* ¶¶ 9, 96, 99, had a history of engaging in similar sexual misconduct. For this reason, *Molenda v. Universal City Studios*, *LLC*, No. 20 Civ. 02554, 2020 WL 66535, at * 3 (C.D. Cal. Jun. 6, 2018), cited by Dolan, is distinguishable. Unlike here, in *Molenda*, there were no facts alleged to suggest that the defendants' reactions to plaintiffs' reports suggested that they had prior knowledge of what the primary tortfeasor planned to do. Moreover, in light of that knowledge and Dolan's assistance in having Weinstein "randomly" meet with Croft in a hotel, a factfinder could conclude that Dolan had actual knowledge of Weinstein's plan to assault Plaintiff and sought to protect himself and

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

16

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

his friend from any criminal consequences. *See Benson v. JPMorgan Chase Bank, N.A.,* No. 09 Civ. 05272, 2010 WL 1526394, at *4 (N.D. Cal. Apr. 15, 2010) (recognizing that bank's close business relationships with third parties who were engaged in a Ponzi scheme supported inference that bank knew of scheme).[4]

Plaintiff has also sufficiently alleged that Dolan acted with the intent to facilitate Weinstein's sexual assault of Plaintiff. A defendant acts with the requisite intent when he knowingly "gives substantial assistance or encouragement to the other to so act[.]" *Casey*, 127 Cal. App. 4th at 1144. (internal quote omitted). But substantial assistance does not require proof that "defendant agreed to join the wrongful conduct." *Howard v. Superior Ct.,* 2 Cal. App. 4th 745, 749 (1992), *modified* (Feb. 10, 1992) (internal quote and citation omitted). Instead, substantial assistance requires only "the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001); *Neilson*, 290 F. Supp. 2d at 1129-30 (same).

Here, the facts alleged show that Dolan substantially assisted Weinstein in his sexual assault of Plaintiff. As discussed above, Plaintiff has alleged that she encountered Weinstein, who was staying at the same hotel as her, in the hotel lobby when she returned from an outing Dolan encouraged. AC ¶¶ 68, 99. For purposes of

---

[4]    *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138 (2005)*,* discussed in *In re First All Mortg. Co.*, 471 F.3d 977, 994 n.4 (9th Cir. 2006), also cited by Dolan, does not support his argument. *Casey* held that a plaintiff must allege an aider and abettor had knowledge of the particular wrong to be committed by the principal actor, and not merely allege that an aider and abettor was aware that the principal actor was generally engaged in wrongful conduct. *Casey*, 127 Cal. App. 4th at 1151-52. As described above, the Amended Complaint contains sufficient allegations that Dolan knew that Weinstein was planning on sexually assaulting Croft, not just that he knew Weinstein would engage in some wrongful conduct.

17

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

Dolan's motion, the Court should not assume that this encounter happened by "chance," as Dolan asserts. Rather, Croft should be granted the inference that Dolan informed Weinstein where she was staying and when she would return to the hotel. Dolan's substantial assistance is also reflected by the fact that he had told Weinstein, a man he knew to be a sexual predator, "great things" about Plaintiff, whom Dolan apparently described as his "massage therapist." AC ¶ 71. What's more, because Dolan was talking to members of his band about his sexual exploits with Croft and encouraged them to believe she was sexually available, *id.* ¶¶ 65-67, it is reasonable to infer that he had similar conversations with Weinstein, "one of his best friends." *Id.* ¶¶ 71, 96, 99. Based on these facts and granting Plaintiff all reasonable favorable inferences, Weinstein would have never been able to assault Plaintiff without Dolan's help. Thus, Dolan substantially participated in Weinstein's sexual assault of Plaintiff because his actions proximately caused Weinstein's assault of Croft. Dolan's motion to dismiss Plaintiff's aiding and abetting claim for failure to state a claim should be denied.

**B.    The TWC Bankruptcy Release Should Not Bar Croft's Claim**

Dolan next argues that Croft's aiding and abetting claim should be dismissed because it conflicts with a release and channeling injunction issued by a Delaware bankruptcy court in connection with the bankruptcy of The Weinstein Company. As background, Dolan served on the Board of Directors of TWC from about mid-2015 to June 2016. In 2018, after Harvey Weinstein's predatory conduct became public, TWC filed for bankruptcy. Later, as part of the TWC chapter 11 plan of reorganization in which a modest fund was established for Weinstein's sexual assault victims, Dolan and TWC's other former representatives secured releases for themselves for liabilities related to Weinstein's sexual misconduct. As Dolan notes,

18

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

1   the release and accompanying channeling injunction purport to extinguish the claims

2   of all sexual misconduct victims of Harvey Weinstein against him and other former

3   representatives of the TWC, even for matters pre-dating their service on the TWC

4   board, and even for claims of intentional misconduct. Croft did not participate in or

5   receive notice of the TWC bankruptcy, she did not consent to waive her claims and

6   she received no financial compensation or other consideration for a release of her

7   claims. *See* Declaration of Kellye Croft ("Croft Dec." ¶¶ 5-7). Still, Dolan maintains

8   that the release should apply to bar her fourth cause of action.

9         The Court should reject this argument for two reasons. First, the bankruptcy

10   court lacked authority to approve a nonconsensual release of claims against Dolan

11   and others who did not file for bankruptcy. The Ninth Circuit has long disapproved

12   of nonconsensual releases of third party nondebtors as unauthorized by bankruptcy

13   law. *See In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995). While the TWC

14   bankruptcy plan was confirmed by a Third Circuit bankruptcy court, which has

15   sustained nonconsensual releases of nondebtors, the Supreme Court recently

16   received briefing and oral argument on the following question: "Whether the

17   Bankruptcy Code authorizes a court to approve, as part of a plan of reorganization

18   under Chapter 11 of the Bankruptcy Code, a release that extinguishes claims held by

19   nondebtors against nondebtor third parties, without the claimants' consent."

20   *Harrington v. Purdue Pharma L.P.,* 144 S. Ct. 44 (2023). Should the Court answer

21   in the negative, the TWC bankruptcy release that Dolan seeks to invoke here would

22   have been beyond the bankruptcy court's power to grant and should not be enforced

23   against Croft. Thus, the Court should not rule on the enforceability of the TWC

24   bankruptcy release until *Harrington* is decided.

25

26

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

27  

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

Second, even if the bankruptcy court had the power to approve the release, applying it to bar Croft's aiding and abetting claim, which she has a property interest in, would violate Croft's Fifth Amendment right to due process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). If the identity of a creditor whose property interest may be affected by a bankruptcy is reasonably ascertainable at the time of the bankruptcy petition, due process requires that the debtor provide actual notice—not publication notice—to that creditor. *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 159 (2d Cir. 2016).

Here, Croft informed Dolan, who later became a board member of TWC, about Weinstein's sexual misconduct of her. AC ¶ 98. Croft's identity as a potential creditor of the TWC was thus reasonably ascertainable by TWC, through Dolan. *See Teachers' Ret. Sys. of Louisiana v. Aidinoff*, 900 A.2d 654, 671 n.23 (Del. Ch. 2006) (under Delaware law, the general rule is that knowledge of an officer or director of a corporation is imputed to the corporation). As a result, Croft was entitled to actual notice of the TWC bankruptcy, but she received no notice of those proceedings. Croft Dec. ¶ 6.[5] The release of claims in favor of Dolan contained in the TWC

---

[5]   Dolan points out that Croft's counsel in this case was also involved in the TWC bankruptcy proceedings. That is true, but irrelevant. Croft was not represented by counsel until long after the TWC bankruptcy plan was confirmed. Croft Dec. ¶¶ 2-3. Thus, counsel's knowledge of the plan during the TWC proceedings cannot be imputed to Croft. *See Jarreau-Griffin v. City of Vallejo*, 531 B.R. 829, 833 (E.D. Cal. 2015) (holding that plaintiff did not have actual notice of a bankruptcy because his counsel was aware of bankruptcy based on separate representation of a different client years earlier). Dolan also suggests that Croft should not have filed her fourth cause of action under the terms of the

20

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

1   confirmation plan thus cannot bar Croft's claim against him. *See Stanley Jacobs*

2   *Prods., Ltd. v. 9472541 Canada Inc.*, No. 16 Civ. 06223, 2016 WL 9343896, at *5

3   (C.D. Cal. Dec. 6, 2016) (denying motion to dismiss where pleadings did not

4   establish that plaintiff received sufficient notice of bankruptcy proceedings).

5        Even if Croft were not entitled to actual notice of her claims being released

6   (which she was), the publication notice was inadequate to apprise her that she was

7   at risk of forfeiting her potential claims. "Due process requires notice that is

8   'reasonably calculated to reach all interested parties, reasonably conveys all the

9   required information, and permits a reasonable time for response.'" *In re New*

10  *Century TRS Holdings, Inc.*, 450 B.R. 504, 513 (Bankr. D. Del. 2011) (internal

11  quotation omitted). While publication in national newspapers is often deemed

12  sufficient, *id.*, the three media outlets in which TWC apparently advertised its

13  chapter 11 plan—Variety, The Hollywood Report ("THR") and the New York Post

14  ("NYP")—are not national newspapers but entertainment trade publications and a

15  local tabloid. Given the nature of TWC's business, advertising in Hollywood

16  publications may have been reasonable to target *some* of Harvey Weinstein victims,

17  but it was unreasonable to expect that most of Weinstein's victims read Hollywood

18  trade publications or a New York City paper. Croft resided in Tennessee during the

19  TWC bankruptcy and read none of the publications. Croft Dec ¶¶ 4-5. On a motion

20  to dismiss, Dolan has not met his burden of proving that publication in these outlets

21  was enough to meet due process requirements as applied to Croft. *In re New Century*

22  *TRS Holdings, Inc.*, 450 B.R. at 514 (holding that sufficiency of publication for due

23  process purposes could not be determined on a motion to dismiss, even though

24

25  ―――――――――――――――

26  TWC channeling injunction, but he cites no authority that Croft is precluded from arguing in a collateral proceeding that she was denied due process in the TWC bankruptcy.

21

27  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO

28  DOLAN DEFENDANTS' MOTION TO DISMISS

bankruptcy notice was placed in one national newspaper and one regional newspaper).

Finally, even if these publications could theoretically be considered sufficient, the advertisements in this case did not "reasonably convey[] all the required information" for due process purposes. *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). As it relates to Croft's claims, the advertisements make no mention of James Dolan, but refer generically to "debtors' former directors and officers." *See* Firetog Dec. Exs. A-C. Croft had no idea that Dolan fell into either category. Croft Dec. ¶ 3. So even if Croft came across these advertisements, they would have provided no notice that the TWC bankruptcy plan could have resulted in a forfeiture of her claim against Dolan. Under these circumstances, the publication notice provided was inadequate and did not satisfy due process. Thus, the release and channeling injunction should not bar Croft's fourth cause of action against Dolan.

**CONCLUSION**

For the reasons stated above, the Dolan Defendants' Motion to Dismiss the Amended Complaint should be denied.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

22

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DOLAN DEFENDANTS' MOTION TO DISMISS

Dated: May 13, 2024

Respectfully submitted,

By: _____

**WIGDOR LLP**
Douglas H. Wigdor (Admitted *pro hac vice*)
Meredith A. Firetog (Admitted *pro hac vice*)
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone: (212) 257-6800
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com


**LAW OFFICE OF KEVIN MINTZER, P.C.**
Kevin Mintzer (Admitted *pro hac vice*)
Laura L. Koistinen (Admitted *pro hac vice*)
1350 Broadway, Suite 1410
New York, New York 10018
km@mintzerfirm.com
llk@mintzerfirm.com


**GIRARD BENGALI, APC**

Omar H. Bengali
355 S Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (323) 302-8300
obengali@girardbengali.com

*Attorneys for Plaintiff Kellye Croft*

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Kellye Croft, certifies that this brief contains 6908 words, in compliance with Local Rule 11-6.1

Dated: May 13, 2024

Respectfully submitted,

By: _____

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

24

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DOLAN DEFENDANTS' MOTION TO DISMISS