DOUGLAS H. WIGDOR (NY SBN 2609469)
dwigdor@wigdorlaw.com
MEREDITH A. FIRETOG (NY SBN 5298153)
mfiretog@wigdorlaw.com
(Admitted *pro hac vice*)
**WIGDOR LLP**
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Tel.: (212) 257-6800

OMAR H. BENGALI (CA SBN 276055)
obengali@girardbengali.com
**GIRARD BENGALI, APC**
355 S. Grand Street, Suite 2450
Los Angeles, CA 90071
Tel.: (323) 302-8300

Kevin Mintzer (NY SBN 2911667)
km@mintzerfirm.com
Laura L. Koistinen (NY SBN 5755079)
llk@mintzerfirm.com
(Admitted *pro hac vice*)
**LAW OFFICE OF KEVIN MINTZER, P.C.**
1350 Broadway, Suite 1410
New York, NY 10018
Tel.: (646) 843-8180

*Attorneys for Plaintiff Kellye Croft*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KELLYE CROFT, | Case No. 2:24-cv-00371-PA (AGR) |
| Plaintiff, | **SECOND AMENDED COMPLAINT SEEKING DAMAGES** |
| vs. | |
| JAMES DOLAN, HARVEY WEINSTEIN, JD & THE STRAIGHT SHOT, LLC, THE AZOFF COMPANY HOLDINGS LLC f/k/a/ AZOFF MUSIC MANAGEMENT, LLC, THE AZOFF COMPANY LLC f/k/a AZOFF | **JURY TRIAL DEMANDED** |

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

1  MSG ENTERTAINMENT, LLC, DOE
   CORPORATIONS 1-10,

2                              Defendants.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

AMENDED COMPLAINT SEEKING DAMAGES

**TRIGGER WARNING:**
**THIS DOCUMENT CONTAINS HIGHLY GRAPHIC INFORMATION OF A**
**SEXUAL NATURE, INCLUDING SEXUAL ASSAULT**

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

Plaintiff Kellye Croft alleges as follows:

## PRELIMINARY STATEMENT

1.    In 2018, James Dolan sent an email to his "friends" sharing the debut of a new song he wrote.  He explained that the song was about his feelings about friends of his who were alleged to have used "power to coerce or force sexual gratification"—a clear reference to his former best friend and now convicted sexual predator Harvey Weinstein, who had recently been outed as a serial perpetrator of rape and sexual assault.

2.    The chorus of the song, "I Should've Known," is as follows:

> I should've known
> I should've known
> I should've thrown
> Myself across his tracks
> Stopped him from these vile attacks
> I should've known
> We believed and didn't see
> Through the lies he told us all
> They led him to his endless fall
> I should've known
> I should've known

3.    Among the "friends" Dolan sent this email to was Kellye Croft, a young woman from Smyrna, Tennessee.  Dolan met Ms. Croft in 2013, when she was 27 years old and he was 58 years old, and when she was working as a Licensed Massage Therapist on tour with the rock band, the Eagles.  Dolan, upon information and

1
SECOND AMENDED COMPLAINT SEEKING DAMAGES

belief, significantly contributed to the financing for that tour, and his band, JD & The Straight Shot, opened for the Eagles.

4.     Upon hearing this song, Ms. Croft was horrified—not just by the mediocrity of Dolan's music, but moreover by the blatant lie the song told.

5.     In January 2014, Dolan and related companies brought Ms. Croft to Los Angeles.  Although Ms. Croft was purportedly to perform work as a Licensed Massage Therapist, in reality, she was being trafficked by Dolan—a man over three decades older than her—under fraudulent pretenses for Dolan to engage in unlawful and unwelcome sex acts with her.

6.     Adding insult to injury, during this trip—because of Dolan's actions in facilitating, enabling, and aiding Weinstein in meeting Ms. Croft—Ms. Croft also fell victim to one of Weinstein's "vile attacks" mentioned in Dolan's song.

7.     Immediately after the attack by Weinstein, she told Dolan what happened.

8.     Contrary to Dolan's overly-insistent incantation in 2018 that he "should've known" about Weinstein's problematic behavior—he did know.  Dolan knew about Weinstein's predatory behavior prior to January 2014 as he readily admitted to Ms. Croft that he knew all about Weinstein's history of assaulting and sexually abusing women, telling her that "we all know" that Weinstein "has problems," and insisting that "his friends" were trying to get him "help."

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

9.   Ms. Croft was upset by Dolan's response, but at the time she was completely unaware of the extent to which Dolan, Weinstein, and Irving Azoff, manager of the Eagles, were all close friends and business partners.  As evidenced by the pictures below, these men were close to one another, and thus almost certainly knew details about each other's personal lives.



*James Dolan and Harvey Weinstein, 2005*



*James Dolan and Harvey Weinstein, 2014*

3

SECOND AMENDED COMPLAINT SEEKING DAMAGES



*James Dolan, Irving Azoff, and Harvey Weinstein, 2014* [1]

10.     Nor did Ms. Croft know that Dolan had a reputation for being brutish and difficult to work with.  Dolan's unlawful acts and misogynist views are now widely known, with Dolan having been found liable for attempting to silence Anucha Browne by terminating her employment after she complained about being sexually harassed by Isiah Thomas.  Even years after the $11.6 million jury verdict, Dolan refused to accept responsibility for his actions, claiming that Ms. Browne made up many of her allegations.

11.     In short, by claiming that he "should've known," James Dolan doth protest too much.  Although for many years, Ms. Croft had been too traumatized by

---

[1]     This photo was taken as part of Advertising Week New York in September 2014, during which James Dolan, Irving Azoff, Harvey Weinstein, and Robert Safian jointly participated in a public panel entitled "The Curtain Rises" as "industry icons" representing film, music, sports, and the business of entertainment.  *See* https://archive.advertisingweek.com/events/ny/2014/calendar/-newyork-2014-09-29-the-curtain-rises.

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

these events to speak publicly about what happened to her, she is ready to speak out about what Dolan and Weinstein separately did to her, and the ways in which Dolan facilitated—and orchestrated—Weinstein's horrific attack.  She needs the world to know: James Dolan unlawfully trafficked her for his own sexual gratification and knew about Weinstein's predatory behavior well before he published his musical mistruths; in fact, he knew before he joined the Board of Directors of Weinstein's production company.

## **PARTIES**

12.     Plaintiff Kellye Croft is a 38-year-old woman and is a resident of the State of Tennessee.

13.     Defendant Harvey Weinstein is, on information and belief, a citizen of the State of New York and presently is incarcerated at the Mohawk Correctional Facility in Rome, New York.

14.     Defendant James Dolan is, on information and belief, a citizen of the State of New York.

15.     Defendant JD & The Straight Shot, LLC is a New York domestic liability company.  On information and belief, JD & The Straight Shot, LLC is substantially or entirely owned, directly or indirectly, by Dolan.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

16. Defendant The Azoff Company Holdings, LLC, formerly known as Azoff Music Management LLC, is a music manager and is a Delaware limited liability corporation.

17. Defendant The Azoff Company LLC, formerly known as Azoff MSG Entertainment, LLC, was a 2013 joint venture between Azoff Music Management LLC and The Madison Square Garden Company. In or about 2018, Azoff Music Management LLC acquired the portion of the joint venture owned by Madison Square Garden Company. The Azoff Company is a Delaware limited liability company.

18. Defendants The Azoff Company Holdings, LLC and The Azoff Company, LLC are collectively referred to herein as the "Azoff Entities." On information and belief, the Azoff Entities are directly or indirectly owned in substantial part by Irving Azoff. The Azoff Entities with JD & The Straight Shot, LLC are together referred to herein as the "Corporate Defendants."

19. During the relevant period, Ms. Croft was jointly employed by the Azoff Entities and JD & The Straight Shot, LLC, which were jointly responsible for paying Ms. Croft and controlling her work.

20. Doe Corporations 1-10 are unknown successor and related entities of the Corporate Defendants who, on information and belief, participated in the events described within that are the basis of Plaintiff's claims.

WIGDOR LLP
85 FIIFTH AVENUE, FIIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

SECOND AMENDED COMPLAINT SEEKING DAMAGES

**JURISDICTION AND VENUE**

21.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action asserts violations of 18 U.S.C. § 1591, *et seq.*, and therefore raises federal questions regarding the deprivation of Plaintiff's rights.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

22.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events or omissions giving rise to this action, including the intentional and negligent tortious conduct alleged herein, occurred in this District.

**FACTS**

**I.     Ms. Croft Joins The Eagles on Tour**

23.     Kellye Croft was born and raised in Tennessee, and by her mid-twenties, had achieved success in her dream career as a Licensed Massage Therapist with her own small studio.  She earned her license in 2007 after completing 750 hours of schooling, and had established regular business with Bridgestone Arena, working on Cirque du Soleil tours, and working with individuals connected to the country music scene in Tennessee.

24.     In the fall of 2013, she was presented with what she believed was her big break, and the opportunity of a lifetime—to serve as the massage therapist for

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FiIFTH AVENUE, FIIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

Glenn Frey of the legendary rock band, the Eagles, on their tour, "History of the Eagles – Live in Concert."

25.     For Ms. Croft, this was an unprecedented opportunity, and her friends and family were incredibly proud.  At the same time, Ms. Croft was intimidated by the offer to travel across the country with a world-famous rock band: she had not traveled extensively before, had never lived on her own, and had never spent more than a few nights away from her tight-knit Tennessee community.

26.     After a few shows with the Eagles in October 2013, Ms. Croft was thrilled when Tom Golseth, the Eagles' tour manager, reached out to her to see if she would be available to join the band on tour in North Carolina, Alabama, and Florida in November.  She gladly accepted the position, and the band arranged for Ms. Croft's massage table to be transported with the band.

27.     While traveling with the band was an exciting experience, Ms. Croft was also overwhelmed.  This was particularly true because she did not know anyone else on the tour, and therefore felt extremely isolated.

28.     The experience became even more lonely and stressful for Ms. Croft when she got into a disagreement with Golseth, who had inappropriately chastised her and embarrassed her in front of other tour members.

29.     To make matters worse, soon after these interactions took place, Golseth was fired from the Eagles tour.  Thereafter, Ms. Croft became completely

8

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

ostracized from other tour members, who believed she was the reason for the tour manager's firing.

## II.   Ms. Croft Meets Dolan and Is Lured into Unwanted Sexual Contact

30.    In addition to serving as Frey's masseuse, tour management gave Ms. Croft permission to open up massage slots for others on the tour and she did her best to help and accommodate others who requested her services.

31.    During the November 2013 leg of the tour, Ms. Croft regularly shared her business card with others backstage, both to generate business and to counteract the profound sense of isolation she felt while traveling with the band.

32.    On one occasion, she shared her card with James Dolan, the lead singer of the band opening for the Eagles, JD & The Straight Shot.  Ms. Croft had never heard of Dolan, and when she met him, did not know the immense wealth, power, and influence he had.  She later came to understand that Dolan was in multiple business ventures with the Eagles' management company, Azoff Music Management, and heard that Dolan was a long-time business partner and significant funder of Azoff's businesses and of the tour itself, which allowed him to place his mediocre band as the opening act.[2]

---

[2]    *See* Marc Schneider, *MSG's James Dolan Opens for Eagles, Pens Songs About Eliot Spiter & Trayvon Martin,* Billboard (Sept. 12, 2014), https://www.billboard.com/pro/james-dolan-eagles-madison-square-garden/ (last accessed April 10, 2024) (noting that Dolan "has secured his own band to warm up the crowd" for

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

33.     Days after her disagreement with Golseth, Dolan scheduled a massage with Ms. Croft.  Given her unfamiliarity with Dolan, she did not think much of the appointment—in fact, she was extremely distracted, as the appointment fell within days of the disagreement with Golseth and others on the tour were discussing the incident and her involvement.

34.     Dolan noticed how upset Ms. Croft was, and he asked her to explain what was wrong.  She explained what had happened, and Dolan responded to her stating, "I will make sure this is taken care of."  Ms. Croft dismissed her massage client's statement, not recognizing how much power and influence Dolan had over others on the tour.

35.     Ms. Croft did not know, for example, that Dolan was extremely close friends with Irving Azoff, who, through his company, was the music manager for both the Eagles and JD & The Straight Shot.  Indeed, around this time, Dolan was

---

an Eagles show in NYC, and explaining that "The Dolan-Eagles connection is a strong one. They share a manager in Irving Azoff and Eagles guitarist Joe Walsh has worked with the Straight Shot in the studio"); *see also* Scott Cacciola, *The Man in the Middle*, N.Y. Times (March 24, 2014), https://www.nytimes.com/2014/03/25/sports/basketball/the-man-in-the-middle-of-the-knicks-deal-with-jackson.html (last accessed April 10, 2024) ("Enter Azoff, who has been business partners with Dolan since 2004, when Dolan began investing in Azoff's management company. (Dolan and Madison Square Garden have since poured millions more into other Azoff ventures.) They speak on the phone several times a day, Azoff said, and spend time together socially. It was at a party in December, at Azoff's home in the exclusive Holmby Hills section of Los Angeles, that Dolan and Jackson retired to a downstairs office so they could discuss the Knicks. It was all a part of Azoff's plan.").

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

10

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

one of a select group of friends who Azoff called every morning to "chat" and "get ready for battle."[3]  When Dolan and Irving Azoff started Azoff MSG Entertainment, LLC in or about September 2013, Dolan publicly stated that Irving Azoff "was going to run everything."  Dolan also stated, "We're going to be a good partner, but [Irving Azoff] is not subject to a board of directors.  He just has me."[4]  Dolan also shared that his partnership with Azoff was something they had both wanted for some time, stating "We've always wanted to do this kind of thing.  We're finally in a position where we can do that. We've been collaborating on ideas and relating as business executives for a long time. This is a natural outgrowth of that."[5]

36.     At some point after Dolan's statement to Ms. Croft that he would take care of her predicament, Frey called Ms. Croft and apologized repeatedly and profusely to her for the situation with Golseth.  Ms. Croft found this behavior extremely out of character for Frey.  She thereafter learned that the Eagles fired

---

[3]     *See* Scott Cacciola, *The Man in the Middle*, N.Y. Times (March 24, 2014), www.nytimes.com/2014/03/25/sports/basketball/the-man-in-the-middle-of-the-knicks-deal-with-jackson.html.

[4]     Todd Martens, *Madison Square Garden Invests $125 million in Irving Azoff Firm*, L.A. Times (Sept. 4, 2013), https://www.latimes.com/entertainment/music/posts/la-et-ms-madison-square-garden-125-million-irving-azoff-firm-20130904-story.html (last accessed April 10, 2024).

[5]     David Lieberman, *Irving Azoff Teams with Jim Dolan's Madison Square Garden in New Entertainment Venture*, Deadline (Sept. 4, 2013), https://deadline.com/2013/09/irving-azoff-teams-with-jim-dolans-madison-square-garden-in-new-entertainment-venture-578308/ (last accessed April 10, 2024).

SECOND AMENDED COMPLAINT SEEKING DAMAGES

Golseth from the tour, and rumors spread that the incident between Ms. Croft and Golseth was the reason for the sudden termination.  In mid-November 2013, Ms. Croft joined the band in Miami for another part of the Eagles tour.  Unfortunately, Ms. Croft continued to feel ostracized by others because of Golseth's firing and was even more isolated than before.

37.     During this trip, Dolan scheduled his second massage with Ms. Croft. Dolan asked Ms. Croft how the situation concerning Golseth had evolved, and Ms. Croft noted that Frey had apologized to her and that she hoped things would get better, although noted that she still felt isolated.  Dolan responded, "I told you it would be taken care of," thereby insinuating that he was the one who caused Frey to apologize to her.

38.     At that moment, Ms. Croft began to understand the power Dolan had on the tour—he was even able to get Frey to apologize to her.

39.     Ms. Croft also understood that Dolan could control the Azoff Entities' business decisions about the Eagles tour.  For example, Dolan once suggested that Ms. Croft should "travel the world" and join the Eagles when the band traveled to Europe for a continuation of the tour.  Ms. Croft had not previously discussed the European leg of the tour with anyone from the Azoff Entities, but Dolan assured her that he would make sure she would be invited to Europe, demonstrating that he could control the Azoff Entities' decision-making about the tour.

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

40.     At that same time, in the context of Ms. Croft's professional massage of Dolan, he felt emboldened to further flex his power and influence over Ms. Croft. Towards the end of the massage, Dolan pulled Ms. Croft towards him.  She tried to push away, stating that she was very uncomfortable and that she took her job as a Licensed Massage Therapist very seriously and that she wanted to remain professional.

41.     Ms. Croft tried to bring the massage to an end, but Dolan proceeded to come on even stronger, treating Ms. Croft's resistance as part of a challenge or a game.

42.     Dolan then grabbed Ms. Croft's hands, dragging her to a couch in the same room and forcing her hands between his knees as he sat down.  Ms. Croft was adamant that she did not want to have any sexual interactions with Dolan, who was married at the time and over thirty years older than Ms. Croft.

43.     Dolan was extremely assertive, and pressured Ms. Croft into unwanted sexual intercourse with him.  She felt disgusted and terrified of the situation, but the extreme isolation she felt from others on the tour, coupled with Dolan's attention to her, his assertions that he would take care of her, and her recognition that this man held immense power over everyone's position on the tour—including hers—led her to submit to Dolan's advances.

13

SECOND AMENDED COMPLAINT SEEKING DAMAGES

44.     Following this unwanted sexual contact, Ms. Croft was summoned to Dolan's room multiple times during the remainder of that part of the tour.  On each of these occasions, Dolan made unwelcome advances toward Ms. Croft, and she felt obligated to submit to sex with him.

45.     Dolan was extremely manipulative, constantly reminding Ms. Croft of the way he "fixed" the situation with Golseth for her.  He would also regularly name-drop famous celebrities and sports stars he said were his friends.  He also suggested that Ms. Croft would have opportunities for more work through him, noting that as the owner of Madison Square Garden, many musical tours went through that venue and required massage services.  Although Dolan claimed to be sober, Ms. Croft saw multiple bottles of Valium and Ambien in Dolan's possession.

46.     Ms. Croft was disgusted by Dolan, but her youth and extreme loneliness while on the road with strangers, as well as Dolan's immense power, made it possible for Dolan to manipulate Ms. Croft and lure her under his control.

**III.     Dolan and Other Entities Traffick Ms. Croft to California**

47.     Around the end of 2013, Ms. Croft received a request from the Azoff Entities to join the tour in Los Angeles, California.

48.     Although Ms. Croft understood that she was being flown out to California by the Azoff Entities to work for the Eagles and Frey, she later learned that she was working for both the Eagles and Dolan.  Marc Robbins, an agent of the

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

Azoff Entities with an "azoffmuicmanagement.com" email address, forwarded Ms. Croft an email that suggested her flight to California would be expensed on "the JD credit card." On information and belief, "JD" referred to James Dolan and/or JD & The Straight Shot.

49.     Ms. Croft thought it was strange that she was invited to Los Angeles, as normally when the Eagles were in a major city, the band members were too busy to schedule massages with her. Frey also lived in California and had another masseuse on call in Los Angeles, so Ms. Croft was not needed. Nevertheless, Ms. Croft was grateful for the work and accepted the invitation.

50.     Ms. Croft had no reason to believe she would not be working for the Eagles on this tour. In booking her travel, Robbins told her that "I'll need you at the show Monday afternoon. We will make arrangements for you." Additionally, Ms. Croft received an email from the Eagles' assistant tour manager in advance of her trip stating that she was "excited to hear that we'll get to see you soon." As a result of her communications with representatives of the Azoff Entities, she understood and believed that she would be joining the Eagles on tour, as she had in the past.

51.     Ms. Croft's understanding was bolstered by the fact that Robbins, as a member of the Azoff team serving as management for the Eagles, personally transported Ms. Croft from The Peninsula to The Forum on days when shows were scheduled.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

15

SECOND AMENDED COMPLAINT SEEKING DAMAGES

52.     At the time, Ms. Croft did not know that JD & The Straight Shot and Dolan would be opening for the Eagles on this part of the tour.

53.     On all prior legs of the Eagles tour, Ms. Croft understood that the Azoff Entities paid for her travel and lodging on behalf of the Eagles.  Because Dolan or his band was paying for Ms. Croft's presence on the Los Angeles tour stint, the agents and representatives of the Azoff Entities must have known that Ms. Croft's presence was specifically requested by Dolan.

54.     Ms. Croft also did not realize at the time the deep connections between Azoff's companies and James Dolan.  As part of the partnership formed with the creation of Azoff MSG Entertainment, LLC in September 2013, Dolan's MSG paid Azoff Music Management $125 million for a 50% stake in the joint venture and also provided a $50 million line of credit.  The joint venture was specifically created to fund the renovation and reopening of The Forum, the historic music venue in Los Angeles.  The venue's first tour upon reopening in January 2014 was the Eagles, with JD & The Straight Shot performing as the opening act.[6]

_____

[6]     Indeed, on December 21, 2013, Irving Azoff and his wife Shelli sent an email invitation to the opening of The Forum, which specifically acknowledged that the venue remodeling was done jointly with Dolan:  "We are delighted to extend the attached invitation from the two of us, along with Jim Dolan, for you and a guest to attend what promises to be a once in a lifetime evening, celebrating the re-opening the newly remodeled Los Angeles Forum."  *See* https://wikileaks.org/sony/emails/emailid/56721 (last accessed April 10, 2024).

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

16

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

55.     This joint venture was particularly important to Irving Azoff, who after leaving his positions at LiveNation, was restricted in his ability to engage in new artist management.  By teaming up with Dolan and MSG in 2014, Azoff was allowed to continue to grow his influence in the music industry, and therefore he and his businesses were heavily reliant on Dolan at this time.[7]

56.     Indeed, Ms. Croft did not realize that the only reason Dolan was opening for the Eagles was because of his monetary investments in Irving Azoff's companies and, specifically, in The Forum.  As one article described Dolan's path to establishing his band,

> Dolan hit up powerful friends who'd offered to help. Azoff took over management of Dolan's band. He accepted an invitation from [Eagles band member Joe] Walsh, an Azoff client, for JD & the Straight Shot to open shows, including a date in August 2007 at the Beacon Theater, <u>which MSG had acquired</u> at the end of the previous year. Don Henley—

---

[7]     *See* Waddell, Ray, "The $300 Million Comeback: Irving Azoff Teams With MSG's James Dolan to Create Intriguing Music Company," *Billboard*, https://www.billboard.com/music/music-news/the-300-million-comeback-irving-azoff-teams-with-msgs-james-dolan-to-5687155/ ("The privately held AMSGE will consist of Azoff Music Management's existing artist management firm alongside other businesses still in development, including publishing, TV production, and live event and digital branding. The James Dolan-led Madison Square Garden Co. (MSG) is paying Azoff Music Management $125 million for a 50% stake in the joint venture and has also agreed to provide a $50 million line of credit, giving the deal a total valuation of $300 million. The funding will be key as Azoff and Dolan hinted strongly at ambitions to build parts of the new company through acquisition.  The non-compete constraints of Azoff's exit deal with Live Nation won't be a factor after 2014. He remains arguably the best closer in the music biz, and it wouldn't be a surprise to see some of the Artist Nation companies once aligned with him come back onboard when they're contractually allowed to do so.").

17

the drummer and face of the Eagles, and Azoff stablemate—also brought the band on as a warm-up act. While serving as the Eagles' opener, JD & the Straight Shot got to be the first band to play the refurbished L.A. Forum, which Dolan's company had acquired two years earlier. The Azoff connection likewise landed JD & the Straight Shot several stadium dates on a one-of-these-things-is-not-like-the-other-ones cavalcade tour in 2010 with the Eagles, Keith Urban, and the Dixie Chicks.[8]

57.     Although Ms. Croft was unaware of the financial transactions that led to Dolan's participation in the tour, Dolan and the Corporate Defendants knew that Dolan controlled the purse strings as it related to the re-opening of The Forum, and that he thus had profound power over everyone involved in the venue and the tour.

58.     When Ms. Croft arrived in Los Angeles, the Azoff Entities, including Robbins, arranged for Ms. Croft to be picked up at the airport by a security guard for the Eagles who Ms. Croft knew from previous shows.  The security guard brought her to stay at The Peninsula Hotel in Beverly Hills.  Although the arrangements up until that point were typical of the other tour stints she had joined with the Eagles, she soon became aware that the trip to Los Angeles was very different.  Unlike the other tour stints that she joined with the Eagles, for example, Ms. Croft was not housed at the same hotel as the band and the other tour support staff; instead, she was at the same hotel as Dolan and JD & The Straight Shot.

---

[8]     Dave McKenna, *James Dolan Wants You to Love His Band*, Deadspin (May 5, 2016)  https://deadspin.com/james-dolan-wants-you-to-love-his-band-1774444500  (last accessed April 10, 2024).

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

18

SECOND AMENDED COMPLAINT SEEKING DAMAGES

59.     On all other tour stints, Ms. Croft traveled and ate her meals with Frey and the Eagles, was provided with a hotel room paid for by the Azoff Entities that was located very close to Frey's room, traveled to and from the venue with Frey, and was provided compensation exclusively from the Azoff Entities for her work with the Eagles.   By contrast, in Los Angeles, Ms. Croft barely saw Frey or the other members of the Eagles.

60.     Ms. Croft was given a room to perform massages at the Forum, the newly re-opened venue funded by Irving Azoff and James Dolan.  Ms. Croft spent the majority of the time in Los Angeles by herself in the room at the Forum.  Almost no tour members signed up for massage appointments.

61.     Ms. Croft did not perform a single massage on any member of the Eagles while working at The Forum, despite ostensibly being flown to California for that very purpose, and even though she later received "venue pay" from the Eagles through the Azoff Entities.

62.     Although the Azoff Entities purported to fly Ms. Croft from Tennessee to California to perform legal massage services for the Eagles and other tour members, in reality, Ms. Croft was flown out to Los Angeles for the purposes of engaging in unwanted sexual acts with Dolan.  On information and belief, the Azoff Entities arranged for Ms. Croft to be brought to California at Dolan's request.  In doing so, the Azoff Entities knew or acted in reckless disregard to the fact that Dolan

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

19

sought Ms. Croft's presence not for legitimate business purposes, but because he wished to sexually exploit Ms. Croft.

63.     Indeed, Dolan expected Ms. Croft to have sexual interactions with him during the tour, and she spent her time either isolated by herself or waiting for instructions from Dolan.

64.     On evenings when there was no show scheduled at The Forum, Ms. Croft would stay alone in her room at the Peninsula until she was inevitably called to Dolan's room for a "massage" or to "work on [him.]"  On these occasions, Dolan never truly wanted only a massage, but expected sexual favors.

65.     The payments that Azoff Entities made to Ms. Croft during the Los Angeles leg of the Eagles tour were made, at least in part, for Ms. Croft to be available when Dolan wanted to see her and have sex with her.  Specifically, Ms. Croft was paid "venue pay," approximately $700 per day at The Forum, in cash, from an accountant for the Azoff Entities by the name of John Dalton.  Dalton was directed to pay this amount to Ms. Croft even though she performed almost no massages when at The Forum.

66.     Likewise, Dolan authorized the Azoff Entities to fly Ms. Croft from Tennessee to Los Angeles and have Ms. Croft lodged at the Peninsula, paid for on the "JD credit card," so that Ms. Croft would be available when he wanted to see her and have sex with her.  Additionally, Dolan's tour manager Annie Bloom wired Ms.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

20

Croft $8,400 in payment for the Los Angeles leg of the tour, even though she performed almost no work for JD & The Straight Shot, and spent the entirety of the Los Angeles leg of the tour either alone or at Dolan's beck and call for sexual favors.

67.     Ms. Croft did not want to have sexual and intimate contact with a man twice her age whom she did not find remotely attractive.  But given Dolan's power, she was terrified of upsetting him by rejecting his sexual demands.  She understood that doing so would jeopardize her work with the Eagles and future opportunities to serve as a Licensed Massage Therapist for professional musicians.   Thus, Ms. Croft's submission to Dolan's sexual demands, which included him touching Ms. Croft's breasts, buttocks and vagina, was neither free nor voluntary, and was against Ms. Croft's will.

68.     At times, Dolan acted romantically toward Ms. Croft, pretending that he had brought her to California for something more than merely satisfying his desire to have a sex-fueled "rock star" experience on the road.  Ms. Croft's youthful naivete led her to believe, at the time, that Dolan actually cared about her.

69.     Dolan even suggested that he would rent a car and drive with Ms. Croft down the Pacific Coast Highway.  Instead, Ms. Croft was left alone at the Forum or at The Peninsula while other tour members socialized.

70.     On one occasion, Ms. Croft was summoned to Dolan's hotel room for a supposed "massage."   Once in his room, Dolan shared that he and "the band"

21

SECOND AMENDED COMPLAINT SEEKING DAMAGES

(meaning his JD & The Straight Shot bandmates) had together gone to an adult entertainment store where Dolan had purchased a vibrating sex toy for Ms. Croft. He told her that he bought it for her because she had previously discussed with him the practice of using vibrations on vocal cords for massages for vocalists like the musicians she worked with.  When Ms. Croft explained that the device she was referring to was a specific professional massage tool, Dolan then suggested the two use the sex toy he purchased for sexual activity.

71.    Ms. Croft was humiliated—first, because Dolan had made a mockery of the massage practices that she had devoted her career to and took extremely seriously, and second, because it was clear that Dolan had told his friends and bandmates that he was purchasing a sex toy *for her*, leaving no question that others on the tour knew that Dolan was having sexual contact with Ms. Croft.

72.    By disclosing his illicit activities with Ms. Croft to his bandmates, Ms. Croft believes that Dolan also gave the impression to others on the tour that Ms. Croft was available to provide sexual services.  For example, JD & The Straight Shot band member Brian Mitchell signed up for a massage with Ms. Croft.  When in the massage room, Mitchell asked Ms. Croft if she would provide him with a "prostate massage."  At the time, Ms. Croft did not know what that meant, and she told Mr. Mitchell that she wasn't familiar with what he was asking for but would do some research.  Ms. Croft subsequently determined that Mitchell was asking for a sexual

22

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

favor, not a legitimate massage. On information and belief, Dolan's bandmate believed that Ms. Croft would engage in sexual contact because Dolan had suggested that she was available for sexual favors.

## IV. Dolan Fraudulently Coordinates a Meeting Between Ms. Croft and Harvey Weinstein

73.     A few days into this leg of the tour, on January 21, 2014, Dolan encouraged Ms. Croft to join two female assistants from Irving Azoff Management, including a woman named Jillian Lentz,[9] for shopping and dinner in Los Angeles. After shopping for clothes, the three women had dinner at a burger restaurant.  Ms. Croft was nervous and uncomfortable around these two strangers.

74.     When she returned to the Peninsula, she waited for the elevator to her floor next to a large man she had never seen before while holding her shopping bags and a box of leftover food.  When the elevator arrived, Ms. Croft and the man entered the elevator together.

75.     In the elevator, the large man asked Ms. Croft, "who is that to-go box for?"  She responded that she was going to give it to her friend James Dolan, who was also staying at the hotel.

---

[9]     According to Ms. Lentz's LinkedIn profile, she worked for Azoff Music Management from October 2013 through February 2015.  *See* https://www.linkedin.com/in/jillianlentz/details/experience/ (last accessed April 10, 2024).

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

76.    The man responded to Ms. Croft that Dolan was "one of his best friends," and proceeded to ask Ms. Croft if she was "the massage therapist." According to the man, Dolan had mentioned his massage therapist and had said great things about her.  He introduced himself as Harvey Weinstein.

77.    Ms. Croft did not know much about Weinstein other than what she had heard from Dolan himself, who had boasted about having a "buddy" who worked on all the cool movies in Hollywood.

78.    In the elevator, Weinstein suggested that he might have work opportunities for Ms. Croft, stating that "we always need massage therapists on set for actors and actresses."  He asked Ms. Croft if she would be interested in such an opportunity.

79.    Ms. Croft was stunned by the offer and said that she would be happy to discuss such a role.

80.    Weinstein suggested that they discuss the job opportunity immediately, and he insisted that Ms. Croft join him in his suite to continue the conversation.

81.    Ms. Croft's hotel room was near Weinstein's.  Because she had no other obligations that evening, she agreed to join Weinstein to discuss what sounded like a dream job opportunity.

82.    After entering Weinstein's suite, Ms. Croft sat down on a couch in the living room area and set down her to-go box and shopping bags near her.  Weinstein

24

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

nodded towards Ms. Croft's shopping bags and told her that she should try on the clothes she purchased for him. Weinstein told Ms. Croft that as a producer for the show Project Runway, he "really knew" clothes and could tell when things "fit properly."

83.    Although confused by the request, Ms. Croft was extremely intimidated by Weinstein. As Ms. Croft began to take her shopping bags to the bathroom in the living room area of the suite, Weinstein stopped her, telling her to try on the clothes "out here," insisting that "that's how we do it here."

84.    Ms. Croft explained that she was not comfortable with changing in front of him and proceeded to the bathroom. Weinstein appeared amused at Ms. Croft's protestations.

85.    After trying on some clothes, Ms. Croft returned to the couch to discuss the work opportunity Weinstein had mentioned. Weinstein handed Ms. Croft a drink, but she only took a sip or two, wanting to focus instead of the potential business opportunity.

86.    Weinstein was extremely complementary towards Ms. Croft, noting that she reminded him of actress Reese Witherspoon.

**V.     Weinstein Sexually Assaults Ms. Croft and Ms. Croft Immediately
         <u>Reports the Assault to Dolan</u>**

SECOND AMENDED COMPLAINT SEEKING DAMAGES

87.     As the conversation turned to massage therapy, Weinstein asked Ms. Croft if she could "show [him] what she could do" and requested that she give him a massage.  Ms. Croft immediately dismissed the request, noting that she was very particular about only performing massages properly using her massage table.

88.     Around this time, Weinstein came behind Ms. Croft on the couch and began rubbing her shoulders, again requesting that she massage him. Uncomfortable, Ms. Croft again stated she would not perform any massage without the proper set up.

89.     Weinstein then excused himself to go to the bathroom.  When he returned to the living room area of the suite, he was wearing a loosely tied bathrobe and appeared to be naked underneath the bathrobe.  While standing mostly unclothed in front of Ms. Croft, he asked her, "so, when are you going to give me a massage?"

90.     Ms. Croft was terrified and panicked.  She immediately tried to figure out a way to avoid the escalating situation.  She reiterated that it was very important to have her massage table, especially for someone with a "greater stature" like Weinstein.  Frantic to avoid what Weinstein was requesting, she also suggested that she would need permission from the Eagles to perform any other massages, as she was brought out to Los Angeles for them specifically.

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

91.     Weinstein was unfazed by Ms. Croft's attempts to get away and asked her to look at the bed in the bedroom of the suite because it was "perfect" for a massage.

92.     When Ms. Croft again said she was not comfortable with the situation, Weinstein began to get irritated and angry with her.  He stated, "well this is just how people do things in Hollywood, if you will not be reasonable and are not able to handle requests on the fly, you won't make it in Hollywood."

93.     Ms. Croft agreed to look at the bed, but again assured Weinstein that the bed would not work for a massage, and that she really needed her table and for his body to be draped with a sheet or blanket.  Weinstein became very angry, stating that Ms. Croft could easily massage him on the bed and that he liked to be completely naked.

94.     Ms. Croft tried to leave the room, but Weinstein blocked the door to prevent her from leaving.  Terrified and desperate, Ms. Croft tried one last attempt to avoid Weinstein, stating that she felt "so lucky to have the opportunity to work on" Weinstein and wanted to make sure that it was done correctly so that she could show him what she is capable of.  Weinstein reluctantly agreed and allowed Ms. Croft to exit the suite.

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

95.    Ms. Croft hurried down the hallway to her hotel room, but as she left, she realized that Weinstein had followed her out of his suite down the hallway.  He was still only wearing a loosely tied bathrobe.

96.    Ms. Croft arrived at her room and rushed inside.  Once inside, Ms. Croft attempted to push the door closed.  As the door closed, though, Weinstein stuck his foot in the opening of the door and pushed the door open.  He barged into Ms. Croft's hotel room.

97.    Weinstein then backed Ms. Croft onto the bed, forced her down, and forced her legs open.  Standing between her legs, he undid his robe, and shoved his fingers inside of her, using his other hand to hold her down.  He tried to force his penis inside of her, although he struggled to do so.

98.    Ms. Croft fought back the best she could, although she recalls that Weinstein felt like a giant compared to her.  She struggled to sit up, push him away, and tried as hard as she could to keep her legs together.

99.    In the midst of the assault, Ms. Croft's hotel room phone began to ring.  She tried to use the phone as an excuse to escape, stating "that's probably Jim Dolan calling me, he is going to come down here if I don't answer his call."

100.    Ms. Croft managed to wriggle away enough to grab the phone, and discovered that it was, in fact, Dolan calling her.  She picked up the call and told Dolan that she would be with him shortly.

WIGDOR LLP
85 FIIFTH AVENUE, FIIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

101.   After hearing her speak to Dolan, Weinstein backed off of Ms. Croft. He then stated to her, "well, you know Jim and I are best friends.  He's going to be very disappointed that you led me on, this won't look good for you."  Weinstein then left Ms. Croft's hotel room.

102.   Rattled and shaken, Ms. Croft went to Dolan's hotel room.  She was visibly upset, and Dolan inquired what was wrong.

103.   In response, Ms. Croft told Dolan that she had met Weinstein in the elevator lobby, had joined him for a discussion, and that Weinstein was "sexually aggressive" with her.

104.   Dolan was not at all surprised by the fact that Ms. Croft had "randomly" happened to meet one of his "best friends" at the hotel.  Nor, incredibly, did Dolan express any surprise at the news that Weinstein was "sexually aggressive" with Ms. Croft.  To the contrary, Dolan responded to Ms. Croft's report of sexual assault in a completely matter-of-fact tone, noting that Weinstein was "a troubled person" that had a lot of "serious issues," but that his friends were "trying to get him to address" those issues.  Dolan intimated that Weinstein was not a "safe" person but did little to console Ms. Croft or help her to report the assault to the authorities.  Indeed, with his comments, Ms. Croft felt that Dolan completely dismissed the gravity of the situation and did not truly care about what his friend had done to her.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

29

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

105.    The day after the attack, Ms. Croft attempted to work but felt so physically and emotionally unwell that Robbins, the executive from the Azoff Entities, sent a doctor to see her.  In the following days, Ms. Croft felt so physically and emotionally unwell that she called out sick from work.  She found herself unable to leave her hotel room, wracked with shame and disgust, and completely isolated. Dolan was aware that Ms. Croft was unwell after Weinstein's horrific attack.

106.    Ms. Croft left the tour after the Los Angeles concerts heartbroken and traumatized.

107.    The Azoff Entities arranged and paid for Ms. Croft's return flight from Los Angeles to Tennessee.

## VI.    Ms. Croft Suffers Following Dolan's Exploitation and Manipulation and Weinstein's Horrific Sexual Attack

108.    Ms. Croft was never the same after her experiences on tour with the Eagles.

109.    When she returned home to Tennessee, her friends and family noticed that she was no longer as happy and energetic as she used to be.

110.    Moreover, she lost her passion and love for massage therapy—a practice she had previously devoted her life to.  When she had scheduled massage appointments with clients following the tour, she would often have panic attacks leading up to the appointment.  On multiple occasions, just before starting a massage,

SECOND AMENDED COMPLAINT SEEKING DAMAGES

Ms. Croft's muscles would tense so extremely that she could not move her hands or perform a massage.  On these occasions, she would retreat to an empty room where she would cry and shake until she could call her parents to pick her up.

111.   To cope with the incessant stress and horrific memories of the tour, Ms. Croft turned to drugs and alcohol to forget about the assault and to assuage her feelings of shame and guilt for getting roped into Dolan's manipulations.  Her substance use turned to abuse, and she later required extensive rehabilitation to cope with her depression and the related substance use.

112.   Weinstein's assault and Dolan's unlawful sex trafficking and manipulation—both together and separately—weighed on Ms. Croft for years.  She struggled to form healthy relationships with men, as she felt betrayed by her trusting nature, believing it led Dolan to take advantage of her and allowed Weinstein to attack her.

113.   Tragically, Ms. Croft has since abandoned her lifelong love of massage therapy.  She is unable to engage in the healing physical practice that she cared so deeply for, as now it carries all of the pain and devastation caused by Dolan and Weinstein.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

31

SECOND AMENDED COMPLAINT SEEKING DAMAGES

# FIRST CAUSE OF ACTION
## (Violation of 15 U.S.C. §§ 1591 and 1595)
### *Against James Dolan and The Corporate Defendants*

114.   Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

115.   Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and (b) and is therefore entitled to bring a civil action under 18 U.S.C. § 1595.

116.   Defendant Dolan and the Corporate Defendants formed a venture as defined by 18 U.S.C. § 1591 given that they constituted a "group of two or more individuals associated in fact, whether or not a legal entity."

117.   Defendant Dolan was an agent of the Corporate Defendants.

118.   Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of 18 U.S.C. § 1591.  Specifically, Defendant James Dolan and the Corporate Defendants perpetrated sex trafficking of Ms. Croft by transporting her to California for the purposes of providing sexual favors, and all Defendants benefitted from Dolan's venture by keeping Ms. Croft subject to Dolan's demands and desires.  At all relevant times, Defendants participated in and facilitated the harboring and transportation of Plaintiff for purposes of sex induced by force, fraud, or coercion.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

32

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

119.   The sex acts between Dolan and Ms. Croft referred to in paragraphs 62-67 above were "commercial sex acts" within the meaning of 18 U.S.C. § 1591(e)(3) because, as described above, Ms. Croft received "things of value" in exchange for having unwelcome sexual contact with Dolan, including cash payments that were nominally for massage services, round trip airfare from Tennessee to California, and a multi-night stay at the Peninsula Hotel.  In exchange for these sex acts with Dolan, Ms. Croft also received promises from Dolan that she would be invited to the European leg of the Eagles tour, and that she could potentially receive work as a massage therapist for other musical tours that went through Dolan's Madison Square Garden arena in New York City.  Ms. Croft did, in fact, join the European leg of the of the Eagles tour in May 2014, which, on information and belief, was at Dolan's behest to the Azoff Entities.  Dolan received sexual gratification from these sex acts, which is also a "thing of value" within the meaning of 18 U.S.C. § 1591(e)(3).

120.   The Corporate Defendants, including the Azoff Entities, have financially and otherwise benefited as a result of these acts and omissions by keeping Dolan satisfied.  In addition to the extremely close personal relationship between Dolan and Irving Azoff, Dolan was a critically important business partner for the Azoff Entities, reflected by Dolan's decision to have Madison Square Garden invest $175 million in Azoff MSG Entertainment, LLC and to serve as a funding source for the Eagles 2014 tour and the opening of The Forum.  The Azoff Entities thus

33

benefited from facilitating Dolan's behavior to the extent it kept their important partner, a notoriously erratic billionaire, happy.

121.   Defendant Dolan acted as an agent to each of the Corporate Defendants.

122.   As alleged in paragraph 35, by his own public admissions, Dolan founded and closely managed Defendant the Azoff Company LLC (formerly known as "Azoff MSG Entertainment, LLC.")  As alleged in paragraphs 54 and 120, the Defendant Azoff Company Holdings, LLC (formerly known as "Azoff Music Management LLC") engaged in a joint venture with Azoff Company LLC to fund the renovation and reopening of the Forum, in Los Angeles, as a part of which venture the two Azoff Entities also organized the Eagles 2014 Tour which employed Plaintiff.

123.   Dolan had significant managerial discretion over the activities of the joint venture, including personnel matter, as alleged in paragraphs 34, 36, 39 and 48.

124.   As alleged in paragraph 62, when Dolan arranged through the Azoff Entities to have Croft transported to California, it was on the pretext that she was an employee of the Azoff Entities, when in reality he intended to use her employment

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

34

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

as a masseuse to sexually assault her, and use fraud, force, and coercion to induce her into commercial sex acts.

125.    Accordingly, Dolan acted in his capacity as an agent when he violated the Trafficking Victims Protection Act, and the Azoff Entities are vicariously liable for his conduct.

126.    As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress and anxiety, humiliation, embarrassment, post-traumatic stress disorder, economic harm, and other consequential damages.

127.    Plaintiff also seeks reasonable attorneys' fees as provided under 18 U.S.C. § 1595(a).

## SECOND CAUSE OF ACTION
### (Sexual Battery)
### *Against James Dolan*

128.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

129.    Defendant James Dolan committed a battery against Plaintiff when he intentionally engaged in trafficking Plaintiff for commercial sex acts and then engaged in unlawful, intentional, and offensive touching or application of force to Plaintiff's person, where Plaintiff did not act freely and voluntarily with knowledge

35

of the nature of the transactions involved, and the actions were against Plaintiff's will, as defined in Cal. Penal Code § 243.4.

130.   As a result of Dolan's alleged conduct, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, anxiety, economic harm, and other consequential damages.

131.   The conduct of Dolan described above was willful, wanton, and malicious.  At all relevant times, Dolan acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff.  By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from James Dolan according to proof at trial.

132.   This cause of action is timely under California's Sexual Abuse and Cover-Up Accountability Act, AB 2777 because it is "based on conduct that occurred on or after January 1, 2009, and is commenced []after January 1, 2019," and is thereby revived by Cal. Code Civ. Proc. § 340.16 (b)(3).

### THIRD CAUSE OF ACTION
**(Sexual Assault/Attempted Rape)**
***Against Harvey Weinstein***

133.   Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

36

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

134.   Defendant Harvey Weinstein committed an assault and battery against Plaintiff because he intentionally engaged in unlawful, intentional, and offensive touching or application of force to Plaintiff's person , as defined in Cal. Penal Code §§ 243.4 and 261.

135.   As a result of Harvey Weinstein's alleged conduct, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, anxiety, economic harm, and other consequential damages.

136.   The conduct of Harvey Weinstein described above was willful, wanton, and malicious.   At all relevant times, Harvey Weinstein acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff.   By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from Harvey Weinstein according to proof at trial.

137.   This cause of action is timely under California's Sexual Abuse and Cover-Up Accountability Act, AB 2777 because it is "based on conduct that occurred on or after January 1, 2009, and is commenced []after January 1, 2019," and is thereby revived by Cal. Code Civ. Proc. § 340.16 (b)(3).

**FOURTH CAUSE OF ACTION**
**(Aiding and Abetting Sexual Assault/Attempted Rape)**
***Against James Dolan***

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

138.   Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

139.   Defendant James Dolan aided, abetted, advised, encouraged, enabled, and facilitated Defendant Harvey Weinstein's battery and assault of Plaintiff by orchestrating and facilitating a meeting between Weinstein and Plaintiff for the purposes of Weinstein engaging in sex acts with Plaintiff, and Weinstein did in fact intentionally engage in unlawful, intentional, and offensive touching or application of force to Plaintiff's person, as defined in Cal. Penal Code §§ 243.4 and 261.

140.   As a result of James Dolan's alleged conduct in aiding and abetting Weinstein's criminal acts, Plaintiff has suffered physical injury, severe emotional distress, humiliation, embarrassment, anxiety, economic harm, and other consequential damages.

141.   The conduct of James Dolan described above was willful, wanton, and malicious.  At all relevant times, James Dolan acted with conscious disregard of Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff.  By virtue of the foregoing, Plaintiff is entitled to recover punitive and exemplary damages from James Dolan according to proof at trial.

SECOND AMENDED COMPLAINT SEEKING DAMAGES

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

142.   This cause of action is timely under California's Sexual Abuse and Cover-Up Accountability Act, AB 2777 because it is "based on conduct that occurred on or after January 1, 2009, and is commenced []after January 1, 2019," and is thereby revived by Cal. Code Civ. Proc. § 340.16 (b)(3).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays judgment be entered in her favor against Defendants, and each of them, as follows:

1.   For a money judgment representing compensatory damages including consequential damages, lost wages, earning, and all other sums of money, together with interest on these amounts, according to proof;

2.   For an award of money judgment for mental pain and anguish and severe emotional distress, according to proof;

3.   For punitive and exemplary damages according to proof;

4.   For attorneys' fees and costs;

5.   For prejudgment and post-judgment interest; and

6.   For such other and further relief as the Court may deem just and proper.

WIGDOR LLP
85 FIIFTH AVENUE, FIFTH FLOOR
NEW YORK, NY 10003
(212) 257-6800

SECOND AMENDED COMPLAINT SEEKING DAMAGES

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: July 8, 2024

Respectfully submitted,

By: _____

**WIGDOR LLP**
Douglas H. Wigdor (Admitted *pro hac vice*)
Meredith A. Firetog (Admitted *pro hac vice*)
85 Fifth Avenue, Fifth Floor
New York, NY 10003
Telephone: (212) 257-6800
dwigdor@wigdorlaw.com
mfiretog@wigdorlaw.com

**LAW OFFICE OF KEVIN MINTZER, P.C.**
Kevin Mintzer (Admitted *pro hac vice*)
Laura L. Koistinen (Admitted *pro hac vice*)
1350 Broadway, Suite 1410
New York, New York 10018
km@mintzerfirm.com
llk@mintzerfirm.com

**GIRARD BENGALI, APC**

Omar H. Bengali
355 S Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (323) 302-8300
obengali@girardbengali.com

*Attorneys for Plaintiff Kellye Croft*

40
SECOND AMENDED COMPLAINT SEEKING DAMAGES