DANIEL M. PETROCELLI (S.B. # 97802)
  detrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6799

CATALINA VERGARA (S.B. # 223775)
  cvergara@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6400

*Attorneys for Defendants*
The Azoff Company Holdings LLC and
The Azoff Company LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLYE CROFT,<br><br>            Plaintiff,<br><br>      vs.<br><br>JAMES DOLAN, HARVEY WEINSTEIN, JD & THE STRAIGHT SHOT, LLC, THE AZOFF COMPANY HOLDINGS LLC f/k/a AZOFF MUSIC MANAGEMENT, LLC, THE AZOFF COMPANY LLC f/k/a AZOFF MSG ENTERTAINMENT, LLC, DOE CORPORATION 1-10,<br><br>            Defendant. | Case No. 2:24-cv-00371<br><br>**DEFENDANTS AZOFF ENTITIES' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:  August 19, 2024<br>Time:  1:30pm<br>Location:  Courtroom 9A<br>Judge:   Hon. Percy Anderson |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 19, 2024, at 1:30 p.m., or as soon thereafter as counsel may be heard by the above-entitled court, located in Courtroom 9A at First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, Defendants The Azoff Company Holdings LLC and The Azoff Company LLC (collectively, the "Azoff Entities") will and hereby do move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of Plaintiff's first cause of action against the Azoff Entities.

This motion is based on the ground that Plaintiff's only claim for relief against the Azoff Entities, for allegedly participating in a sex trafficking venture in violation of the federal Trafficking Victims Protection Act, 18 U.S.C. § 1591, fails to state a viable claim.  Even after amending her Complaint a second time, Plaintiff has failed to allege any facts that, taken as true, would satisfy the required elements of the claim—namely, that the Azoff Entities knew of, participated in, or benefitted from any sex trafficking venture.

The Azoff Entities' motion is based on this Notice of Motion and accompanying Memorandum of Points and Authorities; the concurrently filed Proposed Order; all other briefing in this case; and such additional submissions and argument, including any reply briefing, as may be presented at or before the hearing on this motion.  The motion is made following the conference of counsel required by Local Rule 7-3, which took place via videoconference on July 15, 2024.


DATED: July 22, 2024                    O'MELVENY & MYERS LLP


                                        By: _____/s/ Daniel M. Petrocelli_____
                                              Daniel M. Petrocelli
                                              Attorneys for Defendants Azoff Entities

DANIEL M. PETROCELLI (S.B. # 97802)
  detrocelli@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6799

CATALINA VERGARA (S.B. # 223775)
  cvergara@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6400

*Attorneys for Defendants*
The Azoff Company Holdings LLC and
The Azoff Company LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLYE CROFT.<br><br>        Plaintiff,<br><br>    vs.<br><br>JAMES DOLAN, HARVEY WEINSTEIN, JD & THE STRAIGHT SHOT, LLC, THE AZOFF COMPANY HOLDINGS LLC f/k/a AZOFF MUSIC MANAGEMENT, LLC, THE AZOFF COMPANY LLC f/k/a AZOFF MSG ENTERTAINMENT, LLC, DOE CORPORATION 1-10,<br><br>        Defendant. | Case No. 2:24-cv-00371<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS AZOFF ENTITIES' MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date: August 19, 2024<br>Time: 1:30pm<br>Location: Courtroom 9A<br>Judge: Hon. Percy Anderson |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................... 1

II.  BACKGROUND ..................................................................................... 3

III.  LEGAL STANDARD ............................................................................ 6

IV.  ARGUMENT ......................................................................................... 6

    A.  Plaintiff fails to allege any commercial sex act. ..................................... 7

    B.  Plaintiff fails to allege facts showing that the Azoff Entities knew or should have known of any sex trafficking scheme............................ 9

    C.  Plaintiff fails to allege facts showing that the Azoff Entities are vicariously liable for Dolan's conduct. ................................................. 12

    D.  Plaintiff's TVPRA claim should be dismissed with prejudice. ........... 14

V.  CONCLUSION ..................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abagninin v. AMVAC Chem. Corp.*,
545 F.3d 733 (9th Cir. 2008) ........................................................15

*Acevedo v. eXp Realty, LLC*,
2024 WL 650189 (C.D. Cal. Jan. 29, 2024) ...........................7, 9, 10

*Ascon Props., Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) ......................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................6

*B.J. v. G6 Hosp., LLC*,
2023 WL 6120682 (N.D. Cal. Sept. 18, 2023) ...............................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................6

*Doe 1 v. Deutsche Bank Aktiengesellschaft*,
671 F. Supp. 3d 387 (S.D.N.Y. 2023) ...........................................10

*Doe by Doe v. Piraino*,
688 F. Supp. 3d 635 (M.D. Tenn. 2023) ...................................11, 14

*Doe v. Fitzgerald*,
2022 WL 2784805 (C.D. Cal. May 13, 2022).................................9

*Eckhart v. Fox News Network, LLC*,
2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021) ................................11

*Ileto v. Glock, Inc.*,
349 F.3d 1191 (9th Cir. 2003) ......................................................6

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015) ........................................................14

*J.B. v. G6 Hosp., LLC*,
2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ...............................11

*J.C. v. Choice Hotels Int'l, Inc.*,
2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ...........................12, 14

---

# TABLE OF AUTHORITIES

**Page(s)**

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ................................................................6

*Ratha v. Phatthana Seafood Co.*,
    35 F.4th 1159 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 491, 214 L.
    Ed. 2d 280 (2022) ...............................................................................7

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ...........................................................15

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ...................................................6, 13, 14

**Statutes**

18 U.S.C. § 1591.............................................................................1, 6, 7, 9

**Other Authorities**

Restatement (Third) of Agency § 7.07 cmt. b .........................................14

## I.      INTRODUCTION

No matter how many times Plaintiff may try, there is no truthful way to state a plausible claim against the Azoff Entities under the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1591.  The simple, inescapable conclusion is that the Azoff Entities did not engage in sex trafficking, do not belong in this lawsuit, and should not be further subjected to it.  Plaintiff's sole cause of action against them should therefore be dismissed with prejudice.

In dismissing this claim from Plaintiff's First Amended Complaint ("FAC"), the Court found Plaintiff's allegations insufficient on three separate, independent grounds.  First, the Court found the FAC alleged no facts to satisfy the "commercial sex act" element of a direct liability claim under the TVPRA.  In particular, the FAC contained no allegations of a causal connection between any payments Plaintiff allegedly received on the Los Angeles leg of the Eagles tour in January 2014 and her alleged sexual activities with co-defendant James Dolan during the tour.  Dkt. 63 at 8.  Second, the Court found the FAC did not state a claim for beneficiary liability under the TVPRA because there were no allegations to support the inference that the Azoff Entities knew or should have known that Plaintiff was allegedly being sex trafficked to Los Angeles.  *Id.* at 9.  Finally, the Court concluded the FAC contained no facts to support Plaintiff's theory that the Azoff Entities were vicariously liable under the TVPRA for the actions of co-defendant James Dolan.  *Id.* at 9–10.

Plaintiff has added *nothing* to her Second Amended Complaint ("SAC"), Dkt. 65, to remedy these fatal pleading defects.  The new allegations are simply variations of allegations the Court previously found insufficient or are impermissibly conclusory.  Specifically:

- In an attempt to allege a "commercial sex act," Plaintiff embellishes prior allegations that she received payment for her Los Angeles tour-related time and travel expenses, and adds that Dolan promised her career opportunities. SAC ¶¶ 39, 45, 65–66, 119.  These do not cure the deficiency identified in

the Court's dismissal order:  the failure to allege that any of these alleged benefits were *causally related* to Plaintiff's alleged sexual relations with Dolan.  Dkt. 63 at 8.

- Next, to bolster her theory of beneficiary liability, Plaintiff alleges that, "[b]ecause Dolan or his band was paying for Ms. Croft's presence on the Los Angeles tour stint, the agents and representatives of the Azoff Entities must have known that Ms. Croft's presence was specifically requested by Dolan." SAC ¶ 53.  This, too, is not new information; Plaintiff previously alleged that her travel and lodging were paid for by Dolan and that the Azoff Entities knew as much.  Amended Compl., Dkt. 48 ("FAC") ¶¶ 48, 59.  These allegations remain plainly insufficient to meet her burden to allege the Azoff Entities "had the requisite knowledge that Dolan was using fraud or coercion to obtain sex, which is a necessary element of an act in violation of the TVPRA."  Dkt. 63 at 9.

- Finally, to salvage her theory of vicarious liability, Plaintiff reiterates allegations that Dolan had "managerial discretion" over the joint venture with the Azoff Entities, SAC ¶¶ 122–25, and adds that Irving Azoff was "heavily reliant" on Dolan to "grow his influence in the music industry," SAC ¶ 55. These conclusory allegations proceed on the wholly unsupported premise that Azoff, a long-time, legendary manager in the music industry, was somehow beholden to Dolan.  But in any case, Plaintiff again has it exactly backwards:  Ninth Circuit law requires her to allege that the Azoff Entities had control over *Dolan's* actions, not the other way around.[1]

---

[1] In addition to these defects, and as detailed in the Azoff Entities' previous motion to dismiss, Dkt. 51, Plaintiff's FAC failed to plausibly allege that the Azoff Entities participated in or benefitted from any sex trafficking scheme, *id.* at 9–13.  Her claim thus also fails for the same reasons explained there.

In short, despite her further amendment, Plaintiff's SAC does not and cannot plead facts plausibly establishing a viable claim. The TVPRA claim against the Azoff Entities should accordingly be dismissed with prejudice.

## II.    BACKGROUND

The core factual allegations in Plaintiff's SAC remain essentially unchanged from her FAC. Plaintiff alleges the Azoff Entities asked her to come to California in late 2013 to work as a massage therapist for the January 2014 Los Angeles leg of the Eagles tour. SAC ¶ 47. She further contends the Azoff Entities arranged her flight to Los Angeles—which an email forwarded to her by Marc Robbins, purportedly an agent of the Azoff Entities, suggested would be paid by Dolan. *Id.* ¶ 48. She also claims the Azoff Entities, including Robbins, arranged for her transportation from the airport in Los Angeles, for her stay at The Peninsula Hotel in Beverly Hills, and for her transportation to The Forum (the concert venue where she performed her massage services). *Id.* ¶¶ 49–51, 58. According to Plaintiff, these arrangements were orchestrated by the Azoff Entities and Dolan—who allegedly helped finance the Eagles tour,[2] made monetary investments in the Azoff Entities, and opened for the Eagles with his band—because Dolan "wished to sexually exploit" Plaintiff on the tour. *Id.* ¶¶ 54, 56–57, 62. She concludes "[o]n information and belief," and with no supporting facts, that the Azoff Entities "arranged for [Plaintiff] to be brought to California at Dolan's request" for the "purposes of engaging in unwanted sexual acts with Dolan." *Id.* ¶ 62.

As in the FAC, Plaintiff again alleges Dolan "fraudulently coordinate[d]" a meeting between her and Harvey Weinstein, purportedly a close friend of Dolan's. *Id.* § IV.; *id.* ¶ 77. She alleges that, one evening, after allegedly going shopping and dinner with two "female assistants" from one of the Azoff Entities at Dolan's

---

[2] As the Azoff Entities previously noted, Dolan did not finance the Eagles tour—but the Court need not resolve this factual issue in ruling on this motion.

encouragement, Plaintiff was waiting for the elevator to return to her hotel room when Weinstein introduced himself to her. *Id.* ¶¶ 73–76. As she describes it, after Weinstein learned she was a massage therapist, he suggested he might have work opportunities for her and invited her to join him in his suite, which she agreed to do. *Id.* ¶¶ 78–81. Plaintiff claims Weinstein sexually assaulted her in the suite, and she was able to escape when Dolan called. *Id.* ¶¶ 82–100. The next day, she claims she felt "so physically and emotionally unwell" that she was unable to work, at which point Robbins purportedly sent a doctor to see her. *Id.* ¶ 105. Shortly thereafter, the Los Angeles leg of the Eagles tour ended, and the Azoff Entities arranged for Plaintiff's return flight back to her home in Tennessee. *Id.* ¶ 107.

As noted above, most of the new allegations in Plaintiff's SAC simply restate or add immaterial details to the same allegations the Court previously found insufficient. For example, consistent with her prior allegation that Dolan had "profound power over everyone involved in the venue and the tour," *id.* ¶ 57, Plaintiff adds that Dolan "could control the Azoff Entities' business decisions about the Eagles tour" and Dolan suggested that he could obtain more work opportunities for Plaintiff, such as on the European leg of the tour, *id.* ¶¶ 39, 45. And, as with her prior allegations that "Dolan was a critically important business partner for the Azoff Entities" given his monetary investments, *id.* ¶ 120, Plaintiff adds that the Azoff Entities "were heavily reliant on Dolan" to grow Irving Azoff's "influence in the music industry," *id.* ¶ 55.[3]

_____

[3] Plaintiff alleges that the 2014 business ventures with Dolan were "particularly important to Irving Azoff" because he was "restricted in his ability to engage in new artist management" by a non-compete agreement signed upon Azoff's departure from Live Nation. *Id.* ¶ 55. Yet the very *Billboard* article that Plaintiff quotes in a footnote to this allegation dispels Plaintiff's claim, making clear that the "non-compete constraints" were soon expiring and "wo[uld]n't be a factor after 2014." *Id.* n.7 (quoting Waddell, Ray, "The $300 Million Comeback: Irving Azoff Teams With MSG's James Dolan to Create Intriguing Music Company," *Billboard*,

1        Similarly, Plaintiff repeats her allegation that "[u]nlike the other tour stints,"

2  she "was not housed at the same hotel as the [Eagles]," *id.* ¶ 58, and adds an

3  immaterial allegation that on other tour legs she also "traveled and ate her meals"

4  with the Eagles but did not do so on the Los Angeles leg, *id.* ¶ 59.  And to her

5  preexisting allegations that she was given "'venue pay'" by the Azoff Entities even

6  though "[a]lmost no tour members" signed up for massages, *id.* ¶ 60–61, Plaintiff

7  adds allegations that this "'venue pay'" was paid to her as $700 in cash per day by

8  an individual named John Dalton (purportedly an Azoff Entities accountant) and

9  that she was also paid $8,400 by Dolan's tour manager—again, despite performing

10  "almost no massages," *id.* ¶¶ 65–66.

11        The remainder of Plaintiff's new allegations in the SAC are likewise

12  inconsequential.  First, Plaintiff alleges that, because she received travel expenses,

13  promises of future employment, and monetary payments, her purported sexual

14  encounters with Dolan were "commercial sex acts."  *Id.* ¶ 119.  Second, having

15  previously alleged that Dolan was an "agent" of the Azoff Entities, *id.* ¶ 121,

16  Plaintiff adds conclusory allegations that he "had significant managerial discretion"

17  over "personnel matter[s]" and "acted in his capacity as an agent when he violated

18  the Trafficking Victims Protection Act" by "arrang[ing] through the Azoff Entities

19  to have [Plaintiff] transported to California," making the Azoff Entities "vicariously

20  liable for his conduct," *id.* ¶¶ 122–25.

21        Entirely absent from these additions to Plaintiff's SAC is anything that would

22  remedy the pleading deficiencies previously identified by the Court.  Hence, her

23  TVPRA claim against the Azoff Entities remains insufficient as a matter of law.

24

25

26

27  https://www.billboard.com/music/music-news/the-300-million-comeback-irving-

28  azoff-teams-with-msgs-james-dolan-to-5687155/).

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's claims. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  A complaint cannot survive a motion to dismiss if it merely "tenders naked assertion[s] devoid of further factual enhancement." *Id.*  "[A] formulaic recitation of the elements of a cause of action" is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

## IV.   ARGUMENT

As with previous versions of her complaint, Plaintiff brings her sole claim against the Azoff Entities under 18 U.S.C. § 1591, which imposes criminal penalties on those who directly traffick individuals, knowing or in reckless disregard of the fact that "force, threats of force, fraud, [or] coercion" will be used to cause the victim "to engage in a commercial sex act," as well as those who participate in and benefit from such trafficking schemes.  18 U.S.C. §§ 1591(a), (b).  Under 18 U.S.C. § 1595, victims of trafficking have a private right of action to sue both direct perpetrators of trafficking and anyone who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation

in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]."  18 U.S.C. § 1595(a); *see also Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 491, 214 L. Ed. 2d 280 (2022).  To state a viable claim under Section 1595, Plaintiff must thus allege facts plausibly showing that the Azoff Entities knowingly benefitted from participation in a venture with Dolan that they knew or should have known involved sex trafficking.  *See Acevedo v. eXp Realty, LLC*, 2024 WL 650189, at *16 (C.D. Cal. Jan. 29, 2024).

As the Court explained, Plaintiff's FAC "fail[ed] to allege an underlying commercial sex act," "fail[ed] to plausibly allege that [the Azoff Entities] knew or should have known that Dolan was engaged in any sex trafficking scheme," and failed to "sufficiently allege an agency or vicarious liability theory" through which the Azoff Entities would be liable for Dolan's alleged acts.  Dkt. 63 at 9–10. Plaintiff's scant additions to the SAC do not remedy these deficiencies: it still fails to allege facts plausibly establishing a commercial sex act, that the Azoff Entities knew or had reason to know of any alleged sex trafficking that they participated in and benefitted from, or that they are vicariously liable.

## A.   Plaintiff fails to allege any commercial sex act.

Plaintiff's FAC failed to plausibly allege a "commercial sex act," a prerequisite for direct and beneficiary liability under the TVPRA.  Dkt. 63 at 8–9.  A "commercial sex act" is "any sex act on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3); *Acevedo*, 2024 WL 650189, at *13.  As the Court noted, despite Plaintiff's allegations that her travel expenses were paid for and that she received "venue pay," nothing showed a "causal connection" to "the sexual conduct Plaintiff alleges she was forced to engage in with Dolan."  Dkt. 63 at 8.  Nor did Plaintiff allege any "direct statements or promises" of career advancement "to entice, lure or coerce her into a sexual relationship."  *Id.*

Plaintiff's SAC fares no better.  First, Plaintiff adds new allegations with immaterial details regarding the payments she purportedly received.  SAC ¶¶ 65–66.  She alleges that her "venue pay" was paid as "$700 per day at The Forum, in cash," from someone she claims with no basis whatsoever was "an accountant for the Azoff Entities by the name of John Dalton."  *Id.* ¶ 65.  Plaintiff also alleges that "Dolan's tour manager Annie Bloom" separately wired her $8,400 in payment for the Los Angeles tour leg.  *Id.* ¶ 66.  These allegations, even assuming they are true, do not establish any causal connection between the payments and Plaintiff's sexual conduct with Dolan.

Plaintiff repeats prior allegations that she received these payments "even though she performed almost no massages when at The Forum," concluding that the payments therefore must have been made so that she "would be available when [Dolan] wanted to see her and have sex with her."  *Id.* ¶¶ 65–66.  But there is no support for this conclusory assumption.  Plaintiff's own allegations acknowledge that she went to the venue on concert days, was given a room at the venue and made herself available for massages, and did in fact perform massages at the venue.  *Id.* ¶¶ 51, 60, 65–66.  No one could have known how many tour members would actually request massages, nor is there any reasonable basis to infer that the payments for Plaintiff's availability and massage services were in fact pretextual payments for sex with Dolan.

Plaintiff also adds allegations attempting to show promises of career advancement, alleging that Dolan "suggested that [Plaintiff] would have opportunities for more work through him" and that "he would make sure she would be invited to Europe" for the tour's European leg.  *Id.* ¶¶ 39, 45.  Again, there is little new in these allegations, as Plaintiff's existing allegations claimed that Dolan made "assertions that he would take care of her" by virtue of his "immense power over everyone's position on the tour—including hers."  *Id.* ¶ 43.  This still "fails to allege a commercial sex act premised on alleged promises of career advancement,"

because nothing suggests that Dolan's alleged statements—for which Plaintiff provides no supporting details—were made to "entice, lure or coerce" Plaintiff "into a sexual relationship.  Dkt. 63 at 8; *see also Doe v. Fitzgerald*, 2022 WL 2784805, at \*5 (C.D. Cal. May 13, 2022) (plaintiff "fail[ed] to allege that a commercial sex act occurred" where nothing showed alleged "'things of value'" were "offered in exchange for a sex act").

Plaintiff has thus offered no facts to support her conclusory allegation that her sexual encounters with Dolan were "commercial sex acts."  SAC ¶ 119.[4]  On this ground alone, her TVPRA claim against the Azoff Entities fails.

### B.   Plaintiff fails to allege facts showing that the Azoff Entities knew or should have known of any sex trafficking scheme.

Plaintiff's FAC also "fail[ed] to plausibly allege that [the Azoff Entities] knew or should have known that Dolan was engaged in any sex trafficking in violation of the TVPRA."  Dkt. 63 at 9.  In the SAC, Plaintiff's core factual allegations regarding the Azoff Entities are the same: (a) that the Azoff Entities arranged her travel to Los Angeles, which Dolan was paying for on the "JD credit card"; (b) that representatives of the Azoff Entities transported her between the hotel and the venue; (c) that she stayed in the same hotel as Dolan's band, rather than the same hotel as the Eagles, as she had done on prior tour legs; and (d) that, even though she was paid to be available for massages, few tour members ultimately signed up for one.  SAC ¶¶ 47–51, 58, 60–61.

---

[4] Plaintiff also alleges that "Dolan received sexual gratification from these sex acts," which she claims "is also a 'thing of value' within the meaning of 18 U.S.C. § 1591(e)(3)."  *Id.* ¶ 119.  But under the law, a "sex act" is something done "for sexual gratification."  *Acevedo*, 2024 WL 650189, at \*13 (quotations omitted) (collecting cases).  Under Plaintiff's definition, any sex act would be a "commercial" sex act, rendering the statute's use of the word "commercial" superfluous.  For that reason, courts have expressly held that "sexual gratification alone is insufficient to create a 'commercial' sex act."  *Fitzgerald*, 2022 WL 2784805, at \*3.

The limited additions to Plaintiff's SAC do not save her claim for beneficiary liability.  Plaintiff adds an allegation that, consistent with the lodging arrangements, on prior tour legs, she "traveled and ate her meals" with members of the Eagles, whereas in Los Angeles, she "barely saw" them.  *Id.* ¶ 59.  And, as noted above, Plaintiff introduces the allegation (which, if necessary, will be shown to be untrue) that the "venue pay" she received was paid as $700 cash for each day she went to the venue, paid by a purported accountant for the Azoff Entities, John Dalton.  *Id.* ¶ 65.  She also adds a duplicative allegation that Dolan "authorized" the Azoff Entities to transport her to California at Dolan's expense "on the 'JD credit card'" so that she would be available for sex with him.  *Id.* ¶ 66.  Thus, because "Dolan or his band was paying for [Plaintiff's] presence" in Los Angeles, in contrast to prior legs in which "the Azoff Entities paid for her travel and lodging," Plaintiff alleges the Azoff Entities "must have known" that Plaintiff's presence "was specifically requested by Dolan."  *Id.* ¶ 53.

Even with these additions, Plaintiff's SAC is wholly devoid of any facts plausibly suggesting the Azoff Entities knew or had reason to know Dolan was allegedly using fraud or coercion to obtain sex.  Plaintiff still has no allegations "that she ever disclosed Dolan's previous sexual assaults to the Azoff Defendants, or to anyone for that matter."  Dkt. 63 at 9; *cf. Acevedo*, 2024 WL 650189, at *20–21 (defendants knew or should have known of sex trafficking given that victims had reported their sexual assaults and posted about them on social media); *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 407–08 (S.D.N.Y. 2023) (bank had constructive knowledge where internal departments "alerted management about [Jeffrey] Epstein's sex trafficking" and senior executives personally "observed victims in Epstein's home").  Even accepting Plaintiff's allegation that the Azoff Entities "must have known" that Plaintiff's presence in Los Angeles was "specifically requested by Dolan," SAC ¶ 53, there is nothing to suggest that the

Azoff Entities had reason to suspect that Dolan's request was for the purpose of sexually exploiting Plaintiff.

Indeed, Plaintiff's allegations remain far more tenuous than those in cases dismissed for failure to state a TVPRA claim.  For example, in *Eckhart v. Fox News Network, LLC*, 2021 WL 4124616 (S.D.N.Y. Sept. 9, 2021), the plaintiff's allegations that Fox News was "well aware" that one of its anchors had had an affair, completed a sex addiction treatment program, "flirted with younger women in the office," and was a "serial harasser," may well have "put Fox News on notice that [the anchor] was engaged in sexual harassment," they were nonetheless "insufficient to establish that Fox News knew or should have known that [the anchor] was *specifically engaged in sex trafficking*."  *Id.* at *11 (quotations omitted) (emphasis added).  Similarly, in *Doe by Doe v. Piraino*, 688 F. Supp. 3d 635 (M.D. Tenn. 2023), allegations that a fencing coach "had allegedly groped an adult woman" on one occasion, engaged in "belligerent and unethical behavior at fencing tournaments," and had been arrested for public intoxication "may have put [USA Fencing] on notice that [the coach] was generally a bad guy and a poor ambassador for the sport, but not that he was engaged in acts that constituted [] sex trafficking." *Id.* at 651 (quotations omitted); *see also J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, *10 (N.D. Cal. Aug. 20, 2020) ("Significantly, while Plaintiff's allegations suggest that Economy Inn quite possibly should have been aware of some nefarious conduct, they do not suggest that Economy Inn should have known that the venture constituted sex trafficking.").  Here, Plaintiff offers no factual allegations to show that the Azoff Entities had knowledge of *any* sort of misconduct by Dolan—not even the harassing or abusive behaviors that were insufficient to state a claim in *Piraino* and *Eckhart*—let alone that Dolan allegedly intended to sexually exploit Plaintiff.

Like the FAC, the SAC fails to connect the Azoff Entities to the alleged sexual assault by Weinstein in Los Angeles that is the centerpiece of Plaintiff's

lawsuit.  Plaintiff again alleges that Dolan "fraudulently coordinate[d]" the meeting between her and Weinstein, SAC § I.V—a conclusory assertion with no supporting facts besides that the two were friends and that Dolan mentioned having a great massage therapist to Weinstein, *id.* ¶ 76—but even if accepted as true, Plaintiff has no facts that the Azoff Entities had actual or constructive knowledge of such a scheme by Dolan.  *See id.* ¶¶ 73–81.

For these reasons, Plaintiff still has not alleged—and cannot allege—facts that could plausibly show the Azoff Entities knew or should have known she was brought to Los Angeles to engage in a commercial sex act in violation of the TVPRA.  On that additional ground, Plaintiff's TVPRA claim against the Azoff Entities fails.

## C.   Plaintiff fails to allege facts showing that the Azoff Entities are vicariously liable for Dolan's conduct.

Plaintiff's last resort is to rely on an untenable assertion that the Azoff Entities are vicariously liable for Dolan's alleged conduct.

"Ninth Circuit courts apply common law agency principles from the Restatement" to TVPRA claims.  *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *8 (N.D. Cal. Oct. 28, 2020).  An agency relationship requires "a manifestation by the principal that the agent shall act for him," the "accept[ance] [of] the undertaking" by the agent, and "an understanding" that "the principal is to be in control of the undertaking."  *B.J. v. G6 Hosp., LLC*, 2023 WL 6120682, at *9 (N.D. Cal. Sept. 18, 2023) (citing Restatement (Third) of Agency § 1.01 (2006)) (quotations omitted).  And for a principal to be vicariously liable, the principal (here, the Azoff Entities) must have "sufficient authority to control the actions" of the agent (here, Dolan).  *Id.* (citing Restatement (Third) of Agency § 7.07 cmt. f (principal must "control[] or ha[ve] the right to control the manner and means through which the agent performs work.")).

Plaintiff's FAC "[did] not sufficiently allege an agency or vicarious liability theory" that would permit attribution of Dolan's conduct to the Azoff Entities.  Dkt. 63 at 9–10.  Plaintiff's SAC adds several paragraphs attempting to address this deficiency, SAC ¶¶ 39, 122–25, but none provides a cure.

For one, several of these "new" allegations simply rehash points from Plaintiff's prior allegations.  Plaintiff alleges that "Dolan founded and closely managed Defendant the Azoff Company LLC," which "engaged in a joint venture" with Defendant Azoff Company Holdings, LLC to reopen The Forum and "organize[] the Eagles 2014 Tour," giving Dolan "significant managerial discretion" over the joint venture, "including personnel matter."  *Id.* ¶¶ 122–23.  And she claims "Dolan assured her that he would make sure she would be invited to Europe" for the European tour leg, "demonstrating that he could control the Azoff Entities' decision-making about the tour."  *Id.* ¶ 39.  But there is nothing new about these allegations—Plaintiff previously asserted that Dolan jointly founded Azoff MSG Entertainment, LLC (which later became the Azoff Company LLC) in September 2013 to reopen The Forum and that Dolan "controlled the purse strings" and "had profound power over everyone involved in the venue and the tour."  *Id.* ¶¶ 54, 57.

The remainder of these "new" allegations are conclusions devoid of factual support.  Plaintiff alleges that "when Dolan arranged through the Azoff Entities to have [Plaintiff] transported to California," he intended to "use fraud, force, and coercion to induce her into commercial sex acts," thus "act[ing] in his capacity as an agent when he violated the Trafficking Victims Protection Act" and making the Azoff Entities "vicariously liable for his conduct."  *Id.* ¶¶ 124–25.  These conclusions are not entitled to a presumption of truth and are properly disregarded in analyzing the sufficiency of Plaintiff's claim.  *See Sprewell*, 266 F.3d at 988.

In any case, none of Plaintiff's allegations shows any agreement that Dolan would act for the Azoff Entities, nor that the Azoff Entities "had the right to control the manner and means" of Dolan's work so as to permit imposition of vicarious

liability.  Restatement (Third) of Agency § 7.07 cmt. f.  Indeed, if anything, Plaintiff's allegations about Dolan's purported influence over the Azoff Entities directly dispel that notion.  *See Sprewell*, 266 F.3d at 988 (plaintiff can "plead himself out of a claim" by alleging "details contrary to his claims"); *cf. J.C.*, 2020 WL 6318707, at *8–9 (plaintiff alleged that "principal exercise[d] sufficient control over an agent's work to establish vicarious liability").

Moreover, even if Dolan were an agent, the Azoff Entities would still not be vicariously liable for Dolan's alleged sexual misconduct.  A principal is only vicariously liable for an agent's tortious conduct within the scope of their employment, not conduct that solely furthers "the employee's own purposes."  Restatement (Third) of Agency § 7.07 cmt. b.  Under the "adverse interest exception," a "rogue agent's actions or knowledge are not imputed to the principal if the agent acts adversely to the principal" and acts "solely for the agent's own purposes."  *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) (quotations omitted).  Thus, the court in *Piraino* concluded that the fencing coach's alleged sex trafficking could not be attributed to his employer, USA Fencing, because that conduct was solely for his own purposes, outside the scope of his authority.  688 F. Supp. 3d at 652 (relying on adverse interest exception).  By the same token, the alleged misconduct by Dolan—undertaken solely for his own benefit and conferring no benefit on the Azoff Entities—is not attributable to the Azoff Entities, and the SAC contains nothing to change that conclusion.

**D.   Plaintiff's TVPRA claim should be dismissed with prejudice.**

Plaintiff has already had more than enough chances to plead the essential facts of a TVPRA claim against the Azoff Entities: *first*, after the Azoff Entities identified the factual and legal deficiencies in Plaintiff's draft complaint before the commencement of this action; *second*, in her FAC filed in response to the Azoff Entities' motion to dismiss the original Complaint; and *third*, in the SAC filed after

the Court dismissed the FAC with leave to amend.  This is Plaintiff's fourth bite at the apple, and her pleading fails again.  Further amendment would thus be futile.

A court's discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint."  *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (dismissal with prejudice warranted where "previous amendment failed to cure [the] deficiency" in allegations).  The Court already provided Plaintiff with "one last opportunity to state a viable claim."  Dkt. 63 at 10.  Plaintiff has failed to do so—demonstrating she *cannot* do so—and dismissal with prejudice is thus warranted.  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment") (quotations omitted).

## V.    CONCLUSION

For the foregoing reasons, the Court should grant the Azoff Entities' motion and dismiss Plaintiff's first cause of action against the Azoff Entities without leave to amend.

DATED: July 22, 2024                O'MELVENY & MYERS LLP


By:    */s/ Daniel M. Petrocelli*
       Daniel M. Petrocelli
       Attorneys for Defendants Azoff Entities

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for the Azoff Entities, certifies that this brief contains 4,952 words, which complies with the word limit of Local Rule 11-6.1.

DATED: July 22, 2024        By:    */s/ Daniel M. Petrocelli*
                                                Daniel M. Petrocelli