PERRY LAW
E. Danya Perry (admitted *pro hac vice*)
*dperry@danyaperrylaw.com*
Karen Agnifilo (admitted *pro hac vice*)
*kagnifilo@danyaperrylaw.com*
Joshua Stanton (admitted *pro hac vice*)
*jstanton@danyaperrylaw.com*
445 Park Ave, 7th Floor
New York, New York 10022
Telephone: (212) 213-3070
Facsimile: (646) 849-9609

[Additional attorneys are listed on next page]

*Attorneys for Defendants*
*James Dolan and JD & The Straight*
*Shot, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| KELLYE CROFT.<br><br>    Plaintiff,<br><br>vs.<br><br>JAMES DOLAN, HARVEY WEINSTEIN, JD & THE STRAIGHT SHOT, LLC, THE AZOFF COMPANY HOLDINGS LLC f/k/a AZOFF MUSIC MANAGEMENT, LLC, THE AZOFF COMPANY LLC f/k/a AZOFF MSG ENTERTAINMENT, LLC, and DOE CORPORATIONS 1-10,<br><br>    Defendants. | Case No. 2:24-cv-00371-PA (AGR)<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with [Proposed] Order*<br><br>Date:      August 19, 2024<br>Time:      1:30 p.m.<br>Judge:     Hon. Percy Anderson |

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
*rdugdale@kbkfirm.com*
Michael J. McCarthy (334829)
*mmccarthy@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: (310) 556-2700
Facsimile:  (310) 556-2705

ROSENBERG, GIGER & PERALA, P.C.
John J. Rosenberg (admitted *pro hac vice*)
jrosenberg@rglawpc.com
152 West 57th Street, 18th Floor
New York, New York 10019
Telephone:  (646) 494-5000
Facsimile:   (646) 595-0590

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 19, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9A of this Court, located at 350 West 1st Street, Los Angeles, California 90012, Defendants James Dolan and JD & the Straight Shot, LLC (collectively, the "Dolan Defendants") will and hereby do move this Court for an order dismissing with prejudice the claims against them, contained in the First, Second, and Fourth Causes of Action of Plaintiff Kellye Croft's Second Amended Complaint. (Doc. No. 65.)

The Dolan Defendants move on the grounds that, pursuant to Federal Rule of Civil Procedure 12(b)(6), as to the First, Second and Fourth Causes of Action, Croft fails to state any claim against them upon which relief can be granted. The Dolan Defendants further move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Fourth Cause of Action is barred by an injunction entered by the United States Bankruptcy Court for the District of Delaware. The Dolan Defendants' Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities in support of the Motion filed concurrently herewith, the record in this action, and any evidence and argument that may be presented at or before the hearing on this Motion.

This Motion is made following the conferences of counsel required pursuant to Local Rule 7-3, which took place on March 18, 2024 (before the initial Motion to Dismiss was filed), April 19, 2024 (before the Motion to Dismiss the First Amended Complaint was filed), and July 15, 2024 (in connection with the instant Motion to Dismiss the Second Amended Complaint).

604417982.1

1

NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT,
LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

DATED:  July 22, 2024          Respectfully submitted,

                              PERRY LAW


                              By:      /s/ E. Danya Perry
                                   E. Danya Perry
                                   Karen Agnifilo
                                   Joshua Stanton
                                   Attorneys for Defendants James Dolan and JD
                                   & The Straight Shot, LLC


                              By:      /s/ John J. Rosenberg
                                   John J. Rosenberg
                                   ROSENBERG, GIGER & PERALA, P.C.
                                   Attorneys for Defendants James Dolan and JD
                                   & The Straight Shot, LLC


                              By:      /s/ Robert E. Dugdale
                                   Robert E. Dugdale
                                   Michael J. McCarthy
                                   KENDALL BRILL & KELLY
                                   Attorneys for Defendants James Dolan and JD
                                   & The Straight Shot, LLC

NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT,
LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   PRELIMINARY STATEMENT ..................................................................... 1

II.  LEGAL STANDARD ................................................................................... 2

III. ARGUMENT ............................................................................................... 3

    A.   The SAC Fails to State a Claim Under 18 U.S.C. §§ 1591 and
        1595 ................................................................................................... 3

        1.   The SAC Fails to Make Out a Perpetrator Claim ........................ 4

                a.   The SAC Does Not Allege a Commercial Sex
                    Act ......................................................................................... 4

                b.   The SAC Does Not Allege the Dolan
                    Defendants Knowingly Engaged in Any
                    Conduct Prohibited Under the TVPA ..................... 8

        2.   The SAC Fails to State a Beneficiary Claim ............................. 10

                 a.   The SAC Fails to Allege that the Dolan
                    Defendants Received Any Cognizable Benefit ..... 10

                b.   The SAC Fails to Allege the Dolan
                    Defendants Participated in a Sex Trafficking
                    Venture ............................................................... 11

                c.   The SAC Fails to Allege that the Dolan
                    Defendants Knew or Should Have Known
                    that Any Venture Trafficked Plaintiff................... 11

    B.   The SAC Fails to State a Claim for Sexual Battery............................. 12

        1.   The SAC Fails to Plausibly Allege the Elements of a
            Sexual Battery Claim................................................................. 12

        2.   Plaintiff's Sexual Battery Claim is Time-Barred ...................... 13

    C.   The SAC Fails to State a Claim Against Mr. Dolan for Aiding
        and Abetting Weinstein....................................................................... 14

        1.   Plaintiff Does Not Adequately Allege the Requisite
            Elements of Aiding and Abetting Liability ............................... 15

                 a.   The SAC Does Not Allege Mr. Dolan Knew
                    Weinstein Was Going to Sexually Assault
                    Plaintiff............................................................... 15

                b.   The SAC Fails to Allege that Mr. Dolan Gave
                    Substantial Assistance or Encouragement to
                    Weinstein............................................................. 17

2.   Plaintiff's Aiding and Abetting Claim was Filed in Contravention of, and is Barred by, an Injunction Entered by the Bankruptcy Court for the District of Delaware .............. 18

IV.   CONCLUSION ............................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................2

*B.J. v. G6 Hosp., LLC*,
   2023 WL 3569979 (N.D. Cal. May 19, 2023) ..................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 2, 6

*Capitol W. Appraisals LLC v. Countrywide Fin. Corp.*,
   467 F. App'x 738 (9th Cir. 2012) ............................................................ 6

*Corradino v. Liquidnet Holdings Inc.*,
   2021 WL 2853362 (S.D.N.Y. July 8, 2021) ........................................... 5

*Doe v. Fitzgerald*,
   2022 WL 425016 (C.D. Cal. Jan. 6, 2022) ...................... 7, 8, 9, 10, 12

*Doe v. Wyndham Hotels & Resorts*,
   2024 WL 3088722 (E.D. Cal. June 20, 2024) ........................................ 6

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) .......................................................... 15, 17

*In re The Weinstein Company Holdings LLC.*,
   No. 18-10601-MFW, D.I. 3203 & 3203-1 (Bankr. D. Del. Jan. 26,
   2021) ....................................................................................... 18, 19, 20

*GateGuard, Inc. v. Amazon.com Inc.*,
   2023 WL 2051739 (S.D.N.Y. Feb. 16, 2023) ........................................ 7

*Geiss v. Weinstein Co. Holdings LLC*,
   2018 WL 6314159 (C.D. Cal. Nov. 5, 2018) ....................................... 10

*Gonzalez-Cervantes v. Holder*,
   709 F.3d 1265 (9th Cir. 2013) .............................................................. 14

NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT,
LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

*Grant v. Cnty. of Erie*,
  542 F. App'x 21 (2d Cir. 2013)..................................................................7

*GTE Sylvania, Inc. v. Consumers Union*,
  445 U.S. 375 (1980) ..............................................................................21

*Harrington v. Purdue Pharma L.P.*,
  144 S. Ct. 2071 (2024) ..........................................................................21

*Hillard v. TABC, Inc.*,
  2017 WL 6940540 (C.D. Cal. Dec. 18, 2017)......................................13

*Huett v. Weinstein Co. LLC*,
  2018 WL 6314159 (C.D. Cal. Nov. 5, 2018) ..........................................9

*Ma v. Ashcroft*,
  361 F.3d 553 (9th Cir. 2004)....................................................................7

*Molenda v. Universal City Studios LLC*,
  2020 WL 6653505 (C.D. Cal. June 8, 2020)..........................................16

*Neilson v. Union Bank of Cal.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003)..................................................15

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018) ...............................................9, 11

*Russo v. APL Marine Servs., Ltd.*,
  2014 WL 3506009 (C.D. Cal. July 14, 2014) ........................................12

*Smith v. Charter Commc'ns, Inc. (St. Louis)*,
  467 F. App'x 742 (9th Cir. 2012)............................................................18

*Su v. Henry Glob. Consulting Grp.*,
  2022 WL 19392 (C.D. Cal. Jan. 3, 2022)...............................................15

*Treminio v. Crowley Mar. Corp.*,
  649 F. Supp. 3d 1223 (M.D. Fla. 2023) .................................................13

*United States v. Todd*,
  627 F.3d 329 (9th Cir. 2010)...........................................................3, 8, 9

604417982.1

iv

NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT,
LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

*United States v. United Mine Workers of Am.*,
   330 U.S. 258 (1947) ...................................................................................... 20

*Zapon v. United States Dep't of Justice*,
   53 F.3d 283 (9th Cir. 1995) ........................................................................... 20

**California Cases**

*Angie M. v. Superior Ct.*,
   37 Cal. App. 4th 1217 (1995) ................................................................... 12, 13

*Austin B. v. Escondido Union Sch. Dist.*,
   149 Cal. App. 4th 860 (2007) ....................................................................... 17

*Casey v. U.S. Bank Nat. Ass'n*,
   127 Cal. App. 4th 1138 (2005) ................................................................ 15, 17

*Howard v. Superior Ct.*,
   2 Cal. App. 4th 745 (1992), *modified* (Feb. 10, 1992) ................................. 18

*People v. Chavez*,
   84 Cal. App. 4th 25 (2000) ........................................................................... 14

**Federal Statutes**

18 U.S.C.
   § 1591 ........................................................................................................... 3, 4
   § 1595 ........................................................................................................... 3, 4

Fed. R. Civ. P. 12(b)(6) ................................................................................... 2, 3

**California Statutes**

Cal. Civ. Code
   § 1708.5 ........................................................................................................... 12

Cal. Civ. Proc. Code
   § 335.1 ............................................................................................................. 13
   § 340.16 ........................................................................................................... 13

Cal. Penal Code
   § 243.4 ....................................................................................................... 13, 14

**Other State Statutes**

Fla. Stat. Ann.
   § 95.11 ........................................................................................... 13

**Other Authorities**

H.R. REP. 106-487, 1 .................................................................... 3, 8

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.     PRELIMINARY STATEMENT

The Dolan Defendants submit their third motion to dismiss in this action, requesting that Plaintiff's Second Amended Complaint be dismissed with prejudice. At this stage—more than six months after she filed her initial Complaint (Docket No. 1) and twice amended her pleadings—it is clear Plaintiff cannot state a claim.  She has failed in her attempts to convert an alleged tort that she claims occurred in Florida many years ago (well beyond the applicable statute of limitations) into a federal sex trafficking claim in California.  Plaintiff should not be given yet another opportunity to cure her manifest pleading deficiencies.

In the Court's June 21, 2024 Order granting the Dolan Defendants' previous Motion to Dismiss with leave to amend (Docket No. 63) (the "Order"), the Court held that Plaintiff's First Cause of Action was deficient, as it failed to allege a commercial sex act.  Specifically, the Court found that Plaintiff did not sufficiently allege the requisite causal connection between any payment to Plaintiff and any alleged sex act. (Order at 8.)   Accordingly, the Court dismissed the First Cause of Action (and deferred ruling on Plaintiff's state-law causes of action)—giving Plaintiff "one last opportunity" to state a claim.  (Order at 10.)

In her Second Amended Complaint (Docket No. 65) ("SAC"), Plaintiff again fails to state a claim.  Despite having been given a roadmap of the type of factual allegations necessary to state a federal sex trafficking claim, Plaintiff has failed to allege such facts.   The additions in the SAC still do not articulate any causal connection between the payment of a thing of value in exchange for sex, as the Order stated was necessary to allege a "commercial sex act." (*See* Order at 8.)  That pleading deficiency is fatal to Plaintiff's First Cause of Action and requires that the claim once again be dismissed.

Moreover, even if Plaintiff had managed to address this defect, other myriad deficiencies in the SAC provide independent reasons for this Court to dismiss this case.  Despite the ignominy associated with the name Harvey Weinstein, an alleged association between the Dolan Defendants and Weinstein does not a legal theory make.  As the Dolan Defendants have repeatedly noted, Plaintiff's claims cannot be sustained on a theory of liability-by-association.  That theory—as superfluously reflected by the inclusion of multiple photographs of Mr. Dolan standing near Weinstein at public events—remains the thrust of Plaintiff's case.  For all the reasons previously advanced, and the reasons stated at length below, the case must once again be dismissed, this time with prejudice.

## II.   <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

"[A] plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (quotation omitted).  Consequently, while factual allegations are entitled to a presumption of truth, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

III.   **ARGUMENT**

   A.    **The SAC Fails to State a Claim Under 18 U.S.C. §§ 1591 and 1595**

   Plaintiff's claim that the Dolan Defendants violated 18 U.S.C. §§ 1591 and 1595 (the "TVPA" or the "Act") should again be dismissed under Rule 12(b)(6).  Not only is Plaintiff's claim under the TVPA legally deficient, but her cynical attempt to exploit the TVPA for a financial windfall makes a mockery of the Act.  The legislative history makes clear that the purpose of the TVPA is "to combat trafficking in persons, a contemporary manifestation of slavery."  H.R. REP. 106-487, 1.  Even a cursory review of the horrific criminal and civil cases brought under the Act makes the point.  *E.g.*, *United States v. Todd*, 627 F.3d 329, 330–31 (9th Cir. 2010) ("The statute focuses on those … who make money out of selling the sexual services of human beings … they control and treat as their profit-producing property.").   Nothing resembling such conduct is alleged in the SAC, which, at bottom, alleges that a licensed massage therapist voluntarily traveled to California to provide legitimate massage therapy services—and did, in fact, provide such services—during one of several legs of a world-famous rock band's tour.  (*See generally* SAC ¶¶ 47–50, 60.)  For the reasons stated below, Plaintiff does not begin to state a claim she experienced "a contemporary manifestation of slavery."

   Section 1595 provides a civil remedy to victims of sex trafficking as defined by Section 1591, which is available against both perpetrators and beneficiaries.  18 U.S.C. § 1595(a).  A perpetrator violates the TVPA when he: "knowingly … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," 18 U.S.C. § 1591(a)(1), and knows "that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act."  18 U.S.C. § 1591(a)(2).  A beneficiary is civilly liable under the statute to the extent such a person "knowingly

3

benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" sex trafficking as defined by Section 1591. 18 U.S.C. § 1595(a).

The SAC fails to allege any of the necessary elements of either theory of liability. Instead, Plaintiff's factual allegations of Mr. Dolan's conduct in California describe a purportedly unwanted—but not coerced or fraudulently induced—sexual relationship with disparities based on age and finances. The TVPA neither criminalizes such a relationship, nor creates a civil remedy for a participant in such a relationship.

### 1.     The SAC Fails to Make Out a Perpetrator Claim

The SAC fails to allege two necessary elements of a perpetrator claim against the Dolan Defendants under the TVPA, and each failure is fatal to Plaintiff's claim. *First*, the SAC fails to allege a "commercial sex act" because there are no factual allegations that anything of value was exchanged for sexual conduct. *Second*, the SAC fails to allege an enumerated act by the Dolan Defendants that is prohibited under the TVPA, committed with the knowledge that force, fraud, or coercion would be used to perpetrate a commercial sex act.

### a.     The SAC Does Not Allege a Commercial Sex Act

In its Order, the Court held that Plaintiff's First Amended Complaint ("FAC") failed to allege a "commercial sex act" as required by the TVPA. (Order at 8.) That term is defined by 18 U.S.C. § 1591(e)(3) as "any sex act, on account of which anything of value is given to or received by any person." As this Court explained, there must be a sufficient "causal connection between the payment of" a "thing of value" and "the sexual conduct Plaintiff alleges" constituted a "commercial sex act." (Order at 8.) "[D]irect statements or promises" made with the purpose of "entic[ing], lur[ing] or coerc[ing] [a plaintiff] into a sexual relationship" suffice. (Order at 8.)

604417982.1

4

NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Despite being given clear direction by this Court as to what was required, Plaintiff again fails to sufficiently allege a commercial sex act.

A comparison of the SAC to the FAC reveals the following five additional factual allegations concerning purported "things of value" promised or provided to Plaintiff: (1) that "Dolan once suggested that Ms. Croft should 'travel the world' and join the Eagles when the band traveled to Europe for a continuation of the tour" and "assured her that he would make sure she would be invited to Europe" (SAC ¶ 39); (2) that Mr. Dolan "also suggested that Ms. Croft would have opportunities for more work through him, noting that as the owner of Madison Square Garden, many musical tours went through that venue and required massage services" (SAC ¶ 45); (3) that payments the "Azoff Entities made to Ms. Croft during the Los Angeles leg of the Eagles tour were made, at least in part, for Ms. Croft to be available when Dolan wanted to see her and have sex with her" (SAC ¶ 65); (4) that "Dolan authorized the Azoff Entities to fly Ms. Croft from Tennessee to Los Angeles and have Ms. Croft lodged at the Peninsula, paid for on the 'JD credit card,' so that Ms. Croft would be available when he wanted to see her and have sex with her" (SAC ¶ 66); and (5) that "Dolan's tour manager … wired Ms. Croft $8,400 even though she performed almost no work for JD & The Straight Shot" (SAC ¶ 66).

Other than unsupported conclusory assertions, the SAC does not contain any factual allegations that causally tie these alleged "things of value" to any alleged sex act. As for the first two new allegations referenced above, Plaintiff does not even indicate, let alone allege, that these "suggest[ions]"—or even the "assurance" that she would be invited to Europe—were made to entice her into sex. (*See* SAC ¶¶ 39, 45.) The context, timing, and purpose of these statements in the SAC is simply left unstated, and no reasonable conclusion can be drawn as to the intention behind them. That is utterly insufficient to convert alleged sexual conduct into "commercial sex

NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

acts" under the TVPA.[1]  *See Corradino v. Liquidnet Holdings Inc.*, 2021 WL 2853362, at *3 (S.D.N.Y. July 8, 2021) (finding allegations did not establish a commercial sex act because the complaint did not "provide[] any indication that [the defendant] promised Plaintiff career advancement *in exchange for* a relationship and/or sex" (emphasis added)).

Plaintiff does not save her claim with her later addition of contradictory and conclusory allegations in the Cause of Action section of the SAC.  In the "Facts" section, Plaintiff makes no allegations connecting Dolan's "suggest[ions]" and "assurance" to any sexual conduct or describing any exchange of value for sex. (SAC ¶¶ 39, 45.)  But, in the pleading language of her First Cause of Action, Plaintiff pleads, in conclusory fashion, that Mr. Dolan's alleged statements were actually "promises" given "[i]n exchange for [] sex acts with Dolan." (SAC ¶ 119.)  As the Supreme Court noted in *Twombly*, such "a formulaic recitation of the elements of a cause of action will not do" to state a claim.  *Twombly*, 550 U.S. at 555 (quotation omitted).  Such "conclusory statements are not entitled to the presumption of truth." *Capitol W. Appraisals LLC v. Countrywide Fin. Corp.*, 467 F. App'x 738, 740 (9th Cir. 2012). And even if such statements were a proper factual allegation, "the court need not accept inconsistent allegations in a complaint as true." *Doe v. Wyndham Hotels & Resorts*, 2024 WL 3088722, at *11 (E.D. Cal. June 20, 2024) (citing cases).

It is inconsistent to characterize certain statements as offhand "suggest[ions]" untethered to any sexual acts, yet later to characterize the same statements as

---

[1]  This failure to allege such a causal connection between the alleged things of value and a sexual relationship is no mere oversight—the specificity and indeed luridness of Plaintiff's allegations concerning Weinstein (*see* SAC ¶¶ 87–101) make it clear that Plaintiff, through experienced counsel, is willing to provide detailed factual allegations of wrongful sexual conduct.  That she has not done so against Mr. Dolan—having just had the FAC dismissed for failing to allege factual elements to establish a commercial sex act—is revelatory as to the infirmity of her claim.

"promises" made in exchange for sex.  Plaintiff's last-ditch attempt to plead a commercial sex act in the Cause of Action section of the SAC, after failing to do so in the SAC's more specific background factual allegations, is not entitled to any presumption of truth in light of the poorly pleaded and indeed contradictory nature of these allegations.  *See, e.g.*, *Grant v. Cnty. of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) (recognizing "an exception to the rule that a court must accept all factual assertions [in the complaint] as true when attenuated allegations supporting the claim are contradicted by more specific allegations in the Complaint"); *GateGuard, Inc. v. Amazon.com Inc.*, 2023 WL 2051739, at *16 n.17 (S.D.N.Y. Feb. 16, 2023) (conclusory allegations that "appear in the [complaint's] 'causes of action' section … cannot cure the [complaint's] failure to plead particularized facts").

The three other newly-minted allegations similarly do not allege that anything of value was given in exchange for sex or to cause sex to occur.  At best, the SAC generally alleges that things of value—which previously had been given to Plaintiff in exchange for legitimate massage services—were actually given in this instance "at least in part" with the hope that she would "be available when Dolan wanted to see her and have sex with her."  (SAC ¶ 65.)  But giving things of value "in part" so that someone would be *available for* sex—rather than *in exchange for* sex—is not covered by the statute.[2]  To apply the TVPA based on these allegations would expand the scope of the statute to "yield absurd results."  *Doe v. Fitzgerald*, 2022 WL 425016, at *7 (C.D. Cal. Jan. 6, 2022) (citing *Ma v. Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004)).  Essentially, all sexual relations in which there is a financial disparity between the participants would be transformed into "commercial sex acts"—potentially subjecting

---

[2]  And, as with the "suggestions" described above, Plaintiff's conclusory characterization that other things of value were provided in "exchange for … sexual contact" (SAC ¶ 119) is plainly inadequate to allege a commercial sex act.

a participant to prosecution for a serious felony offense.  There is no indication Congress intended such a broad construction of the TVPA—a statute targeting a "contemporary manifestation of slavery," H.R. REP. 106-487, 1, and such an unwarranted expansion of the TVPA should not be endorsed by this Court.

**b.** **The SAC Does Not Allege the Dolan Defendants Knowingly Engaged in Any Conduct Prohibited Under the TVPA**

In addition to Plaintiff's continued failure to allege a "commercial sex act," the additional glaring deficiencies with Plaintiff's TVPA claim remain.  As the Dolan Defendants have repeatedly noted, allegations of sexual misconduct do not on their own make out the elements of a TVPA claim.  *See Fitzgerald*, 2022 WL 425016, at *8 (noting that although "date rape is reprehensible, … not all date rapes are meant to be punishable by a sex trafficking statute").  To state a TVPA claim against a perpetrator, a plaintiff must allege that the perpetrator had culpable knowledge—*i.e.*, "that if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction." *Todd*, 627 F.3d at 334.  The statute requires that the "defendant know in the sense of being aware of an established modus operandi that will in the future cause a person" to engage in a commercial sex act caused by fraud, force, or coercion. *Id.* The SAC does not allege facts showing that the Dolan Defendants possessed anything resembling such knowledge.  Instead, the only ostensibly knowledge-related allegations in the SAC are conclusory and lack *any* factual content.  (*E.g.*, SAC ¶ 62 (alleging that "Ms. Croft was flown out to Los Angeles for the purposes of engaging in unwanted sexual acts with Dolan").)

Exacerbating these pleading deficiencies, it is impossible to discern what possible force, fraud, or coercion Plaintiff could be alleging with respect to any contemplated sexual interaction with Mr. Dolan in California.  Plaintiff does not allege the Dolan Defendants had any awareness that any such prohibited means would

be utilized (or were in fact utilized).  Compare, for example, the complaint in *Huett v. Weinstein Co. LLC*, which alleged that the defendant knew that he was likely to act in accordance with his own pattern of misconduct in which he had engaged over the course of decades.  2018 WL 6314159, at *2–3 (C.D. Cal. Nov. 5, 2018); *see also Todd*, 627 F.3d at 334 (conviction sustained where defendant's "knowledge of his own modus operandi in securing an income from prostitution by a pattern of coercion was sufficient to support the jury's verdict").

The SAC does not allege any similar pattern of conduct as to Mr. Dolan.  Nor does the SAC make any plausible allegation that the Dolan Defendants knew that some prohibited means would be used to compel Plaintiff to engage in a commercial sex act.  *Fitzgerald*, 2022 WL 425016, at *8 (partially granting motion to dismiss because the plaintiff had not alleged the defendant "invited her … with knowledge that he or someone else would" commit any act prohibited by the TVPA).  Indeed, Plaintiff's allegations that Mr. Dolan acted "romantically" and "led her to believe, at the time, that [he] actually cared about her" (SAC ¶ 68) suggest that he did not, and never intended to, use force, fraud, or coercion to engage in any sexual contact with her.

Moreover, the SAC's new allegations actually undercut any suggestion of force, fraud, or coercion.  The SAC now alleges that Mr. Dolan suggested to Plaintiff "that she would be invited to the European leg of the Eagles tour" and that she "did, in fact, join the European leg of the of the Eagles tour in May 2014." (SAC ¶ 119.)  Far from alleging fraud or coercion, the allegation suggests Mr. Dolan advanced Ms. Croft's career as she alleges he promised to do (albeit not in exchange for any sexual act).  *Cf. Noble v. Weinstein*, 335 F. Supp. 3d 504, 517 (S.D.N.Y. 2018) (finding fraud sufficient for TVPA claim where defendant made promises of career advancement to entice plaintiff into sex yet never performed on the promises).  The

9

absence of allegations supporting this essential element independently requires dismissal of Plaintiff's TVPA claim.

## 2.    The SAC Fails to State a Beneficiary Claim

Plaintiff also fails to allege any, let alone all, of the necessary elements of a beneficiary claim under the TVPA, *i.e.*, "a plaintiff must allege facts plausibly establishing that the defendant(s) (1) knowingly benefitted (2) from participation in a venture (3) that they knew or should have known has engaged in trafficking the plaintiff." *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *3 (N.D. Cal. May 19, 2023).

### a.    The SAC Fails to Allege that the Dolan Defendants Received Any Cognizable Benefit

In the SAC's Cause of Action section only, Plaintiff alleges that the Dolan Defendants "benefitted" from an alleged sex-trafficking venture (SAC ¶¶ 118–120), but she once again she never alleges any *facts* that suggest, except in the most generalized and legally insufficient terms, the nature of that "benefit."  At most, Plaintiff avers that Mr. Dolan received sexual gratification because of his alleged relationship with Plaintiff.  (SAC ¶ 11 (alleging that Mr. Dolan "trafficked her for his own sexual gratification").)  As a matter of law, that is not a "benefit" under the TVPA.  *Fitzgerald*, 2022 WL 425016, at *9 (granting motion to dismiss beneficiary claim where the only benefit alleged was sexual gratification).

As to Defendant JD & the Straight Shot, LLC, Plaintiff only implausibly avers that the company "financially and otherwise benefited … by keeping Dolan satisfied." (SAC ¶ 120.)  The decision in *Geiss v. Weinstein Co. Holdings LLC* is instructive. 383 F. Supp. 3d 156 (S.D.N.Y. 2019).  In that case, Weinstein's company was alleged to have financially benefited from Weinstein's employment, *see id.* at 169, but the court held that allegation insufficient despite the company's alleged participation in a sex trafficking venture with Weinstein, *id.* at 169–70.  Critically, the court found that the plaintiffs had not sufficiently alleged any benefit that The Weinstein Company

10

1   received "*because of*" Weinstein's misconduct, as required under the TVPA.  *Id.* at

2   169.  The SAC similarly fails to allege any benefit JD & the Straight Shot, LLC

3   received "because of" any purported misconduct by Mr. Dolan.

        **b.**      **The SAC Fails to Allege the Dolan Defendants**

                    **Participated in a Sex Trafficking Venture**

6         Plaintiff's allegations concerning participation in a venture are also legally

7   insufficient.  Plaintiff has failed to plausibly allege knowing or reckless "participation

8   [by the Dolan Defendants] in the sex trafficking act itself," as required by the statute.

9   *Noble*, 335 F. Supp. 3d at 524.  To the extent that Plaintiff takes the position that the

10  Dolan Defendants were in a venture with themselves because, as she alleges, "JD &

11  The Straight Shot, LLC is substantially or entirely owned, directly or indirectly, by

12  Dolan" (SAC ¶ 15), that would be unavailing because a "venture" under the statute

13  plainly contemplates more than one participant.  The SAC also entirely fails to

14  adequately allege a venture with the Azoff Entities.  (*See* Azoff Entities' Motion to

15  Dismiss FAC, Doc No. 51 at 9-11.)

        **c.**      **The SAC Fails to Allege that the Dolan Defendants**

                    **Knew or Should Have Known that Any Venture**

                    **Trafficked Plaintiff**

19        This element fails for the same reason Plaintiff's perpetrator theory of liability

20  fails—namely because, as discussed in Section III.A.1 above, Plaintiff does not

21  plausibly allege sex trafficking.  A person cannot have knowledge of "sex trafficking"

22  that did not occur.  And even if Plaintiff did plausibly allege sex trafficking generally,

23  she would still be required to allege that the Dolan Defendants knew (or recklessly

24  disregarded) that "means of force, fraud or coercion would be used to cause [her] to

25  engage in a commercial sex act."  *Noble*, 335 F. Supp. 3d at 524.  Yet Plaintiff does

26  not allege that the Dolan Defendants knew that force, fraud, or coercion would be

27  used at all, nor that any commercial sex act was intended.

28

604417982.1

11

NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT,
LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

**B.      The SAC Fails to State a Claim for Sexual Battery**

Plaintiff's Second Cause of Action should also be dismissed because (1) it fails to state a claim for sexual battery under California law and (2) it is time-barred by California's two-year statute of limitations.

**1.      The SAC Fails to Plausibly Allege the Elements of a Sexual Battery Claim**

The SAC's Second Cause of Action must be dismissed because it fails to allege Mr. Dolan acted with "the intent to cause a harmful or offensive contact" as required under California law.  Cal. Civ. Code § 1708.5(a)(1); *Angie M. v. Superior Ct.,* 37 Cal. App. 4th 1217, 1225 (1995).  Indeed, the SAC makes no allegations regarding Mr. Dolan's intent with respect to any alleged conduct in California, other than the conclusory parroting—once again, only in the Cause of Action section, not the factual section—that "[a]t all relevant times, Dolan acted … with the knowledge of or with reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear, physical injury, and/or pain and suffering to Plaintiff" (SAC ¶ 131).

Plaintiff's conclusory averments that her consent was "neither free nor voluntary" and that "Defendant engaged in sex acts with [Plaintiff] against her will" are insufficient to plead the requisite intent to state a sexual battery claim.  *Fitzgerald*, 2022 WL 425016, at *10 (dismissing sexual battery claim that "fail[ed] to allege any other facts" beyond the conclusory allegation that Defendant engaged in non-consensual sex acts with Plaintiff "that raise[d] a plausible inference as to Defendant's intent").  Rather, Plaintiff must allege facts that would raise a plausible inference that Mr. Dolan (a) knew that Plaintiff's apparent consent was—despite its appearance—actually not real, meaningful consent, and (b) that he nonetheless touched her with the intent of causing harmful or offensive contact.  *See Russo v. APL Marine Servs., Ltd.*, 2014 WL 3506009, at *5–6 (C.D. Cal. July 14, 2014) (dismissing battery where

1  complaint failed to allege sexual touching continued after plaintiff indicated lack of

2  consent).  Plaintiff's failure to allege such facts requires dismissal of her sexual

3  battery claim.[3]

4                    **2.    Plaintiff's Sexual Battery Claim is Time-Barred**

5          Plaintiff's sexual battery claim arises from events that allegedly occurred in

6  January 2014 and therefore is time-barred by California's two-year statute of

7  limitations governing battery claims.[4]  Cal. Civ. Proc. Code § 335.1.  Although

8  Plaintiff cites California's sexual assault revival statute (SAC ¶ 132), that law changed

9  the statute of limitations for only certain types of "sexual assaults" which are defined

10 in eight enumerated sections of the California Penal Code—none of which have been

11 adequately alleged here.  *See* Cal. Civ. Proc. Code § 340.16(b)(1) (the "Revival

12 Statute").

13         The only section of the California Penal Code that even conceivably relates to

14 Plaintiff's claim is § 243.4(e)(1) (misdemeanor sexual battery).  But, while Plaintiff

15 does cite § 243.4 (SAC ¶ 129), she fails to allege the necessary elements to plead this

16 misdemeanor, *i.e.*, "(1) the touching of an intimate part of another person, directly or

17 through the clothing of the perpetrator or the victim; (2) against the person's will; and

18

19 _____

20     [3]  It must be noted that Plaintiff's allegations concerning another element of sexual

21 battery—namely, actual physical contact, *Angie M.,* 37 Cal. App. 4th at 1225—have

   been stated so ambiguously as to be utterly implausible.  (*See* SAC ¶ 67.)  This

22 ambiguity in her pleading is particularly striking given the salacious details she

   provides elsewhere (*e.g.*, ¶¶ 95–98 (alleging Weinstein's assault)).

23

24     [4]  To the extent that Plaintiff alleges that some of the events described in the

   SAC occurred in Florida in late 2013 (*e.g.*, SAC ¶¶ 36, 40–45), Florida's statutes of

25 limitations would apply, *see Hillard v. TABC, Inc.*, 2017 WL 6940540, at *3 (C.D.

   Cal. Dec. 18, 2017), and those claims would be time-barred.  Fla. Stat. Ann.

26 § 95.11(3)(n); *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1234 (M.D.

27 Fla. 2023).

28

(3) with specific intent to cause sexual arousal, sexual gratification, or sexual abuse."[5] *Gonzalez-Cervantes v. Holder*, 709 F.3d 1265, 1267 (9th Cir. 2013).  Here, Plaintiff fails to adequately allege that Mr. Dolan had any intent to make non-consensual contact (and is ambiguous as to whether such contact was made).  Additionally, Plaintiff fails to allege that Mr. Dolan acted with the specific intent to cause "sexual arousal, [sexual] gratification, or [sexual] abuse" required to commit a misdemeanor sexual battery.  *People v. Chavez*, 84 Cal. App. 4th 25, 29 (2000).  Since the SAC is devoid of any non-conclusory allegations that Mr. Dolan acted with the requisite intent to commit a criminal sexual assault while in California, it fails to allege an offense triggering the Revival Statute.[6]

**C.**  **The SAC Fails to State a Claim Against Mr. Dolan for Aiding and Abetting Weinstein**

The Court should also dismiss Plaintiff's claim that Mr. Dolan aided and abetted Weinstein's alleged assault (the Fourth Cause of Action).  Here, Plaintiff has not amended, supplemented or otherwise attempted to salvage the allegations concerning this claim, which remains legally deficient for two reasons:  (1) the SAC's allegations of "knowledge" and "substantial assistance" are inadequate to plead aiding and abetting liability against Mr. Dolan for Weinstein's alleged acts, and (2) in any

---

[5]  Stating a claim that amounts to a *felony* sexual battery requires pleading additional elements wholly absent from the SAC.  *See generally* Cal. Penal Code § 243.4(a)–(d).

[6] The SAC alleges at most a misdemeanor offense, and the legislative history of the Revival Statute and its amendment makes clear that "claims for sexual assaults that would be misdemeanors … are not revived by the bill's proposed amendments to the Revival Statute."  Alison Merrilees, Sexual Assault: Statute of Limitations, at 12 (Apr. 27, 2022), *available at* https://leginfo.legislature.ca.gov/face s/billAnalysisClient.xhtml?bill_id=202120220AB2777 (Report to Cal. Assemb. Comm. on Jud. re AB-2777).

604417982.1

14

NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

event, Plaintiff's claims remain barred by the Channeling Injunction entered by the Bankruptcy Court in *In re The Weinstein Company Holdings LLC*, No. 18-10601-MFW.

### 1.    Plaintiff Does Not Adequately Allege the Requisite Elements of Aiding and Abetting Liability

Under California law, liability for aiding and abetting "depends on proof the defendant had *actual knowledge* of the specific primary wrong and that the defendant *substantially assisted*" in carrying out that wrong with such knowledge.  *Su v. Henry Glob. Consulting Grp.*, 2022 WL 19392, at *2 (C.D. Cal. Jan. 3, 2022) (cleaned up) (emphasis added) (quoting *Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005)).  Here, Plaintiff's Fourth Cause of Action fails on both fronts.  *First*, the SAC sets forth no allegations supporting a plausible inference that Mr. Dolan had any knowledge that Weinstein intended to assault Plaintiff.   *Second*, Plaintiff fails to allege that Mr. Dolan substantially assisted in any manner in the commission of Weinstein's purported assault.

### a.    The SAC Does Not Allege Mr. Dolan Knew Weinstein Was Going to Sexually Assault Plaintiff

Under California law, aiding and abetting liability requires that a defendant have actual knowledge of the specific tort planned and committed by the principal tortfeasor.  *See Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118-19 (C.D. Cal. 2003); *Casey*, 127 Cal. App. 4th at 1146 ("a defendant can only aid and abet another's tort if the defendant knows what 'that tort' is").  This requires more than a "vague suspicion of wrongdoing," *In re First All. Mortg. Co.*, 471 F.3d 977, 993 n.4 (9th Cir. 2006); rather, to state a cognizable claim, Plaintiff must allege that Mr. Dolan made a "*conscious decision to participate*" in Weinstein's alleged "wrongful act." *Casey*, 127 Cal. App. 4th at 1146 (emphasis in original).

1   The SAC lacks any such allegations.  Plaintiff does not aver that Mr. Dolan

2   knew Weinstein was going to assault her, beyond the conclusory statement—again,

3   only in the Cause of Action and not in the Facts section of the SAC—that Mr. Dolan

4   "acted with the knowledge of or with reckless disregard for the fact that his conduct

5   was certain to cause injury and/or humiliation to Plaintiff, and intended to cause fear,

6   physical injury, and/or pain and suffering to Plaintiff."  (SAC ¶ 141.)  Yet even this

7   falls short because (1) it does not plead *actual knowledge*—recklessness is not actual

8   knowledge; and (2) it does not attempt to tie that supposed knowledge to Weinstein's

9   specific wrongful act—*i.e.*, the alleged sexual assault.

10   Nor do Plaintiff's sparse non-conclusory factual allegations give rise to any

11   plausible inference that Mr. Dolan knew of and made a "conscious decision" to

12   participate in Weinstein's alleged sexual assault.  The only allegation concerning *any*

13   communications between Mr. Dolan and Weinstein regarding Plaintiff is that "Dolan

14   had mentioned his massage therapist and had said great things about her."  (SAC ¶

15   76.)  Plaintiff does not allege that Mr. Dolan even knew Weinstein was at The

16   Peninsula Hotel prior to Plaintiff's purported report to Mr. Dolan that Weinstein had

17   assaulted her.  These glaring deficiencies in Plaintiff's claim are underscored by the

18   allegation that Mr. Dolan called Plaintiff's hotel room right "in the midst of the

19   assault" and thereby thwarted the very attack that Plaintiff claims he supposedly had

20   facilitated.  (SAC ¶¶ 99–101.)

21   At most, Plaintiff alleges that Mr. Dolan became aware of Weinstein's alleged

22   assault *after the fact*.  (SAC ¶¶ 102–103.)  Such an *ex post* report does not support the

23   inference that Mr. Dolan knew anything about Weinstein's alleged intentions before

24   the fact, "let alone that [he] knew the 'specific primary wrong' [he was] assisting."

25   *Molenda v. Universal City Studios LLC*, 2020 WL 6653505, at *3 (C.D. Cal. June 8,

26   2020).

27

28

NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT,
LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

The SAC suggests Mr. Dolan was aware that Weinstein had a proclivity for sexual aggression and was a "troubled person."  (SAC ¶ 104.)  Even if accepted as true, this general awareness amounts at most to a "vague suspicion of wrongdoing[,]" which is insufficient to sustain a claim of aiding and abetting a sexual assault.  *In re First All. Mortg. Co.*, 471 F.3d at 993 n.4.  Again, such an allegation falls far short of the requisite knowledge that Weinstein was going to commit a "specific primary wrong"—namely, a criminal sexual assault targeting Plaintiff.  *Casey*, 127 Cal. App. 4th at 1145–46.  In short, because Plaintiff does not allege a single fact to suggest that Mr. Dolan knew Weinstein was going to assault Plaintiff, her aiding and abetting claim against Mr. Dolan fails as a matter of law.

### b.   The SAC Fails to Allege that Mr. Dolan Gave Substantial Assistance or Encouragement to Weinstein

Plaintiff also fails to allege any facts asserting that Mr. Dolan substantially assisted or encouraged Weinstein's alleged actions.  *See Casey*, 127 Cal. App. 4th at 1144.  The mere failure to prevent a tort does not constitute aiding and abetting.  *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007).  Instead, a defendant "must have acted to aid the primary tortfeasor 'with knowledge of the object to be attained.'"  *Casey*, 127 Cal. App. 4th at 1146 (quoting *Lomita Land & Water Co. v. Robinson*, 154 Cal. 36, 47 (1908)).

Plaintiff fails to allege that Mr. Dolan in any way participated in, assisted, or encouraged Weinstein's alleged assault.  Plaintiff absurdly implies that Mr. Dolan was somehow aware in advance that a meeting between Plaintiff and Weinstein would occur while she waited for a hotel elevator (SAC ¶¶ 73, 74, 139), and therefore that Mr. Dolan must be liable for Weinstein's subsequent assault.  While Plaintiff may vaguely theorize that Mr. Dolan was somehow involved in this apparently chance encounter, she does not allege any facts that give rise to that inference or, more importantly, the requisite inference that Mr. Dolan directly aided the alleged assault.

Plaintiff further suggests that Mr. Dolan's friendship with Weinstein was a substantial factor in aiding Weinstein's alleged assault.  In that regard, Plaintiff alleges that, after she volunteered to Weinstein that she was delivering food to Mr. Dolan, Weinstein introduced himself as Mr. Dolan's good friend and invited her to his room.  (SAC ¶ 76.)  Yet, the mere fact that Mr. Dolan knew Weinstein, and that Weinstein allegedly referenced that fact in his elevator conversation with Plaintiff, does not establish any level of culpable participation by Mr. Dolan in Weinstein's alleged assault of Plaintiff.  *See, e.g.*, *Howard v. Superior Ct.*, 2 Cal. App. 4th 745, 749 (1992), *modified* (Feb. 10, 1992) (aiding and abetting requires "a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act").

In short, Plaintiff offers no facts to support her conclusory allegation that Mr. Dolan aided Weinstein's alleged assault.  Indeed, Plaintiff's specific allegation that it was Mr. Dolan who thwarted Weinstein's alleged assault entirely undermines her conclusory assertion that Mr. Dolan assisted or facilitated that assault: it is utterly implausible that Mr. Dolan both orchestrated and then defeated Weinstein's alleged assaultive conduct.  For these additional reasons, Plaintiff's Fourth Cause of Action should be dismissed.

### 2. Plaintiff's Aiding and Abetting Claim was Filed in Contravention of, and is Barred by, an Injunction Entered by the Bankruptcy Court for the District of Delaware

While the foregoing pleading deficiencies are dispositive, Plaintiff's attempt to infect this case with endless references to Weinstein provides a further basis to dismiss her aiding and abetting claim: that claim is barred by the Channeling Injunction entered by the Bankruptcy Court in *In re The Weinstein Company Holdings LLC*, No. 18-10601-MFW, D.I. 3203 & 3203-1 (Bankr. D. Del. Jan. 26, 2021) [attached as "Ex. A"] (the "TWC Bankruptcy").  *See Smith v. Charter Commc'ns, Inc. (St. Louis)*,

467 F. App'x 742, 744 (9th Cir. 2012) (affirming dismissal of claim released by a separate bankruptcy proceeding).

In asserting her aiding and abetting claim, Plaintiff—and perhaps more significantly, her counsel (who were deeply involved in the proceedings discussed below)—knowingly violated an injunction entered by the Court in the TWC Bankruptcy that, by its explicit terms, permanently enjoined claimants from asserting the type of Weinstein-related claim Plaintiff asserts in this action. As was highly publicized at the time, following the revelations of Weinstein's sexual misconduct, TWC sought protection under the United States Bankruptcy Code in proceedings before the Bankruptcy Court. Faced with the daunting task of resolving the hundreds of claims, asserted and unasserted, stemming from Weinstein's misconduct—including myriad related claims against TWC and its former directors—on January 26, 2021, the Bankruptcy Court approved and entered as an Order the Fifth Amended Joint Chapter 11 Plan of Liquidation (the "Plan"). Ex. A, D.I. 3203 & 3203-1. Notice of the Plan was widely circulated, including through (1) advertisements in the *New York Post*, *The Hollywood Reporter*, and *Variety*; (2) banner notices in online publications and social media websites designed to provide over 57 million impressions; and (3) listings on Google, Yahoo! and Bing search engines that directed internet users to an informational "claims and noticing website." (*See* Exhibits B and C hereto.)

A central component of the global settlement reflected in the Plan was the release of all former TWC directors—including Mr. Dolan, who is specifically identified in the Plan as a "Released Party"—from all "Sexual Misconduct Claims," asserted or unasserted, which are defined in the Plan as any claims "that relate directly or indirectly to the alleged or actual sexual misconduct of Harvey Weinstein." Concomitant to this negotiated and bargained-for release, the Plan includes a "Channeling Injunction," which (a) "channeled" all Sexual Misconduct Claims

against the Released Parties (including Mr. Dolan) into the eight-figure settlement fund established by the Plan, for distribution to claimants by a specially appointed claims administrator, and (b) "permanently stayed, restrained and enjoined" any party from "taking any action," including "commencing or continuing, in any manner, whether directly or indirectly, any suit, actions or other proceedings of any kind" against a "Released Party" (including Mr. Dolan) with respect to any Sexual Misconduct Claim.  The terms of the Channeling Injunction are unequivocal: so long as a claim concerns "the alleged or actual sexual misconduct of Harvey Weinstein," Plaintiff may not commence "any suit, action[] or other proceeding[] of any kind" against Mr. Dolan or another "Released Party," no matter when the underlying alleged misconduct occurred.  Ex. A, D.I. 3203-1 at *8.

Plaintiff's aiding and abetting claim plainly "relate[s] directly or indirectly to the alleged or actual sexual misconduct of Harvey Weinstein," and is thus barred by the Channeling Injunction. Yet, Plaintiff realleged that claim in both her FAC and her SAC, despite being put on explicit notice of the Bankruptcy Court's order during counsel's several "meet and confers" and again in the Dolan Defendants' prior motions to dismiss. (*See* Doc. No. 47, at 19–22; Doc. No. 52, at 18–20.) Plaintiff's choice to proceed in violation of a federal court order is knowing and deliberate; indeed, in response to Mr. Dolan's motion to dismiss the FAC, Plaintiff did not contest, and thus admitted, that the assertion of her aiding and abetting claim against Mr. Dolan violates the terms of the Channeling Injunction.

The Channeling Injunction is an order duly entered by a federal court, and Plaintiff cannot ignore that order, even if she contends it is void, improper or unconstitutional.  "[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947); *Zapon v. United States Dep't of Justice*, 53 F.3d 283, 285 (9th Cir. 1995)

1   ("obedience to even an assertedly void (not merely voidable) order is required unless

2   and until it has been vacated or reversed").  This well-established rule binds litigants

3   "even if they have proper grounds to object to the order."   *GTE Sylvania, Inc. v.*

4   *Consumers Union*, 445 U.S. 375, 386 (1980).

5          Mr. Dolan anticipates that Plaintiff will attempt to justify her violation of the

6   Channeling Injunction by referring to the Supreme Court's recent decision in

7   *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024), entered *after* she and her

8   counsel had twice violated the injunction by their inclusion of Plaintiff's aiding and

9   abetting claim in her original and First Amended Complaints.  It is true that the

10   *Harrington* decision held that "the bankruptcy code does not authorize a release and

11   injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks

12   to discharge claims against a nondebtor without the consent of affected claimants."

13   *Harrington*, 144 S. Ct. 2071 at 2088.   But Plaintiff's anticipated reliance on

14   *Harrington* would be misplaced, as the TWC Bankruptcy Plan—which was approved

15   in 2021 and has since been consummated—is not under review in this Court, or

16   elsewhere.  In fact, anticipating this sort of unwarranted reliance on *Harrington*, the

17   Supreme Court explicitly confirmed in that decision that, because that case "involves

18   only a stayed reorganization plan, we do not address whether our reading of the

19   bankruptcy code would justify unwinding reorganization plans that have already

20   become effective and been substantially consummated." *Id.*  As such, consistent with

21   the well-established case law discussed above, the *Harrington* decision underscores

22   that Plaintiff cannot cavalierly ignore the Channeling Injunction in the approved and

23   fully consummated TWC Bankruptcy Plan.   Rather, Plaintiff would need to

24   commence—and prevail in—"orderly and proper proceedings" to "unwind" the Plan,

25   presumably before the Bankruptcy Court that approved it over three years ago.  She

26   has not done so, and the Plan—including the Channeling Injunction—remains in

27

28

NOTICE OF MOTION AND MOTION OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT,
LLC TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

1  effect.  As such, Plaintiff's aiding and abetting claim unquestionably remains barred

2  by that judicial directive.

3  **IV.   <u>CONCLUSION</u>**

4  For each of the foregoing reasons, the Dolan Defendants respectfully request

5  that the Court dismiss Plaintiff's SAC and all claims asserted therein against them.

6  As the Court previously noted, Plaintiff had but "one last opportunity" to state a claim

7  under the TVPA (Order at 10).  Thus, that claim should be dismissed with prejudice.

8  As to the other causes of action, for the reasons stated above, they should be also

9  dismissed with prejudice because, after three failed attempts, "any [further]

10  amendment would be futile."  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522,

11  532 (9th Cir. 2008).

604417982.1

DATED:  July 22, 2024

Respectfully submitted,

PERRY LAW

By:        /s/ E. Danya Perry
             E. Danya Perry
             Karen Agnifilo
             Joshua Stanton
             Attorneys for Defendants James Dolan and JD
             & The Straight Shot, LLC

By:        /s/ John J. Rosenberg
             John J. Rosenberg
             ROSENBERG, GIGER & PERALA, P.C.
             Attorneys for Defendants James Dolan and JD
             & The Straight Shot, LLC

By:        /s/ Robert E. Dugdale
             Robert E. Dugdale
             Michael J. McCarthy
             KENDALL BRILL & KELLY
             Attorneys for Defendants James Dolan and JD
             & The Straight Shot, LLC

## **ATTESTATION**

I, Robert E. Dugdale, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By:        /s/ Robert E. Dugdale
             Robert E. Dugdale

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Dolan Defendants, certifies that this brief contains 6,992 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  July 22, 2024        By:                /s/ Robert E. Dugdale
                                                      Robert E. Dugdale