PERRY LAW
E. Danya Perry (admitted *pro hac vice*)
*dperry@danyaperrylaw.com*
Karen Agnifilo (admitted *pro hac vice*)
*kagnifilo@danyaperrylaw.com*
Joshua Stanton (admitted *pro hac vice*)
*jstanton@danyaperrylaw.com*
445 Park Ave, 7th Floor
New York, New York 10022
Telephone: (212) 213-3070
Facsimile: (646) 849-9609

[Additional attorneys are listed on next page]

*Attorneys for Defendants*
*James Dolan and JD & The Straight Shot, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| KELLYE CROFT.<br><br>     Plaintiff,<br><br>vs.<br><br>JAMES DOLAN, HARVEY WEINSTEIN, JD & THE STRAIGHT SHOT, LLC, THE AZOFF COMPANY HOLDINGS LLC f/k/a AZOFF MUSIC MANAGEMENT, LLC, THE AZOFF COMPANY LLC f/k/a AZOFF MSG ENTERTAINMENT, LLC, and DOE CORPORATIONS 1-10,<br><br>     Defendants. | Case No. 2:24-cv-00371-PA (AGR)<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:     September 3, 2024<br>Time:    1:30 p.m.<br>Judge:   Hon. Percy Anderson |

604420926.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KENDALL BRILL & KELLY LLP
Robert E. Dugdale (167258)
*rdugdale@kbkfirm.com*
Michael J. McCarthy (334829)
*mmccarthy@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: (310) 556-2700
Facsimile:  (310) 556-2705

ROSENBERG, GIGER & PERALA, P.C.
John J. Rosenberg (admitted *pro hac vice*)
*jrosenberg@rglawpc.com*
152 West 57th Street, 18th Floor
New York, New York 10019
Telephone:  (646) 494-5000
Facsimile:    (646) 595-0590

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT
SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  ARGUMENT ................................................................................................. 2

    A.   The SAC Fails to State a Claim Under the TVPA ................................. 2

        1.   The SAC Fails to State a TVPA Claim Under a Perpetrator Theory of Liability ................................................................. 2

            a.   The SAC Does Not Allege a Commercial Sex Act ................................................................................. 2

            b.   No Force, Fraud, or Coercion Is Alleged ................ 4

        2.   The SAC Fails to State a TVPA Beneficiary Claim ................... 6

    B.   The SAC Fails to State a Claim for Sexual Battery ............................... 7

    C.   The SAC Fails to State a Claim for Aiding and Abetting ...................... 9

        1.   No "Knowledge" or "Substantial Assistance" Is Alleged ............ 9

        2.   Plaintiff's Aiding and Abetting Claim Remains Barred ............ 11

III. CONCLUSION ............................................................................................ 12

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Acevedo v. eXp Realty, LLC,*
    2024 WL 650189 (C.D. Cal. Jan. 29, 2024)............................................................4

4

5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)....................................................................................................3

6

7

*B.J. v. G6 Hosp., LLC,*
    2023 WL 3569979 (N.D. Cal. May 19, 2023)........................................................6

8

9

*DePippo v. Kmart Corp.,*
    335 B.R. 290 (S.D.N.Y. 2005) ...............................................................................12

10

11

*Doe v. Broadus,*
    2:22-cv-04952-GW-AS (C.D. Cal. Feb. 10, 2023). ...............................................4

12

13

*Doe v. Fitzgerald,*
    2022 WL 425016 (C.D. Cal. Jan. 6, 2022). ........................................................6, 7

14

15

*Geiss v. Weinstein Co. Holdings LLC,*
    383 F. Supp. 3d 156 (S.D.N.Y. 2019) ....................................................................6

16

17

*Harrington v. Purdue Pharma L.P.,*
    144 S. Ct. 2071 (2024)........................................................................................11, 12

18

19

*In re First All. Mortg. Co.,*
    471 F.3d 977 (9th Cir. 2006) ..................................................................................10

20

21

*In re The Weinstein Company Holdings LLC.,*
    No. 18-10601-MFW .................................................................................................9

22

23

*Lombardo v. Hillburg,*
    2018 WL 6977473 (C.D. Cal. Dec. 3, 2018)..........................................................8

24

*Neilson v. Union Bank of Cal.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...............................................................10

25

26

*Roberts v. eXp Realty, LLC,*
    2024 WL 3005892 (C.D. Cal. May 23, 2024).........................................................3

27

28

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT
SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001). .................................................................3

*United States v. Mack*,
   164 F.3d 467 (9th Cir. 1999) ..................................................................1

*United States v. Casasola*,
   670 F.3d 1023 (9th Cir. 2012) ...............................................................2

*United States v. Taylor*,
   18-cr-88-DWF-ECW (D. Minn. July 26, 2019). ....................................5

*United States v. Taylor*,
   44 F.4th 779 (8th Cir. 2022) ..................................................................5

**State Cases**

*Angie M. v. Superior Ct.*,
   37 Cal. App. 4th 1217 (1995) ................................................................7

*Casey v. U.S. Bank Nat. Ass'n*,
   127 Cal. App. 4th 1138 (2005) ..............................................................7

**Statutes**

18 U.S.C. § 1591.............................................................................*passim*

# I.    <u>PRELIMINARY STATEMENT</u>

Plaintiff's Opposition argues that the TVPA should not be interpreted consistent with its legislative history, which confirms it was passed to address "a contemporary manifestation of slavery" (Opp. at 3 (quoting H.R. Rep 106-487).) But the reach of the TVPA—which doubles as a criminal statute—must "stop[] short of nonsensical consequences." *United States v. Mack*, 164 F.3d 467, 472 (9th Cir. 1999). Plaintiff's interpretation of the statute is nonsense, and it fails as a matter of law.

It is worth pausing to consider the vast reach of the TVPA under Plaintiff's formulation, as it would cause troubling consequences Congress plainly did not intend: Suppose a woman meets a man at a bar. The man is between jobs, and, in part to stir affection, the woman promises to pass along the man's name to a powerful friend looking for a new employee. Their conversation continues, and the woman invites him home for a drink. He accedes. Once there, she tells him that she does not have any alcohol, and she initiates a sex act. He again accedes.[1] According to Plaintiff, that is a commercial sex act because it is "reasonable to infer" the woman's statements "about career assistance were causally connected to" the sex. (*See* Opp. at 6.) And, Plaintiff would argue, it is a commercial sex act occasioned by fraud because the man was "trick[ed]" into being available for sex (*see* Opp. at 7–8), and by coercion because "it is reasonable to infer" that he "would be too scared to lose the incredible career opportunity" (*see* Opp. at 9). In fact, according to Plaintiff's reading of the TVPA, the man not only has a civil remedy under the statute, but the woman is now also guilty of sex trafficking and subject to a punishment of a "term of years not less than 15 or for life." 18 U.S.C. § 1591(b)(1).

---

[1] This set of facts is, of course, not directly analogous to those contained in the SAC, in part, because the SAC only includes ambiguous allegations of prior unwanted sex; however, Plaintiff's misunderstanding of the TVPA necessitates no such thing. *See* Section II.A, *infra*.

The Court should reject Plaintiff's overly expansive—indeed nonsensical—reading of the TVPA, *United States v. Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012) (courts should avoid "imput[ing] to Congress an intent to create a law that produces an unreasonable result"), and dismiss Plaintiff's TVPA claim because it does not state a cognizable TVPA claim under a perpetrator theory.

As fully explained in the Dolan Defendants' Motion to Dismiss the SAC (the "MTD") and below, Plaintiff also fails to state a TVPA claim under a beneficiary theory, and her sexual battery and aiding and abetting claims remain legally insufficient as well. Because Plaintiff has failed in her "one last opportunity to state a viable claim" (Order at 10), this case should be dismissed with prejudice.

## II.   ARGUMENT

### A.   The SAC Fails to State a Claim Under the TVPA

#### 1.   The SAC Fails to State a TVPA Claim Under a Perpetrator Theory of Liability

A TVPA perpetrator claim requires an allegation that a defendant committed a predicate act (*e.g.*, transporting) "'knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, [coercion] . . . or any combination of such means will be used' . . . 'to cause the person to engage in a commercial sex act.'" (Order at 7 (quoting 18 U.S.C. § 1591(a)(1))). The SAC does not allege a commercial sex act—or that force, fraud, or coercion would be used to cause such an act to occur.

##### a.   The SAC Does Not Allege a Commercial Sex Act

This Court has already ruled that to make out the "commercial sex act" element of her claim, Plaintiff must allege a "causal connection between the payment of" a thing of value "and the sexual conduct Plaintiff alleges she was forced to engage in." (Order at 8.) The FAC was dismissed for failing to allege this causal connection and, despite being afforded a final opportunity, Plaintiff still has not done so. *See also*

2

Reply in Support of Defendants Azoff Entities Motion to Dismiss SAC, Docket No. 78 at 1–4 ("Azoff Reply").

Plaintiff concedes there was no "verbalized *quid pro quo*." (Opp. at 6.) Likewise, she does not allege that Dolan or anyone else ever said or did anything to connect any alleged things of value with any alleged sex acts. Instead, in her "causes of action" section, Plaintiff attempts to draw inferences to purportedly "connect" disparate factual allegations (which are not alleged to have occurred contemporaneously with any sex act). (*See* Opp. at 6 ("it is reasonable to infer that Dolan's statements to Croft about career assistance were causally connected to Croft satisfying his sexual demands, even in the absence of a verbalized *quid pro quo*").) This Court need not accept such "unwarranted deductions of fact." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As explained in the MTD, apart from the impermissibly conclusory language in the SAC's "causes of action" section, which are not entitled to the presumption of truth, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the allegations in the SAC regarding the giving or receipt of things of value remain far too attenuated in their supposed connection to any sex act to establish the requisite causal connection with an alleged commercial sex act. *Roberts v. eXp Realty, LLC*, 2024 WL 3005892, at *4 (C.D. Cal. May 23, 2024)—the principal case upon which Plaintiff relies (Opp. at 4) —does not advance her asserted position. *Roberts* underscores that both a close temporal proximity between the giving of the thing of value and the sex act <u>and</u> an actual "commercial exchange" (even if not bargained for) must be alleged to properly plead a commercial sex act. *Id.* ("The *coexistence* of the sex act and the thing of value is the exchange necessary to satisfy a commercial sex act." (emphasis added)). In other words, as Plaintiff concedes, a "commercial exchange" requires that something of value be given "because of the sex act." (Opp. at 4.) Nowhere in the SAC does Plaintiff allege such an exchange—instead, she merely alleges that things of value

604420926.1

3

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT
SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

were given, "at least in part, for Ms. Croft to be available when Dolan wanted to see her and have sex with her." (SAC ¶ 65.) Plaintiff may complain that these critical distinctions are "[g]rasping at straws" or "hairsplitting" (Opp. at 5), but providing something of value for a person to be "available" for sex rather than for the sex act itself is an important, indeed dispositive, distinction. If a man pays for his partner's flight for a romantic getaway in part so that the partner will be available for sex, it is absurd to conclude that any sex act that occurs during the vacation is a commercial sex act—or even that it occurred *because of* the flight.

Indeed, Plaintiff's cited cases illustrate how distinguishable her disconnected allegations are from the sorts of allegations courts have found sufficient to establish causation. In *Doe v. Broadus*, the plaintiff alleged that one defendant directed another defendant "to bring Plaintiff to his studio for *quid pro quo* sexual acts in exchange for hiring her as a Weather Girl or performer for his other shows." 2:22-cv-04952-GW-AS, Docket No. 30, *slip op.* at *14 (C.D. Cal. Feb. 10, 2023). No similar or analogous factual allegation appears in the SAC. Likewise, in *Martinez v. 189 Chrystie St. Partners, LP*, the plaintiff alleged the defendants "made job opportunities contingent upon satisfying patrons and their own sexual demands." 2023 WL 5390442, at *5 (S.D.N.Y. Aug. 22, 2023). Again, no such factual allegation appears in the SAC. Finally, Plaintiff cites *Acevedo v. eXp Realty, LLC*, which, like *Roberts*, required the "coexistence of the sex act and the thing of value . . . to satisfy a commercial sex act." 2024 WL 650189, at *14 (C.D. Cal. Jan. 29, 2024). As previously noted, even such coexistence is not alleged in the SAC.

The lack of any causal allegations tying the things of value allegedly given to Plaintiff and any sex act that occurred is, as this Court previously held, fatal to her claim. As explained below, the remaining elements of a TVPA claim are also absent.

### b.   No Force, Fraud, or Coercion Is Alleged

Plaintiff alleges that her flight to Los Angeles was "fraud[ulent]" (*See* Opp. at

604420926.1

4

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

7–9) in classically conclusory fashion, claiming that she was not really flown out to perform massages—despite acknowledging that she spent "the *majority of the time* in Los Angeles" in the massage room and she *did* perform massages on the trip (SAC ¶ 60 (emphasis added)). Yet she fails to plausibly allege that the purportedly "fraud[ulent]" flight caused her to engage in sex acts, as required by the TVPA. 18 U.S.C. § 1591(a). In *United States v. Taylor*, 44 F.4th 779 (8th Cir. 2022)—on which Plaintiff heavily relies (Opp. at 8–9)—the trial evidence revealed the defendant had recruited a teenager to perform massages, having "clearly communicated to potential clients that they could expect sex acts." *United States v. Taylor*, 18-cr-88-DWF-ECW, Doc No. 189 at 47:15–18 (D. Minn. July 26, 2019).[2] The SAC does not allege remotely similar conduct; rather, based upon her "belie[f] that Dolan . . . gave the impression to others on the tour that [Plaintiff] was available to provide sexual services" (SAC ¶ 72), Plaintiff avers only that a bandmate of Dolan's asked Plaintiff for a "prostate massage." Plaintiff does not allege that any sex resulted from Dolan's supposed suggestion, and Plaintiff fails to bridge this gap by claiming she was "[d]eceived" and "submitted to Dolan because . . . she understood that rejecting him would jeopardize her work with the Eagles and others." (Opp. at 9.) Even in her own explanation, the "fraudulent" flight did not cause her to "submit[]"; instead, she acknowledges that she allegedly acted based on her unexpressed fear of losing her job. (*Id.*)

As Plaintiff has no plausible claim of fraud, she attempts to argue in the alternative that the SAC alleges that she was coerced into engaging in a commercial

---

[2] For at least one victim, the defendant "took $40 of each client payment," "purchased lingerie for her to wear while providing massages," and told her "she could charge more if she gave nude massages." *Taylor*, 44 F.4th at 783–84. In short, Taylor deceived a teenager into thinking she was being hired to perform legitimate massages while knowing he intended to prostitute her via online advertisements for profit—a textbook example of sex trafficking.

604420926.1

5

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

sex act, once again because of her supposed unexpressed fear of losing her job. (Opp. at 9). But Plaintiff cites no case that suggests—let alone holds—that such a generalized fear is sufficient. Her failure to locate such a case is unsurprising, as coercion under the TVPA is limited to threats of serious harm, physical restraint, or the abuse of law or the legal process—none of which is alleged. 18 U.S.C. § 1591(e)(2). In short, Plaintiff's coercion theory fails for the same reason she has not plausibly alleged a commercial sex act at all: defining the unexpressed fear of losing a job as "coercion" under the TVPA would convert essentially all sex between a supervisor and an employee into a serious federal felony—even if the employee never does anything to indicate any lack of consent. That is simply not the law.

### 2.    The SAC Fails to State a TVPA Beneficiary Claim

To state a beneficiary claim under the TVPA, Plaintiff must allege that the defendants "(1) knowingly benefitted (2) from participation in a venture (3) that they knew or should have known has engaged in trafficking the plaintiff." *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *3 (N.D. Cal. May 19, 2023) (citations and quotations omitted). At a minimum, the SAC fails to allege the first and third elements.

As to Dolan, Plaintiff argues that his sexual gratification was the benefit. (Opp. at 10.) But that is not a "benefit" under the TVPA. *Doe v. Fitzgerald*, 2022 WL 425016, at *9 (C.D. Cal. Jan. 6, 2022). As to JDSS, Plaintiff makes the assertion that it benefited because "Dolan sought to make Croft available for sexual services to his bandmates." (Opp. at 12.) The SAC alleges no fact to support this theory—only the allegation that she "believe[d] that Dolan also gave the impression to others on the tour that [she] was available to provide sexual services." (SAC ¶ 72). And, if Plaintiff had plausibly pleaded this theory, it would still be deficient because the only "benefit" to JDSS would be the possibility of sexual gratification to band members, which is not a "benefit" under the TVPA. *Fitzgerald* at *9; *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019) (the "benefit" must be more than

1   sexual gratification of a defendant corporation's employee); Azoff Reply at 3–4.

2       **B.**    **The SAC Fails to State a Claim for Sexual Battery**

3          The SAC contains no new allegations as to Plaintiff's sexual battery claim and

4   does not rectify her prior failure to allege the intent required. Plaintiff again fails to

5   allege any facts showing that she did not consent to the sexual conduct in California,

6   or that Dolan was aware she did not consent. *Angie M. v. Superior Ct.*, 37 Cal. App.

7   4th 1217, 1225 (1995) (requiring that the alleged batterer "intend[ed] to cause a

8   'harmful or offensive' contact" and the alleged sexual conduct was non-consensual).

9          Rather than properly pleading the intent element in her third attempt at crafting

10  a legally sufficient battery claim against Dolan, she continues to stand upon a *single*

11  paragraph alleging Dolan's conduct in California, which vaguely describes

12  "demands" for sex, with no specificity as to what, when, or how those demands were

13  made. (SAC ¶ 67). Even with this third opportunity, Plaintiff *still* does not allege that

14  she shared or expressed non-consent to Dolan through any words or actions. It is

15  apparent her failure is by design: her allegations inadequately plead that the alleged

16  sexual conduct occurred without her consent and thus fail to state a claim for sexual

17  battery. *Fitzgerald,* 2022 WL 425016, at *10 (intent to commit a sexual battery

18  requires defendants be "aware" that plaintiffs were "acting against their will").

19         To obscure her failure to allege the intent needed to sustain her California

20  sexual battery claim, Plaintiff argues that (1) a single alleged incident in Florida,

21  which occurred well before the period in question, somehow alleviates her obligation

22  to plead intent, as that can be temporally and geographically transferred to this

23  jurisdiction (Opp. at 13); and (2) that economic coercion also served to undermine her

24  consent to the vaguely alleged conduct (Opp. at 14). Neither argument should prevail.

25         As an initial matter, the "context" of Dolan allegedly physically forcing himself

26  on Plaintiff in Florida is internally inconsistent. Plaintiff alleges she was "adamant"

27  that she was uninterested in a sexual relationship with Dolan in Florida—*without*

28

604420926.1

7

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT
SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

*alleging that she ever communicated this to Dolan* (SAC ¶ 42)—but then acknowledges she engaged in intercourse for reasons having nothing to do with physical pressure, including purported feelings of isolation and flattery by the attention Dolan showed her. (SAC ¶ 43). These proffered reasons for "submitting" to Dolan negate, rather than establish, that her relationship with Dolan was non-consensual. Moreover, Plaintiff cites no authority for the proposition that the context of an alleged months-earlier prior contact can demonstrate the requisite elements of a sexual battery claim for every alleged sexual contact thereafter. Plaintiff not only asks the Court to infer and then transfer an alleged intent to commit sexual battery in Florida to any and all later alleged contact in California, but she does so without ever alleging the sexual demands or instances of contact that occurred in California.

This "context" aside, the unchanged allegations of the SAC fail to provide any basis from which to infer Dolan's intent to make an offensive contact. Plaintiff continues to argue that Dolan "was leveraging the immense power he held over her to sexually gratify himself." (Opp. 14). Economic disparity alone plainly cannot suffice to establish the requisite intent—especially when neither participant is destitute (as was the case here)—as myriad otherwise apparently consensual sexual relations would transform into battery. Indeed, the lone authority Plaintiff cites in support of her "economic vulnerability" argument, *Lombardo v. Hillburg*, 2018 WL 6977473 (C.D. Cal. Dec. 3, 2018), only confirms the SAC's dispositive deficiencies. Unlike that case—where the plaintiff had alleged her employer "concocted a plan to make her completely economically dependent on him," *id.* at *6—Plaintiff does not allege that Dolan did anything to exploit her supposed "economic vulnerability," (nor that was she economically dependent on him at all). Rather, the SAC alleges only that "Plaintiff understood that [rejecting alleged sexual demands] would jeopardize her work with the Eagles and future opportunities to serve as a Licensed Massage Therapist for professional musicians" (SAC ¶ 67); but, without more, Plaintiff's

subjective belief is once again inadequate to allege coercion by Dolan. The SAC does not allege that Dolan ever threatened Plaintiff's employment (nor could he as he was not her employer) or implied that employment on the tour was contingent on submitting to his supposed "sexual demands." Bizarrely, the SAC instead alleges that "Dolan acted romantically toward Ms. Croft" and that, as a result, she believed that he "actually cared about her," a statement that defeats any notion that economic coercion has been sufficiently alleged. (SAC ¶ 68.)

For all these reasons, Plaintiff's civil sexual battery claim should be dismissed with prejudice.[3]

### C.      The SAC Fails to State a Claim for Aiding and Abetting

The Court should dismiss Plaintiff's aiding and abetting claim asserted against Mr. Dolan, based on Weinstein's alleged assault, for two reasons: (1) the SAC does not adequately allege the requisite elements of "knowledge" or "substantial assistance"; and (2) Plaintiff's claims remain barred by the Channeling Injunction entered by the Bankruptcy Court in *In re The Weinstein Company Holdings LLC.*, No. 18-10601-MFW (the "TWC Bankruptcy"). (*See* MTD at 14–22.)

### 1.      No "Knowledge" or "Substantial Assistance" Is Alleged

As Plaintiff acknowledges (Opp. at 16, 18), she must allege that "the defendant had actual knowledge of the specific primary violation" *and* "substantially assisted" in carrying out that wrong. *Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005). The SAC fails as a matter of law to plausibly allege either.

---

[3] For the same reasons, Plaintiff's sexual battery claim is also time-barred. As Plaintiff concedes, her sexual battery claim can only survive through the application of California's Revival Statute, which applies solely to civil claims that qualify as *crimes*. Cal. Civ. Proc. Code § 340.16(b)(1). Plaintiff's deficient allegations fall far short of pleading the necessary mens rea and conduct that qualifies as a *crime* under California Penal Code § 243(e)(1). The Revival Statute is thus inapplicable, and Plaintiff's 10-year-old sexual battery claim is barred by California's two-year statute of limitations.

604420926.1

9

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Plaintiff argues that she may allege knowledge "generally" and "through inference." (Opp. at 16.) But this does not relieve her "of the burden of alleging . . . actual knowledge of the primary violation." *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003). This requires more than a "vague suspicion of wrongdoing," *In re First All. Mortg. Co.*, 471 F.3d 977, 993 n.4 (9th Cir. 2006); Plaintiff must allege Mr. Dolan made a "*conscious decision to participate*" in Weinstein's "wrongful act." *Casey*, 127 Cal. App. 4th at 1146 (emphasis in original).

Plaintiff does not come close to meeting this knowledge requirement. Despite Plaintiff's protestations (Opp. at 16–17), the SAC's factual allegations do not give rise to any plausible inference that Mr. Dolan made a "conscious decision" to participate in or further Weinstein's alleged sexual assault. Engaging in an utterly speculative exercise, Plaintiff asks the Court to infer that Mr. Dolan somehow "orchestrated" her run-in with Weinstein in the public lobby of the Peninsula Hotel but fails to allege a single fact supporting such an inference. In fact, in her opposition, Plaintiff concedes this failure, *i.e.*, that "The SAC does not allege that Dolan knew the exact timing of Weinstein's attack." (Opp. at 18.) Nor do the SAC's allegations support any inference that Mr. Dolan knew Weinstein intended to sexually assault Plaintiff. At most, Plaintiff alleges that Mr. Dolan harbored concerns that Weinstein was a "troubled person" with "serious issues"—*i.e.*, precisely the sort of "vague suspicions" that are inadequate to state a claim for aiding and abetting. (SAC ¶ 104.)

Plaintiff *also* fails to allege that Mr. Dolan "substantially assisted" in Weinstein's alleged sexual assault. To do so, Plaintiff must plead that Mr. Dolan "acted to aid the primary tortfeasor with knowledge of the object to be attained." *Casey*, 127 Cal. App. 4th at 1146 (quotations omitted). Plaintiff asks the Court to *infer* that Mr. Dolan "informed Weinstein . . . when [Plaintiff] would return to the hotel" and that Mr. Dolan had "conversations" with Weinstein that encouraged him to believe Croft "was sexually available." (Opp. At 19.) But the SAC does not allege

10

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

any facts giving rise to such an inference; for example, Plaintiff does not allege even a single communication between Mr. Dolan and Weinstein. Instead, Plaintiff asks the Court to speculate that Mr. Dolan facilitated Weinstein's alleged sexual assault based entirely upon the occurrence of the lobby meeting between Plaintiff and Weinstein and the fact that Mr. Dolan and Weinstein were friends allegedly staying in the same hotel as Plaintiff.[4] This does not adequately plead "substantial assistance."

## 2. Plaintiff's Aiding and Abetting Claim Remains Barred

Even if Plaintiff had adequately pled an aiding and abetting claim (which she plainly has not), that claim would nonetheless be barred because it violates the Channeling Injunction and related release entered in the TWC Bankruptcy. (*See* Mot. at 18-22.) Contrary to well-established law, Plaintiff argues that she can simply disregard the Channeling Injunction: (1) she relies on the Supreme Court's recent decision in *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071 (2024) to argue that the TWC Bankruptcy Court "had no legal authority" to approve the Channeling Injunction and related release as part of the TWC Bankruptcy Plan (Opp. at 20); and (2) she asserts that applying the Channeling Injunction and release to bar her aiding and abetting claim would "violate [her] Fifth Amendment right to due process," as she allegedly did not receive adequate notice of the Channeling Injunction and release. (Opp. at 21-23.) These arguments are entirely meritless.

*First*, as the Dolan Defendants explain in the MTD, Plaintiff cannot ignore and refuse to comply with a federal court injunction, even if she contends that it is void, improper, or unconstitutional; rather, she must obey such a judicial Order unless and until that Order is "reversed by orderly and proper proceedings." (MTD at 20-21.)

---

[4] Indeed, the SAC's allegation that Mr. Dolan called Plaintiff's hotel room "in the midst of the assault" (SAC ¶¶ 99, 100)—thereby thwarting Weinstein's wrongful act—undermines Plaintiff's unsupported request for an inference that Mr. Dolan "orchestrated" the meeting between Weinstein and Plaintiff with intent to facilitate Weinstein's alleged sexual assault.

604420926.1

11

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Case 2:24-cv-00371-PA-AGR   Document 79   Filed 08/12/24   Page 17 of 19   Page ID #:1579

The *Harrington* decision is consistent with this well-established rule, as the Court confirmed that its holding was not "unwinding reorganization plans that have already become effective and been substantially consummated." *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2088 (2024). Thus, if Plaintiff believes that the TWC Bankruptcy Plan should be "unwound," she must pursue "orderly and proper proceedings," presumably before the Bankruptcy Court that approved the Plan and entered the injunction. She has not done so, and the aiding and abetting claim is subject to dismissal for this reason as well.

While the foregoing is dispositive of the matter, Plaintiff's further attempt to avoid application of the Channeling Injunction and release on due process grounds is meritless. Plaintiff argues that due process required TWC to provide her with "actual notice" of its bankruptcy Plan, as her "identity as a potential creditor" was "reasonably ascertainable by TWC, through Dolan." (Opp. at 21.) This argument is a baseless post-fact attempt to justify Plaintiff's violation of the Channeling Injunction.

During the TWC Bankruptcy, plaintiff was an "unknown creditor" for whom "publication notice . . . is adequate constructive notice sufficient to satisfy due process." *DePippo v. Kmart Corp.*, 335 B.R. 290, 297 (S.D.N.Y. 2005). During the TWC bankruptcy, Plaintiff was, at most, a potential future claimant, like the plaintiff in *DePippo*, who had not "communicated any intention of making a claim"; nor is there any allegation that TWC was "[]aware plaintiff intended making such a claim" prior to the approval of the Plan, including the Channeling Injunction and release. *DePippo*, 335 B.R. at 297. As such, Plaintiff was an "unknown creditor" entitled only to publication notice, which she received. *Id.* (*See* MTD at 19.)

## III.   CONCLUSION

For each of the foregoing reasons, the Dolan Defendants respectfully request that the Court dismiss Plaintiff's SAC with prejudice.

604420926.1

12

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS JAMES DOLAN AND JD & THE STRAIGHT SHOT, LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

DATED: August 12, 2024          Respectfully submitted,

PERRY LAW

By: _____ /s/ E. Dayna Perry _____
  E. Danya Perry
  Karen Agnifilo
  Joshua Stanton
  Attorneys for Defendants James Dolan and JD
  & The Straight Shot, LLC

By: _____ /s/ John J. Rosenberg _____
  John J. Rosenberg
  ROSENBERG, GIGER & PERALA, P.C.
  Attorneys for Defendants James Dolan and JD
  & The Straight Shot, LLC

By: _____ /s/ Robert E. Dugdale _____
  Robert E. Dugdale
  Michael J. McCarthy
  KENDALL BRILL & KELLY
  Attorneys for Defendants James Dolan and JD
  & The Straight Shot, LLC

## <u>ATTESTATION</u>

I, Robert E. Dugdale, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

By: _____ /s/ Robert E. Dugdale _____
  Robert E. Dugdale

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Dolan Defendants, certifies that this brief contains 4,195 words, which complies with the word limit of Local Rule 11-6.1.

DATED: August 12, 2024          By: ___/s/ Robert E. Dugdale___
                                              Robert E. Dugdale

604420926.1